No. 13-35291 & 13-35322

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

In the Matter of:
RUPANJALI SNOWDEN,
Debtor

---

RUPANJALI SNOWDEN,
Appellant,

v.

CHECK INTO CASH OF WASHINGTON, INC.,
Appellee.

---

Appeal from the United States District Court
for the Western District of Washington
D.C. No. 2:12-cv-01095-RSL
Hon. Robert S. Lasnik

———————————

FIRST BRIEF FOR APPELLANT ON CROSS-APPEAL

———————————

Christina L. Henry, Esq.
Jacob DeGraaff, Esq.

*Attorneys for Appellant,*
*Rupanjali Snowden*

HENRY, DeGRAAFF &
McCORMICK, P.S.
183 North 105th Street
Suite 220
Seattle, Washington 98133
(206) 330-0595 Telephone
(206) 400-7609 Facsimile

# <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS.............................................................................2

TABLE OF AUTHORITIES .................................................................4

STATEMENT OF JURISDICTION.....................................................7

STATEMENT OF THE ISSUES..........................................................7

STANDARDS OF REVIEW .................................................................7

STATEMENT OF THE CASE...............................................................8

STATEMENT OF RELEVANT FACTS ...........................................10

    A.   The Parties.................................................................................10

    B.   Financial Issues and Bankruptcy Protection .........................10

    C.   The Filing of the Voluntary Chapter 7 Bankruptcy Petition ................11

    D.   CIC's Post-Petition Collection Actions ................................12

    E.   Snowden's Motion for Sanctions and CIC's Response........13

    F.   Judgment regarding Sanctions for Stay Violations................13

    G.   Appeal and Remand ................................................................14

SUMMARY OF THE ARGUMENT ...................................................14

ARGUMENT ........................................................................................16

    I.   The Court's Decision in *Sternberg* Regarding Attorneys' Fees Should Be Overturned ........................................................16

        A.   The Supreme Court's Ruling in *FAA v. Cooper* Obligates This Court to Revisit the Meaning of "Actual Damages"......................18

        B.   Congress Declined to Clarify "Actual Damages" in § 362(k) in 2005 .....................................................................................21

        C.   The *Sternberg* Court Did Not Properly Consider the Context and Goals Underlying § 362(k) and the Automatic Stay .......................23

        D.   The *Sternberg* Court Wrongly Concluded That Allowing Attorneys' Fees For Damage Litigation "Further[s] Neither the Financial Nor the Non-Financial Goals of the Automatic Stay."..........................28

    II.   The Bankruptcy Court Erred in Finding THAT Check Into Cash "remedied" its stay violation by merely offering to pay debtor a de minimus amount for damages ..................................................30

        A.   "In *Sternberg*, the point at which the stay violation had been remedied was clear."........................................................31

      B.   Check Into Cash's Offer Did Not Cure the Stay Violation.............33

      C.   Check Into Cash's Offer Did Not Account For the Full Stay Violation .........................................................................................37

      D.   The Motion For Sanctions Was a Shield, Not a Sword .................39

  III.  THE BANKRUPTCY COURT ERRED IN DECLINING TO SANCTION OR EXERCISE ITS CIVIL CONTEMPT AUTHORITY AGAINST CHECK INTO CASH ........................................................40

      A.   Congress Intended Section 362(k) To Supplement Section 105, Not Replace It........................................................................................40

      B.   Check Into Cash's Actions Warrant Sanction Under Section 105..42

      C.   The Bankruptcy Court Erred in Declining to Sanction Check Into Cash For Abuse of Process...........................................................43

CONCLUSION....................................................................................47

STATEMENT OF RELATED CASES ...............................................48

CERTIFICATE OF COMPLIANCE..................................................48

# TABLE OF AUTHORITIES

**Cases**

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240 (1975) ........25, 28

*Bertuccio v. Cal. State Contrs. License Bd. (In re Bertuccio),* Case No. 04-56255, 2009 Bankr.LEXIS 3302, 2009 WL 3380605 (Bankr.N.D.Cal. Oct.15, 2009)..................................................................................................17

*Computer Communications Inc. v. Codex Corp. (In re Computer Communications, Inc.),* 824 F.2d 725 (9th Cir. 1987)....................................41

*Cooper v. FAA,* 622 F.3d 1016 (9th Cir. 2010) ..................................................23

*Dawson v. Washington Mutual Bank, F.A.* (*In re Dawson*), 390 F.3d 113919, 21, 39

*Eskanos & Adler, PC v. Leetien,* 309 F.3d 1210 (9th Cir. 2002) .......................43

*FAA v. Cooper*, 566 U.S. __, 132 S.Ct. 1441 (2012) .........................7, 23, 30, 47

*Grine v. Chambers*, 439 B.R. 461 (Bankr. N.D. Ohio, 2010) ......................22, 27

*Havelock v. Taxel (In re Pace*), 159 B.R. 890 (9th Cir. BAP 1993) .................21

*In re Campion,* 294 B.R. 313 (9th Cir. BAP 2003)......................................34, 35

*In re Cinematronics, Inc.,* 111 B.R. 892 (Bankr. S.D. Cal. 1990) .....................43

*In re Duby*, 451 B.R. 664 (1st Cir. BAP 2011) ..................................................18

*In re Dyer*, 322 F.3d 1178 (9th Cir.2003)...........................................................40

*In re Gray,* 97 B.R. 930 (Bankr. N.D. Ill. 1989) ...............................................43

*In re Gruntz*, 202 F.3d 1074 (9th Cir. 2000).......................................................43

*In re Henry*, 266 B.R. 457 (Bankr. C.D. Calif. 2001) ..................................23, 42

*In re Promower, Inc.*, 74 B.R. 49 (D.Md 1987) .................................................24

*In re Repine*, 536 F.3d 512 (5th Cir. 2008).........................................................18

*In re Reswick*, 446 B.R. 362 (2011)....................................................................22

*In re Schwartz-Tallard*, 473 B.R. 340 (9th Cir. BAP 2012)..................17, 32, 33

*In re Sielaff,* 164 B.R. 560 (Bankr.W.D.Mich.1994).........................................41

*In re Siharath*, 285 B.R. 299 (Bankr.D.Minn.2002)..........................................32

*Johnston Envtl. Corp. v. Knight (In re Goodman),* 991 F.2d 613 (9th Cir.1993) ...................................................................................................41

*Latman v. Burdette*, 366 F.3d 774 (9th Cir. 2004)..............................................45

*Malley v. Agin*, 693 F.3d 28 (1st Cir. 2012) ...........................................44, 45, 47

*Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365 (2007)............43, 44

*Milavetz, Gallop & Milavetz, P. A. v. United States*, 559 U.S. 229 (2010)........22

*Miller v. Cardinale (In re Deville),* 280 B.R. 483 (9th Cir. BAP 2002), *aff'd* 361 F.3d 539 (9th Cir.2004)...................................................................................44

*Mwangi v. Wells Fargo Bank, N.A.,* 432 B.R. 812 (9th Cir. BAP) ...................34

*Orange Blossom Limited Partnership v. Southern California Sunbelt Developers, Inc.* (*In re Southern California Sunbelt Developers, Inc.*), 608 F.3d 456 (9th Cir. 2010)..........................................................................27

*State of California Employment Development Department v. Taxel* (*In re Del Mission Ltd.*), 98 F.3d 1147 (9th Cir. 1996) .............................................18, 42

*Sternberg v. Johnston*, 595 F.3d 937 (9th Cir. 2010) ..................................passim

*United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235 (1989) .....................20

*United States v. United Mine Workers*, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1946) .............................................................................................................24

*Walls v. Wells Fargo*, 276 F.3d 502 (9th Cir. 2002) .............................16, 23, 45

## Statutes

11 U.S.C. § 102(3) ............................................................................................20

11 U.S.C. § 105.........................................................................................passim

11 U.S.C. § 362(a) .....................................................................................17, 23

11 U.S.C. § 362(b) ...........................................................................................42

11 U.S.C. § 362(k) ....................................................................................passim

15 U.S.C. § 1601 *et seq.*....................................................................................28

15 U.S.C. § 1681 et seq.....................................................................................28

31 U.S.C. § 3729 – 3733..................................................................................28

## Other Authorities

130 Cong. Rec. H1942 (daily ed. Mar. 26, 1984)................................................24

1978 U.S.C.C.A.N. 5963 .......................................................................29

2 *Collier on Bankruptcy* ¶ 362 (15th ed. 1987) ...................................41

*Burlington v. Dague*, 505 U.S. 557 (1992) ...........................................26

H.R. Rep. No. 95-595 ..........................................................................29

Jeffrey A. Stoops, *Monetary Awards to the Debtor for Violations of the Automatic Stay,* 11 Fla. St. U.L. Rev. 423 (1983) .........................................24

S. Rep. No. 94-1011, p. 6 (1976).......................................................30

S. REP. No. 95-989 (1979) ..................................................................23

Thomas D. Rowe Jr., *The Legal Theory Of Attorney Fee Shifting: A Critical Overview*, 1982 Duke L.J. 651 (1982)..............................................25

## Rules

Federal Rule of Civil Procedure 68 .......................................................34, 35, 36

## STATEMENT OF JURISDICTION

The court has jurisdiction over "final decisions" of the district court acting in its appellate capacity under 28 U.S.C. § 158(d) and 28 U.S.C. § 1291. *See Dye v. Brown (In re AFI Holding, Inc.)*, 530 F.3d 832, 836-37 (9th Cir. 2008) (order); *Stanley v. Crossland, Crossland, Chambers, MacArthur & Lastreto (In re Lakeshore Vill. Resort, Ltd.)*, 81 F.3d 103, 105 (9th Cir. 1996).

## STATEMENT OF THE ISSUES

I.    Whether this Court's decision in *Sternberg v. Johnston*, 595 F.3d 937 (9th Cir. 2010), should be revisited in light of *FAA v. Cooper*, 566 U.S. __, 132 S.Ct. 1441 (2012) and the intent and goals of Congress in passing 11 U.S.C. § 362 (k).

II.   Whether the bankruptcy court erred in finding Check Into Cash "remedied' its stay violation by merely offering to pay debtor a *de minimus* amount for damages.

III.  Whether the bankruptcy court erred in declining to sanction or exercise its civil contempt authority against Check Into Cash.

## STANDARDS OF REVIEW

This Court reviews *de novo* the bankruptcy court's conclusions of law. *See In re Johnston*, 21 F.3d 323, 326 (9th Cir. 1994); *see also Baker v. Delta*

*Air Lines, Inc.*, 6 F.3d 632 (9th Cir. 1993) (reviewing application of *stare decisis de novo*). The bankruptcy courts' findings of fact are evaluated under a clearly erroneous standard. *Id.* Further, the refusal to impose sanctions, the amount of sanctions, and the award of attorney's fees are reviewed for an abuse of discretion. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 55 (1991)(failure to impose sanctions); *In re Bennett*, 298 F.3d 1059, 1063 (9th Cir. 2002) (attorney's fees); *Eskanos & Adler, PC v. Leetien,* 309 F.3d 1210 (9th Cir. 2002)(amount of sanctions); *In re Jastrem*, 253 F.3d 438, 442 (9th Cir. 2001) (attorney's fees); *In re Marino*, 37 F.3d 1354, 1358 (9th Cir. 1994) (imposition of sanctions). An error of law necessarily constitutes an abuse of discretion. *See Debbie Reynolds Hotel & Casino, Inc v. Calstar Corp*., 255 F.3d 1061, 1065 (9th Cir. 2001).

## <u>STATEMENT OF THE CASE</u>

Rupanjali Snowden filed a motion for sanctions against Check Into Cash of Washington, Inc. ("Check Into Cash" or "CIC") on April 9, 2009 in the United States Bankruptcy Court for the Western District of Washington. The motion charged that CIC had violated the automatic stay provision of the bankruptcy code, 11 U.S.C. § 362, by withdrawing funds from Snowden's bank account and repeatedly making collection phone calls to her after she filed for

bankruptcy protection. On December 10, 2009, the bankruptcy court found that CIC had violated the automatic stay.

Subsequently, the bankruptcy court held an evidentiary hearing on damages. Following the hearing, the bankruptcy court awarded Snowden pecuniary damages related to CIC's withdrawal of funds from Snowden's bank account, damages for emotional distress, punitive damages, and partial attorneys' fees. Check Into Cash appealed the award of emotional distress and punitive damages.

On February 12, 2012, the district court found that the bankruptcy court used an improper standard to determine emotional distress and punitive damages, and reversed and remanded the damages awards. The district court affirmed in all other respects. On remand, the bankruptcy court applied the correct standard and awarded actual and punitive damages in the same amounts as in the original ruling. On March 11, 2013, the district court affirmed the decision of the bankruptcy court.

Snowden now appeals the decision of the bankruptcy court to deny her the portion of attorneys' fees incurred in the litigation of her damage claim against CIC.

# STATEMENT OF RELEVANT FACTS

### A. The Parties

Rupanjali "Rupa" Snowden resides in Sequim, Washington and works as a nurse. (ER 140-151.) Snowden suffered from financial difficulties in late 2008 following a knee injury that caused her to miss some work, and she took out a number of payday loans. (ER 140-151.) On January 16, 2009, Snowden filed a voluntary petition for bankruptcy protection under Chapter 7, listing Check Into Cash as a creditor at its Sequim branch address. (ER 85 -87.)

Check Into Cash ("CIC") is a payday lender headquartered in Cleveland, Tennessee with loan centers throughout the United States, including a center in Sequim, Washington. CIC offers payday loans and cash advances.

### B. Financial Issues and Bankruptcy Protection

On November 15, 2008, while employed as a nurse at Olympic Care and Rehab, Snowden opened what would be her final payday loan from CIC. (ER 73.) As a "security" on the payday loan, Snowden gave CIC a post-dated check—Check No. 2740—which was to be cashed on her payday in early December 2008. (ER 88.)

In late November 2008, in light of her financial troubles, Snowden made the decision to file for relief under the U.S. Bankruptcy Code. Snowden notified CIC on November 26, 2008 that she intended to file for Chapter 7 bankruptcy.

10

(ER 98.) CIC confirmed representation with Snowden's bankruptcy attorney on December 2, 2008, (ER 96) and further confirmed on December 15, 2008 that Snowden would file bankruptcy either by the end of December 2008 or the beginning of January 2009. (ER 94.)

After deciding to file bankruptcy and out of fear that CIC would cash her check, Snowden asked her local bank to place a "stop payment" order on the check she had given to CIC. (ER 90, 152.) In a further effort to avoid unanticipated withdrawals and their accompanying overdraft fees, Snowden opened a second bank account to cover any deficiencies in her original account. (ER 158.)

Following the initiation of the stop payment order, CIC made multiple telephone calls to Snowden's bank between December 5 and 30, 2008, confirming that the stop payment order had been placed. (ER 93, 94, 96.)

## C.   *The Filing of the Voluntary Chapter 7 Bankruptcy Petition*

Snowden filed bankruptcy on January 16, 2009. (ER 85.) CIC was listed as a creditor on Snowden's Schedule F, and the bankruptcy court sent notice of the filing to CIC's Sequim branch at 1247 West Washington Street on January 22, 2009. (ER 87.)

### D.   CIC's Post-Petition Collection Actions

Between January 21 and February 12, 2009, CIC made 16 attempts to contact Snowden in an effort to collect the debt. (ER 100-104.) On several occasions, CIC called Snowden at work, necessitating that she be called away from attending to patients to answer the phone at a centrally located nurses' station. (ER 104, 146-147.) On these occasions, Snowden was extremely reluctant to discuss her bankruptcy within hearing of her coworkers, so she reminded the caller that she was represented by counsel and refused to discuss the matter further. (ER 152-157.)

On February 19, 2009, 34 days after the bankruptcy filing, CIC used Snowden's check to initiate an electronic funds transfer that did not reference the physical check. thereby circumventing the stop payment order that had been placed on the check. (ER 13.) The electronic funds transfer occurred on February 20, and funds were taken out of Snowden's account and transferred to CIC. (ER 102.)

After learning that the funds had been taken from her account, Snowden and her attorney spoke to the clerk at CIC, explained that Snowden had filed bankruptcy, and requested that her funds be returned. CIC did not comply. (ER 159-161.)

12

### E. *Snowden's Motion for Sanctions and CIC's Response*

Snowden filed a motion for sanctions against CIC on April 9, 2009 on the grounds that CIC violated the automatic stay. (ER 169.) CIC denied receiving the motion, and Snowden re-filed with the court on May 12. (ER 170.)

CIC attorney Lauren Hosie received the motion on or about May 14, 2009, and retrieved Snowden's customer file for review, including collection notes, loan agreements, and call logs. (ER 104, 115-116.) On May 20, Hosie e-mailed an offer to Snowden's bankruptcy attorney. In the message, Hosie claimed that "CIC did not violate the automatic stay by presenting Ms. Snowden's check," and described the offer as a "courtesy" from CIC. (ER 108.) The e-mail message included no reference to the 16 collection calls CIC had made to Snowden. Nominally, CIC offered Snowden $1,445.00, including attorney's fees of $720.00 to cover "what CIC believe[d to be] reasonable." (ER 108.) Snowden declined CIC's offer.

### F. *Judgment regarding Sanctions for Stay Violations*

On November 16, 2010, after a two-day evidentiary hearing, the bankruptcy court awarded Snowden actual damages of $12,000.00 for emotional distress, $575.00 for the amount of the check, $370 for overdraft and return item fees, $2538.55 for attorneys' fees, and $12,000 for punitive damages, for a total of $27,483.55. The court denied claims for additional attorney fees

13

under the courts inherent civil contempt or inherent authority. (ER 30-47, 110-111.) Following the hearing, CIC paid Snowden $3,483.55, and appealed the $24,000 in emotional distress and punitive damages. (ER 138 – 139, 44.)

## G. *Appeal and Remand*

On February 12, 2012, the United States District Court for the Western District of Washington found that the bankruptcy court used an improper standard to determine emotional distress and punitive damages, and reversed and remanded the damages awards. The district court affirmed in all other respects. (ER 51-58.)

On remand, the bankruptcy court applied the heightened clear and convincing legal standard for emotional distress, made additional findings of fact and conclusions of law on the record, incorporated its prior findings from his original November 16, 2010 ruling, and awarded actual and punitive damages in the same amounts as in the original ruling. (ER 59, 60-74, 110-111.) On March 11, 2013, the district court affirmed the decision of the bankruptcy court. (ER 1-7.)

## SUMMARY OF THE ARGUMENT

The recent decision from *FAA v Cooper*, 566 U.S. \_\_, 132 S.Ct. 1441 (2012) has called into question this Court's interpretation of 11 U.S.C. § 362(k). The Court in *Sternberg v. Johnston* employed the definition of "actual damages"

14

from *Black's Law Dictionary* to find that attorney fees were not part of actual damages consistent with the American Rule. In *FAA v. Cooper*, the Supreme Court rejected the definition of "actual damages" from *Black's*, which it characterized as "general (and notably circular)." Congress declined to clarify "actual damages" in § 362(k) when it amended § 362 in the Bankruptcy Amendments of 2005. The *Sternberg* Court did not properly consider the context and goals underlying § 362(k) and the automatic stay, concluding that allowing attorneys' fees for damages litigation "furthers neither the financial nor the non-financial goals of the automatic stay. The bankruptcy court erred in finding that Check Into Cash's first offer qualified as a remedy in *Sternberg*. In *Sternberg*, "the point in which the stay violation had been remedied was clear." Check Into Cash's offer did not *cure* the stay violation, it was merely an *offer* to remedy the stay violation. The debtor's motion for sanctions was a shield, not a sword. The bankruptcy court erred in declining to sanction or exercise its civil contempt authority against Check Into Cash. Congress intended § 362(k) to supplement § 105, not replace it. Check Into Cash's actions warrant sanctions under § 105 and Check Into Cash acted in bad faith when it retained Ms. Snowden's property until the bankruptcy court's final award of damages at the end of an evidentiary trial.

# <u>ARGUMENT</u>

## I.   THE COURT'S DECISION IN *STERNBERG* REGARDING ATTORNEYS' FEES SHOULD BE OVERTURNED

Snowden's appeal raises fundamental issues of justice and fairness in bankruptcy law arising from this court's decision in *Sternberg v. Johnston*, 595 F.3d 937 (9th Cir. 2010). In that decision, the Court ruled that a victim of an automatic stay violation is entitled to attorneys' fees under 11 U.S.C. § 362(k) for "the injury resulting from a stay violation itself," but not for "any fees the debtor incurs after that point in pursuit of a damage award." *Id.* at 947. All bankruptcy courts agree that an award of actual damages and attorney fees is mandatory under § 362(k).[1]  However, the Ninth Circuit alone limits the award of attorney fees to fixing the violation of the automatic stay. This disrupts the delicate balance between the rights of debtors and creditors in the bankruptcy code. *Walls v. Wells Fargo*, 276 F.3d 502, 510 (9th Cir. 2002). Since the *Sternberg* decision, no court outside the Ninth Circuit has adopted its holding, and lower courts applying it have struggled with its application.

---

[1]  Congress originally enacted 11 U.S.C. § 362(k) in 1984 as § 362(h). In 2005, Congress redesignated § 362(h) as § 362(k)(1), and added a related subsection, § 362(k)(2). For clarity, this brief refers to both the pre- and post-2005 provision as § 362(k) throughout.

> What good is it to be entitled to damages and attorneys' fees for a violation of the automatic stay if it costs a debtor much more in unrecoverable fees to recover such damages? In many, if not most, cases that will likely be the situation.

*Bertuccio v. Cal. State Contrs. License Bd. (In re Bertuccio),* Case No. 04-56255, 2009 Bankr.LEXIS 3302, *22-23 n. 7, 2009 WL 3380605, *7 n. 7 (Bankr.N.D.Cal. Oct.15, 2009).

The practical effect of the *Sternberg* decision has been to encourage creditors to ignore stay violations and litigate claims with impunity, hoping to exhaust a debtor's resources before she is able to prove emotional distress and punitive damages under the statute. *See In re Schwartz-Tallard*, 473 B.R. 340, 349 (9th Cir. BAP 2012). This is not what Congress intended.

When a debtor files for bankruptcy, she is immediately protected by an automatic stay under 11 U.S.C. § 362 (a), which stays all creditor collection activities against the debtor. It provides in part: "A petition filed under section 301, 302 or 303 . . . operates as a stay, applicable to all entities, of . . . (4) any act to create, perfect, or enforce any lien against property of the estate; . . . (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a). To allow individuals to enforce the stay provision, § 362(k)(1) creates a private right of action for willful violations of the automatic stay. Section 362(k)(1) provides "An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."

17

All courts except this one have interpreted the plain meaning of § 362(k)(1) to permit some recovery of attorney fees as damages to prevent violation of the automatic stay. *See Sternberg*, 595 F.3d at 949; *In re Repine*, 536 F.3d 512, 522 (5th Cir. 2008). The Ninth Circuit is the only circuit to painstakingly define "actual damages" narrowly, allowing recovery of attorney fees as damages incurred to prevent violations of the automatic stay, but denying recovery of attorney fees spent to correct the legal injury. *Sternberg*, 595 F.3d at 946-49. In other Circuits, awards of such fees are commonplace. *In re Duby*, 451 B.R. 664 (1st Cir. BAP 2011).

## A. The Supreme Court's Ruling in *FAA v. Cooper* Obligates This Court to Revisit the Meaning of "Actual Damages"

The Supreme Court's decision in *FAA v Cooper*, 566 U.S. __,132 S.Ct. 1441 (2012), which rejected the definition of "actual damages" used by the Ninth Circuit in *Sternberg*, should be considered as superseding authority limiting the *Sternberg* Court's interpretation of the phrase, and requires this Court to revisit that decision.

This Court previously stated that § 362(k)(1) "mandates the award of actual damages to an individual injured by any willful violation of a stay." *State of California Employment Development Department v. Taxel* (*In re Del Mission Ltd.*), 98 F.3d 1147, 1152 (9th Cir. 1996). (internal quotation marks and alterations omitted). But without context, "actual damages" is an ambiguous

18

phrase. *See Dawson v. Washington Mutual Bank, F.A.* (*In re Dawson*), 390 F.3d 1139, 1146 (9th Cir. 2004) (noting that "the text of the statute" does not define "actual damages"). Building on *Dawson's* analysis, the *Sternberg* Court reviewed "actual damages" to determine whether Congress intended to deviate from the American Rule by allowing for recovery of the fees incurred in the bankruptcy court action for damages resulting from violation of the automatic stay. *Sternberg*, 595 F.3d at 947. The Court's adoption of the definition of "actual damages" given by *Black's Law Dictionary* ("*Black's*")—"[a]n amount awarded . . . to compensate for a proven injury or loss; damages that repay actual losses"—was central to its decision to deny appellee Johnston's petition for legal fees. *Id.*

In *FAA v Cooper*, the Supreme Court rejected the definition of "actual damages" from *Black's*, which it characterized as "general (and notably circular),"[2] and concluded that the definition of "actual damages" in numerous federal statutes is unclear in isolation. *FAA*, 132 S.Ct. at 1449. The term "takes on different meanings in different contexts," it encompasses nonpecuniary

_____

[2] In *FAA*, the Supreme Court cited from the 4th edition of *Black's* (1968), the latest edition available at the time the relevant statute was enacted. The entry for "actual damages" quoted in *FAA* is substantially similar to the entry from the 8th edition quoted by the Court in *Sternberg*.

damages in some statutes, and is more narrowly tailored in others." *FAA*,

132 S.Ct. at 1449-1453.

To what authority must one look to correctly interpret "actual damages"

in § 362(k)? "[A]ll such inquiries must begin with the language of the statute

itself." *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989)

(internal punctuation omitted).

> [A]n individual injured by any willful violation of a stay . . . shall
> recover actual damages, including costs and attorneys' fees, and, in
> appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(k)(1).

The Supreme Court's "plain language" doctrine, set forth in *Ron Pair*,

states that "The plain meaning of legislation should be conclusive, except in the

rare cases in which the literal application of a statute will produce a result

demonstrably at odds with the intention of its drafters. In such cases, the

intention of the drafters, rather than the strict language, controls." *Ron Pair*,

489 U.S. at 242 (internal quotation marks omitted).

Congress took pains to define "includes" and "including" for the purposes

of Title 11 in § 102 ("Rules of construction"), but the statute says only that the

words "are not limiting." 11 U.S.C. § 102(3). There is no indication that

Congress intended the phrase "actual damages" in § 362(k) to be read as

encompassing attorneys' fees for part of the action to recover damages, but not

for another part.

20

Section 362(k) clearly includes attorneys' fees as an element of damages that the debtor has a right to recover for a violation of § 362. By the statute's very construction, attorneys' fees are included in or a part of actual damages. To offer payment on a part of the actual damages, not including the attorneys' fees, is a failure to offer payment for all of the actual damages. Accordingly, the violation continues. Counsel can locate no other statutory provisions or any other relevant statutes that read to the contrary. The clear reading of the statute is that attorney's fees are part of the damages mandated by Congress. This Court's ruling in *Sternberg* failed to account for the express language of the Code. More importantly, this court's reasoning was rejected by *FAA*, requiring this panel to reconsider *Sternberg* in light of its holding. *See FAA*, 132 S.Ct. at 1449.

## B. Congress Declined to Clarify "Actual Damages" in § 362(k) in 2005

Prior to 2005, the established precedent throughout the United States was to award attorneys' fees and costs for prosecuting automatic stay violations as "actual damages" against creditor defendants whether incurred to halt the violation or to litigate damages. *See In re Dawson*, 390 F.3d 1139 (9th Cir. 2004); *Havelock v. Taxel (In re Pace)*, 159 B.R. 890, 900 (9th Cir. BAP 1993). When revising the bankruptcy law in 2005, if Congress had been dissatisfied with the prevailing interpretation of § 362(k), it would have been trivial to add

21

language that substantiated the reading preferred by *Sternberg* (for example, saying that the debtor "shall recover actual damages, including costs and *such attorneys' fees as are incurred to halt the violation*"). Congress made no such change, even while making other changes to the language of § 362(k) itself. The only reasonable conclusion is that Congress believed that § 362(k), as universally interpreted by bankruptcy courts throughout the nation, was functioning as it was supposed to function.

Congress enacted the BAPCPA amendments in 2005 to correct perceived abuses of the bankruptcy system. *Milavetz, Gallop & Milavetz, P. A. v. United States*, 559 U.S. 229 (2010). Along with other amendments, Congress made changes to § 362(k) and made extensive changes to § 362 as a whole. Changes to these provisions were part of a Congressional scheme to stem alleged abuses from so-called "serial filers" who, it was asserted, file multiple bankruptcy petitions solely to take advantage of the automatic stay. *See In re Reswick*, 446 B.R. 362, 371 (2011). If Congress wanted to overrule existing case law to limit the damage awards to debtors under § 362(k), it "had the opportunity to fix the problem by amending § 362(k) to remove any ambiguity [or] . . . misconception by many courts of its expressed intent. It did not." *Grine v. Chambers*, 439 B.R. 461, 470 (Bankr. N.D. Ohio, 2010).

### C. The *Sternberg* Court Did Not Properly Consider the Context and Goals Underlying § 362(k) and the Automatic Stay

The next step in interpreting "actual damages" involves analyzing the term in its statutory context, considering the entire statute, its structure, and purpose. *FAA*, 132 S.Ct. at 1449-1453; *Cooper v. FAA*, 622 F.3d 1016, 1029 (9th Cir. 2010).

The automatic stay is a cornerstone of bankruptcy law. The automatic stay arises immediately upon filing a petition for relief under the Bankruptcy Code. When it was first enacted in 1978, the Senate Report began:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. *It stops all collection efforts, all harassment,* and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

S. REP. No. 95-989, at 54-55 (1979) (emphasis added)).

The automatic stay provision of § 362(a) is fundamentally an injunction: it prohibits creditors from engaging in collection activities against a debtor for a limited period of time. It functions as a combination of a temporary restraining order and a preliminary injunction. *In re Henry*, 266 B.R. 457, 468 (Bankr. C.D. Calif. 2001). As a provision addressing acts in violation of an injunction, § 362(k)'s enactment is persuasive that Congress intended to use the provision as a deterrent to creditors who chose to ignore the stay. *See Walls v. Wells Fargo*, 276 F.3d at 508 (9th Cir. 2002).

23

Prior to the enactment of the Bankruptcy Amendments and Federal Judgeship Act of 1984 (BAFJA), which created the section now known as § 362(k)(1), bankruptcy courts routinely awarded victims of stay violations compensation (including costs and attorneys' fees) under the court's implied contempt authority and § 105. *See* Jeffrey A. Stoops, *Monetary Awards to the Debtor for Violations of the Automatic Stay,* 11 Fla. St. U.L. Rev. 423, 444-445 (1983). Some courts struggled with civil contempt as a tool to enforce the automatic stay, because the nature of the contempt power is remedial and compensatory, rather than punitive. *In re Promower, Inc.*, 74 B.R. 49, 50 (D.Md 1987) (*citing United States v. United Mine Workers*, 330 U.S. 258, 304, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1946)).

When Congress enacted the § 362(k) language in 1984, it did not include any legislative history. Considering that its enactment came in the wake of widespread criticism of use of the court's inherent contempt power to remedy stay violations under § 362, the absence of any legislative history implies that Congress was not merely codifying existing common-law remedies. *Promower,* 74 B.R. at 50. According to House Judiciary Committee chairman Peter Rodino, § 362(k) was intended to supplement the bankruptcy court's ability to remedy stay violations through civil contempt actions, not replace it. 130 Cong. Rec. H1942 (daily ed. Mar. 26, 1984). In short, there is no evidence that Congress desired to create a more stringent standard for debtors seeking relief under

24

§ 362(k) than was already available through civil contempt actions; indeed, such a standard would make the section superfluous. *In re Wagner*, 74 B.R. 898, 903 (1987).

Whether Congress intended "actual damages" under § 362(k) to limit attorney fees to those incurred for enforcement of the automatic stay, as *Sternberg* suggests, hinges on Congress' intention to create a traditional fee-shifting statute for individual debtors. To answer this question it is necessary to understand the difference between fee-shifting statutes and the federal private cause of action statutes that are not fee shifting and follow the so-called "American Rule." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 245, 247, 258-259 (1975).

The American Rule, in which each side in a legal proceeding bears its own costs, has been the norm in the United States almost since its founding. *Id.* at 247-262. Congress does not create exceptions to the American Rule arbitrarily or capriciously: fee-shifting statutes are created with purpose to satisfy certain goals. *See* Thomas D. Rowe Jr., *The Legal Theory Of Attorney Fee Shifting: A Critical Overview*, 1982 Duke L.J. 651 (1982). In determining whether a particular statute should be considered fee-shifting, it is appropriate to look at other statutes Congress has created which unquestionably constitute exceptions to the American Rule, and compare them with the context and goals

of the statute under consideration. *See Burlington v. Dague*, 505 U.S. 557,

558-569 (1992) (Blackmun, J., dissenting).

By definition, an individual bankruptcy filer is insolvent, if not indigent.

Appellant Snowden is a low-income single mother who had endured years of

financial hardship before filing bankruptcy as a last resort (ER 140-151), and

Check into Cash's subsequent violation of the automatic stay imposed

considerable additional hardship. (ER 104, 146-147, 159-161, 152-157, 13)

Like all stay violation victims, Snowden has a right to seek a remedy under

§ 362(k). From a practical standpoint, this requires the services of a competent

and knowledgeable bankruptcy attorney. When a violator is as obstinate and

dilatory as CIC has been, the amount of time and effort the debtor's attorney

must devote to securing the remedy can be considerable.

By contrast, the dollar amounts at issue in automatic stay

violations—which typically involve actions such as improperly cashing a check,

repossessing a used car, or freezing access to a debtor's checking account—are

often quite low from the creditor's perspective, but may determine whether the

debtor's children eat. It was in light of this striking disparity of effect that

Congress included attorneys' fees in the class of damages that arise from a stay

violation.

In this case, for example, the financial damages proximately caused by

CIC's violation amounted to a check for $575 plus $370 in overdraft and

26

returned check fees. (ER 110-111.) Snowden's emotional distress damages were valued by the court at $12,000. (ER 110.) While debtors' attorneys may feel considerable compassion for their low-income clients, they—like creditors' attorneys—typically do not operate charities, and cannot afford to operate indefinitely at a loss, particularly in cases such as this in which a stay violator is determined to drag the proceedings out. By including attorneys' fees in the remedy prescribed by § 362(k), Congress recognized that victims of automatic stay violations, however small, have a right to redress. Section 362(k), which is intended to be used by debtors of limited financial means to seek damages that may not total more than a few hundred dollars, clearly meets the criteria that Congress has used to create other fee-shifting statutes in the past.

The *Sternberg* Court concludes that a damages action for a stay violation is "akin to an ordinary damages action," and should therefore be subject to the American Rule.[3] *Sternberg*. 595 F.3d at 948. The comparison is inappropriate for at least three reasons. Firstly, it was rejected by the Supreme Court in *FAA*.

---

[3] That this conclusion is somewhat problematic is evidenced by this Court's subsequent decision in *Orange Blossom Limited Partnership v. Southern California Sunbelt Developers, Inc.* (*In re Southern California Sunbelt Developers, Inc.*), 608 F.3d 456 (9th Cir. 2010), in which it found it necessary to redefine § 362(k) as something other than a fee-shifting statute in order to distinguish it from 11 U.S.C. § 303(i). 608 F.3d at 464. In *Grine*, the bankruptcy court characterized this distinction as "hyper-technical legal gymnastics" and unpersuasive. 439 B.R. at 470.

*See FAA*, 132 S.Ct. at 1449. Secondly, § 362(k) is statutory, not tortious; the language of the statute determines its damages and how they should be applied. Its concept of "actual damages, including costs and attorneys' fees" is monolithic, and to suggest that some subset of attorneys' fees should somehow be teased out of it defies belief.

Thirdly, the availability of attorney's fees for litigation to prove punitive and emotional distress damages under § 362(k) does not in itself invalidate the statute's awarding of attorney's fees to victims of stay violations. Other federal statutes routinely award attorney fees and costs to for litigation of damages, including the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 et seq.; the False Claims Act, 31 U.S.C. § 3729 – 3733, and the Truth in Lending Act (TILA) 15 U.S.C. § 1601 *et seq.* More broadly, statutes that award attorney fees and costs for damage awards to prevailing parties are far from uncommon, particularly when punishing statutory violators is seen as being in the public interest—as § 362(k) surely is. *See Alyeska*, 421 U.S. at 261-262; *Dawson*, 390 F.3d at 1147-1149.

**D. The *Sternberg* Court Wrongly Concluded That Allowing Attorneys' Fees For Damage Litigation "Further[s] Neither the Financial Nor the Non-Financial Goals of the Automatic Stay."**

*Sternberg* constitutes a rejection of *Dawson's* declaration that the individual is entitled to a focused and compassionate effort on the part of the

legal system to alleviate otherwise insurmountable social and economic problems, with emphasis on the dignity of the consumer as an individual who is in need of help. *Dawson*, 390 F.3d at 1148 (*quoting* H.R. Rep. No. 95-595, at 173, reprinted in 1978 U.S.C.C.A.N. 5963, 6134). Failing to award attorney fees incurred in pursuit of these non-financial damages under 11 U.S.C. § 362(k) contradicts, or at the very least challenges, the policy goals of the Code provision and also fails to support the integrity of the bankruptcy system.

If *Sternberg* is strictly applied to the present case, the debtor would never have received relief, because the cost of obtaining that relief would exceed the award. Snowden's actual damages stem from post-filing creditor harassment (ER 100-104) and the unlawful ACH transaction of $575.00 from a pre-petition payday loan. (ER 13, 102)—the type of action that on its face may generate a small recovery, but certainly not a lavish reward that could support a contingent attorney fee award as the tort actions referred to in *Sternberg*. 595 F.3d at 948. Nonetheless, CIC's harassment of Snowden with post-petition phone calls (ER 100-104) and unauthorized withdrawal from her bank account (ER 13, 102) caused Snowden a major financial setback and intense emotional distress, ruining any hope for a "breathing spell."

The non-financial purpose of the automatic stay is to provide for an individual's emotional and psychological well-being, not only after a stay violation but by creating strong disincentives to violate the stay in the first place.

29

*See* S. Rep. No. 94-1011, p. 6 (1976). *Sternberg*'s emphasis on stopping the debtor from receiving any potential "reward" after a stay violation, regardless of the egregiousness of the violation, undermines this purpose.

In light of the Supreme Court's decision in *FAA v. Cooper*, 132 S.Ct. 1441 (2012), this Court should revisit *Sternberg*, which is at odds with the majority of courts to consider the issue. Upon proper application of the plain language of § 362(k), this Court should reverse the bankruptcy court and hold that attorney's fees, not just a subset of attorney's fees, are recoverable in an action for violation of the automatic stay.

## II.   THE BANKRUPTCY COURT ERRED IN FINDING THAT CHECK INTO CASH "REMEDIED" ITS STAY VIOLATION BY MERELY OFFERING TO PAY DEBTOR A DE MINIMUS AMOUNT FOR DAMAGES

In *Sternberg,* this Court held that a debtor cannot recover attorney fees in an action under § 362(k) after the violation of the stay has been remedied. *Sternberg,* 595 F.3d. at 940. However, the *Sternberg* Court did not give any guidance on when a violation has been remedied.

The bankruptcy court ruled that Check Into Cash's May 20, 2009, offer to reimburse Snowden for the check it cashed via an ACH transaction, bank charges resulting from that action, and an (arbitrarily chosen) estimate of attorneys' fees should be considered a remedy of the stay violation under *Sternberg*. (ER 33) However, that offer fails to qualify as a remedy in several

respects. First, it is unclear if or how a conditional offer of settlement could ever be a remedy of a stay violation. Second, CIC's offer failed to consider the 16 post-petition collection calls to Snowden, (ER 104) and the emotional distress caused to the debtor. (ER 104, 146-147, 159-161, 152-157, 13.)

## A. "In *Sternberg*, the point at which the stay violation had been remedied was clear."

Attorney fees related to enforcing the stay cannot be distinct from those incurred to prove damages when the factual issues in a case resolving the stay are unclear. *Sternberg*, 595 F.3d at 946-48. Since the facts in *Sternberg* involved the stay of litigation, the remedy of the stay violation was clear. *Sternberg*, 595 F.3d. at 941-42. When the stay violation involves a willful taking of money in violation of the automatic stay injunction, anything short of a return of the debtor's funds would not remedy the violation. Certainly, the tender of a conditional offer of settlement would not qualify.

The bankruptcy court and district court found the conditional offer a remedy because of a misreading of the *Sternberg* holding. (ER 33, 5-6, 56-58) *Sternberg* does not stand for a wholesale denial of attorneys' fees related to actual damages in stay violation cases, even when those fees were incurred to prove damages for emotional distress. An award of attorneys' fees under § 362(k) "provides that a debtor injured by a willful violation of the stay may recover attorney's fees to the extent that they are part of her damages." *In re*

31

*Siharath*, 285 B.R. 299, 306 (Bankr.D.Minn.2002). "In other words, [§ 362(k)]

provides for recovery of damages *including* attorney's fees, not damages *and*

attorney's fees." *Id*. (Emphasis in original.)

Under relevant facts, § 362(k) would not preclude attorney fees for

litigation if the attorney fees are part of the debtor's damages to enforce the stay.

*Sternberg*'s ruling directs the lower courts to award attorney fees on a case by

case basis, determining which attorney's fees are recoverable (those fees

incurred to enforce the stay and remedy its violation) and which are not (fees

incurred to "prove damages"). *Sternberg*, 595 F.3d at 948. It does not exclude

all attorney fees involved in litigation activities regarding damages. Rather, it

forecloses an award of attorney fees related to proving damages, such as a

situation where a debtor incurs attorney's fees for initiating a court action for

damages resulting from a stay violation. *Schwartz-Tallard*, 473 B.R. at 348.

In *Sternberg*, the factual scenario involved a property settlement from a

domestic support obligation, and the issuance of a state court's over-broad order

that initially violated the stay, requiring that debtor Johnston pay a judgment of

$87,525.60 or be jailed "until the full amount . . . is paid." *Sternberg*, 595 F.3d

at 941. Johnston finally stopped the issuance of the state court order through an

emergency motion in bankruptcy court, setting aside the state court's minute

order. Parker (Johnston's ex-wife) and Sternberg (Parker's attorney) did not

appeal that order. *Id*. at 942.

"In *Sternberg*, the point at which the stay violation had been 'remedied' was clear." *Schwartz-Tallard*, 473 B.R. at 350 (citing *Sternberg*, 595 F.3d. at 941-42). But what if a creditor in violation of an automatic stay fails to follow through with its affirmative duty to comply, fails to take necessary corrective actions, and remains in violation?

## B. Check Into Cash's Offer Did Not Cure the Stay Violation

The district court erred when it upheld the bankruptcy court's finding that the offer made by Check Into Cash on May 20, 2009 remedied the stay violation such that under *Sternberg*, the debtor's attorney fees beyond this date were not collectible. (ER 33, 5-6, 56-58.) Neither the district court nor the bankruptcy court cited any authority that a conditional offer, impliedly requiring the forfeiture of all claims for damages, could remedy an ongoing stay violation. (ER 33, 5-6, 56-58.)

The error of the lower courts can best be understood by analogizing to the facts of *Sternberg*. Had Sternberg and Parker offered to file a motion to vacate the State Court order, with a nominal token amount of money to compensate for attorney fees, would this Court have held that the stay violation had been remedied? It was only when an *order was entered* vacating the State Court order that the violation was remedied. Similarly, it was not the obligation of Snowden to accept the offer from CIC. Rather, it was CIC's obligation to return

33

the debtor's funds with no strings attached. Only then, under the *Sternberg*

theory, would the ongoing violation be cured.

*Check Into Cash's Offer Was a Litigation Tactic, Not a Genuine Effort at Remedy*

The bankruptcy court ruled that CIC's initial offer of $1,445.00 on May

20, 2009 constituted a remedy under *Sternberg*, and that CIC was not liable for

any attorney's fees incurred after that time. This ruling was in error. (ER 33.)

Check Into Cash could have shown good faith by paying the equivalent of

its offer to the Court Registry pending the bankruptcy court's ruling; it did not.

*See Mwangi v. Wells Fargo Bank, N.A.,* 432 B.R. 812, 823-824 (9th Cir. BAP).

Then, in October 2009, when the bankruptcy court rejected CIC's assertion that

presentment of the check fell under the § 362(b)(11) exception to the automatic

stay and found its violation of the stay willful, CIC still failed to return the

funds to Snowden. In knowing defiance of its affirmative duty to correct the

stay violation notwithstanding Snowden's continued litigation for damages, CIC

retained these funds even though the "onus to return estate property is placed

upon the possessor; it does not fall on the debtor to pursue the possessor."

*Sternberg*, 595 F.3d at 944.

The situation here is similar to the situation in *In re Campion,* 294 B.R.

313, 315 (9th Cir. BAP 2003). In that case, the creditor made an offer of

judgment Federal Rule of Civil Procedure 68 offer of judgment ("FRCP 68") to

34

the debtor for $251.00 to settle a stay violation case, without any provision for attorney fees or other damages. Following the basic rules of contract construction, in which ambiguities are construed against the offeror and supplemented by the requirement that waivers must be clear and unambiguous, the court found the offer of judgment deficient and ruled that the matter was not settled for $251.00 alone. *Campion,* 294 BR at 318 n.2 .

In this case, CIC's offer does not involve a FRCP 68 offer of judgment, but the nature of deficiency in the *Campion* offer is still relevant. *Id.* There, the court analyzed the offer, finding the lack of willfulness and a waiver of other claims in the offer deficient. *Id.* Here, the offer CIC made to Snowden also contained material deficiencies. Check Into Cash's offer to Snowden for a refund of pecuniary damages and nominal attorneys' fees failed to admit willfulness or include a waiver of other claims, including economic loss damages associated with CIC's collection harassment, damages for emotional distress, and punitive damages, as allowed under § 362(k). (ER 108) Check Into Cash offered less money for attorney fees than the bankruptcy court ultimately granted in its judgment, which awarded attorney fees of $2,538.55 through May 20, 2009. (ER 33, 91-92.)

In *Sternberg*, the court did not find a determination of willfulness a material factor for enforcement of the stay and thus refrained from awarding Johnston attorney fees, finding those actions an attempt to obtain damages.

However, in facts distinct from this case, Johnston filed a separate adversary proceeding for damages against *Sternberg*, the attorney, separate and apart from the emergency motion needed to stop the stay violation. His use of continued litigation was unequivocally an attempt to collect damages. In contrast, Snowden's motion for sanctions was the vehicle she used to stop the automatic stay violation after other attempts failed. (ER 38) It is illogical to find an order staying state court litigation to be analogous to Snowden's refusal of a materially deficient conditional offer from a creditor that did not tender funds after the offer was refused.

FRCP 68 is a clear illustration of Congress intentionally limiting the recoverability of attorney fees after an offer of judgment is made. However, the district and bankruptcy courts' interpretation of CIC's offer as a remedy of the stay violation effectively makes the *Sternberg* rule a far more powerful cutoff of attorney fees than that designed by Congress. If the offer to remedy a stay violation effectively *did* remedy the stay violation, as the district and bankruptcy courts ruled, FRCP 68's applicability to stay violation cases such as *Campion* loses all meaning. Under the offer-as-remedy interpretation, if the debtor in *Campion* had refused the offer but recovered more than the offer at trial, attorney fees would still be cut off as of the date of the offer of judgment. Fed. R. Civ.P. 68. A creditor could exploit this loophole by making a token offer of judgment that includes stopping its violation of the stay, cutting off its

36

liability for future attorney fees without even making an admission of willfulness. The debtor would then be left to litigate the issue of willfulness if she is to have any hope of recovering damages under § 362(k), with no hope of recovering fees incurred after the token offer was made.

## C. Check Into Cash's Offer Did Not Account For the Full Stay Violation

Check Into Cash's stay violation, and the damages resulting therefrom, did not begin on February 16, 2009 when CIC improperly debited Snowden's checking account. (ER 102.) The stay violation began on January 26, 2009 with the first of CIC's 16 harassing telephone calls to Snowden after she filed bankruptcy. (ER 100-104.) Because CIC's May 20, 2009 offer to Snowden included no offer of compensation for the emotional distress this harassment proximately caused, despite the fact that CIC's own records contained proof that the calls were made, it did not constitute a remedy for the stay violation. (ER 108.) Moreover, as CIC has never tendered any other such offer that includes compensation for the telephone harassment, and has not paid the emotional distress damages the bankruptcy court awarded to Snowden, the stay violation continues to this day.

From the moment of its first post-petition collection call on January 26, 2009, Check Into Cash was in violation of the automatic stay. This refusal to acknowledge the reality of Snowden's bankruptcy petition was to characterize

CIC's actions through the winter and spring of 2009, to the point where, in the words of the bankruptcy judge, "it took the proverbial 2 by 4, the formal motion for sanctions, to get the attention of anybody in CIC." (ER 38.) Only after receiving Snowden's motion for sanctions, CIC finally made an initial offer:

- $575.00, for the amount CIC had wrongly withdrawn; and

- $370.00, for overdraft and bank fees caused by the unauthorized withdrawal; and

- $720.00, for three hours at Snowden's attorney's bill rate.

On appeal, the district court ruled that this offer was the triggering event that stopped the stay violation (and thus limited attorney fees to those incurred through that date), stating that "had Snowden accepted CIC's offer her losses would have been righted and the violation would have come to an end." (ER 5-6, 56-57.) Yet the offer contained no compensation for the harassing post-petition phone calls, and no acknowledgement that either the calls or the withdrawal constituted a violation. Indeed, it did not even acknowledge that the calls had taken place at all. (ER 108.) It cannot be reasonably argued that this offer, whether accepted or not, constituted a complete remedy of the stay violation.

Subsequently, CIC's continued insistence that it did nothing to violate the stay, and its position that it was Snowden's burden to do more to tell them that her bankruptcy continued their violation and her emotional distress, amounted to maintaining its harassment of the debtor concerning a pre-petition debt, rather

than a determination of the resulting culpability for an injury stemming from a violation of the automatic stay. Absent an offer remedying this, Snowden needed to retain an attorney to prove that CIC willfully violated the stay and to prove that she suffered emotional distress. Her damages proximately caused by the automatic stay included emotional distress, which necessitates fees as damages. Her distress was not "fleeting or trivial," to quote this Court from *In re Dawson*, 390 F.3d. at 1149. It was significant and substantial, as the bankruptcy judge found, and any reasonable person in similar circumstances would have felt the same. (ER 39.) When viewed this way, the attorney's fees are an economic loss—proximately caused by CIC's willful violation of the stay. *Sternberg*, 595 F.3d at 948.

### D. The Motion For Sanctions Was a Shield, Not a Sword

*Sternberg* did not forbid attorney fees incurred for actions that necessitate an evidentiary trial or adversary proceeding to establish a debtor's actual damages proximately caused by violation of the automatic stay. Here, reaching a conclusion that the pursuit of emotional distress damages was just a damage action would require that the debtor have received an offer that included some remedy for the collection harassment. Debtor Snowden was also obligated to incur significant expenses for extensive research and briefing to aid the bankruptcy court in its determination of that liability. These expenses were not

39

incurred to "prove damages," nor were they incurred in order to use the stay as a "sword." *Sternberg*, 595 F.3d. at 1124. Rather, they were incurred to ascertain the extent to which the stay could be used as a "shield" to protect Snowden from CIC's conduct. *Id*.

## III.    THE BANKRUPTCY COURT ERRED IN DECLINING TO SANCTION OR EXERCISE ITS CIVIL CONTEMPT AUTHORITY AGAINST CHECK INTO CASH

The civil contempt powers of the bankruptcy court are found in section 105(a), which authorizes a bankruptcy court to issue "any order, process or judgment that is necessary to carry out the provisions of [the Bankruptcy Code]." Although the *Sternberg* Court limited the ability of a Debtor to obtain attorney fees for the recovery of prosecuting a damages action under 11 U.S.C. § 362(k), it expressly declined to limit "the availability of contempt sanctions, including attorney fees, where otherwise appropriate." *Sternberg*, 595 F.3d at 949 n. 3 (citing *In re Dyer*, 322 F.3d 1178, 1189 (9th Cir.2003)). The facts in this case show that a finding of civil contempt is warranted here.

### A. Congress Intended Section 362(k) To Supplement Section 105, Not Replace It

Although most courts in the Ninth Circuit have interpreted the alternative power to find contempt sanctions for § 362(k) violations as reserved for entities and trustees that cannot obtain damages under § 362(k), the history of the

provision leads to a different result. *See, e.g., Johnston Envtl. Corp. v. Knight (In re Goodman),* 991 F.2d 613, 620 (9th Cir.1993); *Computer Communications Inc. v. Codex Corp. (In re Computer Communications, Inc.),* 824 F.2d 725, 731 (9th Cir. 1987); *In re Sielaff,* 164 B.R. 560, 568 (Bankr.W.D.Mich.1994) (finding that civil contempt and § 362(k) provide alternate grounds for imposing sanctions where the debtor is an individual).

When Congress added § 362(k) to the Code with the BAFJA, it did not express the precise reason for the enactment of subsection (k). *See* 2 *Collier on Bankruptcy* ¶ 362.12, at 362–74 (15th ed. 1987) ("Collier"). It does appear, though, that the subsection (k) was meant to supplement, not replace, the civil contempt remedy. *See* 130 Cong.Rec. H1942 (daily ed. March 26, 1984) (remarks of Rep. Rodino) (section 362(k) "is an additional right of individual debtors, and is not intended to foreclose recovery under already existing remedies"); 2 *Collier* ¶ 362.13, at 362–74 (suggesting that while recovery of damages, counsel fees and costs may be discretionary in a contempt proceeding, such relief is mandatory under section 362(k)). Under this reading of the Code, Snowden should not be foreclosed from pursuing contempt as an additional sanction to obtain her attorney fees.

**B. Check Into Cash's Actions Warrant Sanction Under Section 105**

Here, Snowden is seeking contempt damages for CIC's willful failure to comply with the automatic stay, non-compliance with bankruptcy court orders finding CIC's conduct willful, and failing to tender funds obtained post-petition on account of a pre-petition debt in violation of the automatic stay. CIC's conduct is not the type this court should allow. Check Into Cash failed to conform its actions to the automatic stay after Snowden rejected its offer to compensate Snowden as a customer courtesy. (ER 108) It ignored the bankruptcy court's December 9, 2009 ruling, concluding that its actions were willful violations of the automatic stay, not within the § 362(b)(11) exception. At that time, in defiance of this specific court order finding willfulness on the part of CIC for violations of the automatic stay, CIC kept the debtor's pecuniary damages from the wrongful presentment of a payday loan transaction, while denying any wrongdoing, remorse or duty to correct its business practices to observe the automatic stay. (ER 138 – 139.)

> [I]t would be improper to permit a creditor to retain funds obtained
> in violation of § 362.

*In re Henry*, 266 B.R. 457, 481 (Bankr. C.D. Calif. 2001).

Check Into Cash had an affirmative duty to comply with the automatic stay when it became aware of the bankruptcy filing, and it failed to do so. *See In re Del Mission Ltd.*, 98 F.3d 1147 at 1151. Compliance with this affirmative

duty required corrective actions to relieve the automatic stay violations, irrespective of any argument by Check Into Cash that its actions were justified, whether that be because Snowden refused its offer of settlement or because CIC believed the stay did not apply due to an exception under 362(b). *Sternberg*, 595 F.3d at 944. "The creditor takes the risk of being assessed damages if he fails to obtain clarification from the bankruptcy court." *Eskanos & Adler, PC v. Leetien,* 309 F.3d 1210, 1215 (9th Cir. 2002). A party's violation of the stay may be willful even if a creditor believed itself justified in taking an action found to be in violation of the automatic stay. *In re Cinematronics, Inc.,* 111 B.R. 892, 900 (Bankr. S.D. Cal. 1990),

The creditor takes a calculated risk where it undertakes to make its own determination of what the stay means. *In re Gray,* 97 B.R. 930, 936 (Bankr. N.D. Ill. 1989). Once a willful stay violation is determined, all actions taken in violation of the stay are not merely voidable—they are void. *In re Gruntz*, 202 F.3d 1074, 1082 (9th Cir. 2000).

## C. The Bankruptcy Court Erred in Declining to Sanction Check Into Cash For Abuse of Process

Section 105(a) authorizes a bankruptcy court to "issue any order, process, or judgment that is necessary to carry out the provisions of [Title 11]." § 105(a). In *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365 (2007), the Supreme Court recognized bankruptcy judges' authority to take action under § 105(a) as a

43

broad one. 549 U.S. 365,at 375 (2007). Under § 105(a), a bankruptcy court may exercise its equitable authority either "to carry out the provisions of the bankruptcy code or to vindicate the court's own authority, including by "prevent(ing) an abuse of process." 11 U.S.C. § 105(a). As section 105(a) does not authorize bankruptcy courts to take action that infringes upon other provisions of the Bankruptcy Code, it is a "spacious" grant of authority intended to safeguard the bankruptcy system. *Malley v. Agin*, 693 F.3d 28, 30 (1st Cir. 2012); *see* Brief for the U.S. as Amicus Curiae at 11; *Law v. Siegel*, No. 12-5196 (U.S. *petition for cert. granted* Jun. 17, 2013).

Courts have used their inherent power to craft remedies for a range of bad faith conduct, including not only civil contempt but penalizing counsel, assessing costs and fees, and other remedies. *Marrama,* 549 U.S. at 383 (Alito, J., dissenting). In exceptional circumstances, where an appellate court first determines that all other statutory or rule sources authorizing damages are not "up to the task," the Ninth Circuit has recognized that an award of sanctions was justified under § 105(a). *See Miller v. Cardinale (In re Deville),* 280 B.R. 483, 494-97 (9th Cir. BAP 2002), *aff'd* 361 F.3d 539 (9th Cir.2004).

In *Malley*, a decision of the First Circuit, the court embraced the *Marrama* holding to conclude that § 105(a) should be read as allowing bankruptcy courts to issue remedies when needed even though they may not have not been specifically enumerated elsewhere in the code. *Malley*, 693 F.3d

44

at 30. In an analysis of statutory construction of § 105(a), the court said as

follows:

> [T]he limitation to carrying out "provisions" must be read within
> the entire section in which it occurs, which in its second sentence
> authorizes the court sua sponte to take "any action necessary or
> appropriate . . . to prevent an abuse of process." We have been
> given no reason to think that Congress would have intended the
> spaciousness of this authority to be confined only to sua sponte
> action as distinct from rulings at a trustee's behest, and it makes
> sense to read the second sentence's authority to prevent abuse of
> process as an example of what the first sentence speaks of as
> action "necessary or appropriate to carry out the provisions by this
> title."

*Id.*

This broad reading of § 105(a) does not enlarge the court's authority

beyond "carry[ing] out the provisions" of the Code. In this case, facing an

obstinate and bad-faith creditor, it is precisely in order to carry out the

provisions of the code that this court should have the power to sanction with

attorney fees.

The *Malley* court's broad reading of § 105(a) endorsed the Ninth

Circuit's conclusion in *Latman v. Burdette*, 366 F.3d. 774 (9th Cir. 2004),

which used § 105(a) to create a remedy that went beyond the language of the

code in order to protect the integrity of the bankruptcy process from a debtor

who wrongfully concealed non-exempt assets. *Malley*, 693 F.3d at 30 (citing

*Latman*, 366 F.3d at 786); *but see Walls,* 276 F.3d at 507 (stating that a

bankruptcy court cannot read other remedies into those already fixed by

45

Congress). If using § 105(a) to sanction a bad-faith debtor is permissible, there is no justification for denying the bankruptcy court the same authority when it faces a bad-faith creditor.

The bankruptcy judge did not make an explicit finding of bath faith at the evidentiary hearing, but the evidence presented proved that CIC acted in bad faith in at least three aspects. First, CIC acted in bad faith when it disingenuously denied any wrongdoing, despite knowing the truth to be otherwise. (ER 108) CIC's attorney Lauren Hosie testified that she retrieved and reviewed Snowden's customer file after learning of the motion for sanctions. (ER 115-116.) In addition to information about CIC's wrongful withdrawal of funds, this file included a call log that listed 16 collection calls that CIC had made to Snowden after the date of her filing. (ER 100-104.) Despite possessing evidence of CIC's stay violation, Hosie made no reference to the calls in her e-mailed offer, which merely asserted that "CIC did not violate the automatic stay by presenting Ms. Snowden's check". (ER 108.)

Second, CIC acted in bad faith when its initial offer to Snowden included no compensation for its harassing phone calls. (ER 108.) CIC offered to return the amount of the withdrawal plus compensation for the overdraft charges the withdrawal caused and a nominal sum for Snowden's attorney's time. It included no compensation for emotional distress or any other losses its 16 harassing phone calls had caused Snowden. (ER 108.)

46

Third, CIC acted in bad faith when it retained Snowden's property until the bankruptcy court's final award of damages. (ER 138 – 139, 44.) A creditor that violates the automatic stay has an affirmative duty to right the stay violation when the creditor becomes aware of it. *Del Mission*, 98 F.3d. at 1151. Even after the bankruptcy court ruled in December 2009 that CIC had violated the stay, CIC did not return the wrongfully debited funds to Snowden until after the trial for damages in November 2010, 11 months later. In total, CIC wrongfully held Snowden's funds for 21 months. (ER 138 – 139, 44.)

"If § 105(a) was not meant to empower a court to issue an order like the one before us, it is hard to see what use Congress had in mind for it." *Malley*, 693 F.3d. at 30. A similar sanction is appropriate here.

## <u>CONCLUSION</u>

Upon filing her bankruptcy, Ms. Snowden was protected from further action against her creditors by the automatic stay. Despite receiving multiple notices of her bankruptcy proceeding, CIC willfully ignored the automatic stay and electronically cashed funds belonging to Ms. Snowden. CIC failed to return the funds for over a year, only after prolonged litigation. It is now clear, both from the Supreme Court's Decision in *FAA v. Cooper* that rejects the analysis of the term "actual damages" in *Sternberg*, and from the Bankruptcy Court's misinterpretation of CIC's offer as a remedy, that Ms. Snowden is entitled under

47

§362(k) to attorney fees for the prosecution of her case at least through the actual remedy of the stay violation. The egregious bad faith of CIC in failing to return the wrongly seized funds makes clear that the Bankruptcy Court also erred in failing to award attorney fees for the litigation as a sanction for contempt under §105. The standard for attorney fee awards in stay violation cases should not be so firmly tilted in the violating creditor's favor as to ruin the checks and balances of the bankruptcy code.

## STATEMENT OF RELATED CASES

*America's Servicing Company vs. Irene Michael Schartz-Tallard*, Case# 12-60052, is currently pending before the Ninth Circuit Court of Appeals.

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i). As reported by Microsoft Word 2010, it contains 9,850 words, excluding the portions exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and (6). The body of the brief is set in 14 pt. Times New Roman.

## CERTIFICATE OF SERVICE

I hereby certify that on August 19th, 2013, I electronically filed the

Appellant Rupanjali Snowden's Brief for Appellant using the CM/ECF System

which will send notification of such filing to the below counsel of record.

| | |
|---|---|
| Amit D. Ranade, WSBA# 34878 | Alexander M. Wu, WSBA# 40649 |
| adr@hcmp.com | amw@hcmp.com |
| Hillis Clark Martin & Peterson, P.S. | Hillis Clark Martin & Peterson, P.S. |
| 1221 Second Avenue, Suite 500 | 1221 Second Avenue, Suite 500 |
| Seattle, WA 98101 | Seattle, WA 98101 |
| Tel# 206-623-1745 | Tel# 206-623-1745 |
| Fax# 206-623-7789 | Fax# 206-623-778 |

DATED this 19th day of August, 2013.

/s/ Christina L. Henry
Christina L. Henry, WSBA #31273
Attorney for Rupanjali Snowden

49