Case No. 13-35291
Cross-Appeal Case No. 13-35322

========

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

========

In re RUPANJALI SNOWDEN, Debtor;

--------

RUPANJALI SNOWDEN,
Appellant,

vs.

CHECK INTO CASH OF WASHINGTON, INC.
Appellee.

--------

On appeal from the United States District Court
for the Western District of Washington
District Court Case No. 12-1095-RSL
Honorable Robert S. Lasnik

========

## APPELLEE'S PRINCIPAL AND
## RESPONSE BRIEF

========

HILLIS CLARK MARTIN & PETERSON P.S.
AMIT D. RANADE, WSBA #34878
ALEXANDER M. WU, WSBA #40649
1221 SECOND AVENUE, SUITE 500
SEATTLE, WASHINGTON 98101-2925
TELEPHONE: (206) 623-1745

Attorneys for Appellee
Check Into Cash of Washington, Inc.

# TABLE OF CONTENTS

I.     **CORPORATE DISCLOSURE STATEMENT** ...............................1

II.    **STATEMENT OF JURISDICTION**.....................................................1

III.   **STATEMENT OF THE ISSUES** ...................................................1

IV.   **STATEMENT OF THE CASE** ....................................................4

V.    **STATEMENT OF THE FACTS** ..................................................7

     A.    Check Into Cash Has Detailed Policies and Practices Designed to Comply with the Automatic Stay and Other Debt Collection Laws. ..................................8

     B.    The Stay Violation in This Case Involves a Fact Pattern That Has Never Arisen in Millions of Prior Transactions. ........................................10

     C.    Snowden Did Not Present Clear Evidence of Her Alleged Emotional Distress. ..................................13

VI.   **SUMMARY OF ARGUMENT** .....................................................15

     A.    The Bankruptcy Court Correctly Applied the American Rule and Standards Governing the Imposition of Fee-Shifting Sanctions. ..................................16

     B.    The Bankruptcy Court Applied the Wrong Standard in Imposing Punitive Damages. ..................................17

     C.    The Bankruptcy Court Held Snowden to the Wrong Burden of Proof and Misapplied the Standards Governing Her Emotional Distress Claim. ..........................18

VII.  **GENERAL STANDARD OF REVIEW** ......................................19

VIII. **ARGUMENT** ........................................................19

i

A.    This Court Should Affirm the Bankruptcy Court's Award of Fees Constituting Actual Damages and Its Denial of Fees Incurred in This Litigation. .......................... 19

    1.    The *Sternberg* decision is grounded in bedrock principles of American law .......................................... 20

        a. The Supreme Court's decision in F.A.A. v. Cooper *is consistent with this Court's conclusions in Sternberg, and it does not call for* Sternberg's *reversal.* ........................................... 23

        b. Congress did not use clear language deviating from the American Rule in Section 362(k)................. 25

        c. Congressional action in 2005 does not contradict this Court's holding in Sternberg. ......... 27

        d. The Sternberg decision is consistent with the context and purpose of the automatic stay.............. 29

        e. The inclusion of attorneys' fees as actual damages has special meaning in the bankruptcy context..................................................... 31

        f. The Bankruptcy Code sufficiently deters stay violations without Snowden's proffered interpretation.......................................................... 33

        g. Policy and equity considerations have no place in statutory construction. ......................................... 34

    2.    The bankruptcy court properly exercised discretion in determining the fees constituting Snowden's actual damages. .......................................... 36

        a. The record contains ample evidence supporting the bankruptcy court's application of Sternberg to this case.............................................................. 37

        b. The Campion case is inapposite................................ 38

B.  The Court Should Affirm the Bankruptcy Court's Denial of Civil Contempt and Inherent Authority Sanctions. ............................................................ 41

    1.  The bankruptcy court correctly denied sanctions under its inherent authority because no one flouted its authority during the litigation. ................. 42

    2.  The bankruptcy court exercised appropriate discretion in denying civil contempt sanctions. ........... 44

C.  The Court Should Reverse and Vacate the Punitive Damage Award Because Honest Mistakes Do Not Merit Extraordinary Punishment. ....................................... 48

    1.  The "reckless disregard" standard requires greater culpability than the "willful violation" standard. ....................................................................... 49

    2.  The bankruptcy court applied the lower "willful violation" standard instead of the elevated standard governing punitive damage awards. ........... 52

    3.  Under the bankruptcy court's standard, every creditor with an imperfect bankruptcy policy is subject to punitive damages. ....................................... 54

D.  The Court Should Reverse and Vacate the Emotional Distress Award. ...................................................... 57

    1.  The bankruptcy court applied a preponderance standard instead of a clear evidence standard. ........... 58

    2.  The bankruptcy court applied the elements disjunctively rather than conjunctively, as *Dawson* requires. ....................................... 61

IX.  CONCLUSION .............................................................. 64

X.  STATEMENT OF RELATED CASES ....................................... 65

iii

**XI.   CERTIFICATE OF COMPLIANCE** ............................................**66**

# TABLE OF AUTHORITIES

## CASES

*Accord Fulfillment Servs. Inc. v. United Parcel Serv., Inc.*,
    528 F.3d 614 (9th Cir. 2008) ............................................................. 27

*Addington v. Texas*,
    441 U.S. 418 (1979) ........................................................................ 58

*Aiello v. Providian Fin. Corp.*,
    239 F.3d 876 (7th Cir. 2001) ..................................................... 18, 63

*Alyeska Pipeline Service Co. v. Wilderness Society*,
    421 U.S. 240 (1975) ........................................................................ 21

*America's Servicing Co. v. Schwartz-Tallard*,
    438 B.R. 313 (D. Nev. 2010) .......................................................... 62

*Anderson v. City of Bessemer City, N.C.*,
    470 U.S. 564, 577 (1985) ................................................................ 20

*Anderson v. Wilson*,
    289 U.S. 20 (1933) ......................................................................... 35

*Arcambel v. Wiseman*,
    3 U.S. (Dall.) 306 (1796) ............................................................... 22

*Association of Flight Attendants v. Horizon Air Industries*,
    976 F.2d 541 (9th Cir. 1992) .......................................................... 43

*Bhan v. NME Hosps, Inc.*,
    929 F.2d 1404 (9th Cir. 1991) ........................................................ 55

*BMW of N. America, Inc. v. Gore*,
    517 U.S. 559 (1996) ........................................................................ 55

*Bradford v. HSBC Mortg. Corp.*,
    280 F.R.D. 257 (E.D. Va. 2012) ..................................................... 22

*Brown v. Barry,*
   3 U.S. (Dall.) 365 (1797).................................................................22

*Bureau of Alcohol, Tobacco and Firearms v. F.L.R.A.,*
   464 U.S. 89 (1983) ........................................................................25

*Cal. Employment Dev. Dep't v. Taxel (In re Del Mission Ltd.),*
   98 F.3d 1147 (9th Cir. 1996)........................................................45

*Caldwell v. Unified Capital Corp. (In re Rainbow Magazine,
   Inc.),* 77 F.3d 278 (9th Cir. 1996) .........................................41

*Chambers v. NASCO, Inc.,*
   501 U.S. 32 (1991) ..........................................................41, 42, 46

*Cochetti v. Desmond,*
   572 F.2d 102 (3d Cir. 1978) .........................................................50

*Connecticut Nat. Bank v. Germain,*
   503 U.S. 249 (1992) ......................................................................27

*Crooks v. Harrelson,*
   282 U.S. 55 (1930) ........................................................................62

*Dang v. Cross,*
   422 F.3d 800 (9th Cir. 2005).........................................................55

*Davis v. United States,*
   136 B.R. 414 (E.D. Va. 1992) .......................................................51

*Day-Brite Lighting Inc. v. State of Mo.,*
   342 U.S. 421 (1952) ......................................................................35

*Eskanos & Adler, P.C. v. Leetien,*
   309 F.3d 1210 (9th Cir. 2002)........................................................49

*Exxon Shipping Co. v. Baker,*
   554 U.S. 471 (2008) ......................................................................50

*F.A.A. v. Cooper,*
   566 U.S. __, 132 S.Ct. 1441 (2012) ........................................23, 24

vi

*Fink v. Gomez,*
   239 F.3d 989 (9th Cir. 2001)............................................................44

*Fogerty v. Fantasy, Inc.,*
   510 U.S. 517 (1994) ..........................................................21, 25, 27

*Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,*
   530 U.S. 1 (2000) ..............................................................................27

*In re Bloom,*
   875 F.2d 224 (9th Cir. 1989)....................................................49, 50

*In re Brobeck,*
   430 B.R. 898 (N.D. Cal. 2010)........................................................38

*In re Campion,*
   294 B.R. 313 (B.A.P. 9th Cir. 2003).................................38, 39, 40

*In re Carlton,*
   2011 WL 3799885 (Bankr. N.D. Ala. Aug. 26, 2011).......................22

*In re Computer Communications, Inc.,*
   824 F.2d 725 (9th Cir. 1987)............................................................45

*In re Cox,*
   214 B.R. 635 (Bankr. N.D. Ala. 1997) ............................................51

*In re Dawson*
   390 F.3d 1139 (9th Cir. 2004).................................................passim

*In re Dayley,*
   349 B.R. 825 (Bankr. D. Idaho 2006) .............................................51

*In re Dyer,*
   322 F.3d 1178 (9th Cir. 2003)..........................................................42

*In re Eashai,*
   167 B.R. 181 (B.A.P 9th Cir. 1994)
   *aff'd* 87 F.3d 1082 (9th Cir. 1996) ..................................................52

*In re Goodman,*
   991 F.2d 613 (9th Cir. 1993).............................................................45

*In re Gorringe*,
348 B.R. 789 (Bankr. D. Idaho 2006) ................................................52

*In re Grine*,
439 B.R. 461 (Bankr. N.D. Ohio 2010) .......................................29, 30

*In re Hildreth*,
357 B.R. 650 (M.D. Ala. 2006) ...........................................................50

*In re Ketelsen*,
104 B.R. 242 (D. S.D. 1988)
*aff'd* 880 F.2d 990 (8th Cir. 1989) .....................................................50

*In re Lehtinen*,
564 F.3d 1052 (9th Cir. 2009)............................................................42

*In re Lord*,
270 B.R. 787 (Bankr. M.D. Ga. 1998).................................................51

*In re Ozenne*,
337 B.R. 214 (B.A.P. 9th Cir. 2006)...................................................53

*In re Pace*,
67 F.3d 187 (9th Cir. 1995)................................................................49

*In re Peralta*,
317 B.R. 381 (B.A.P. 9th Cir. 2004)...................................................52

*In re Rains*,
428 F.3d 893 (9th Cir. 2005)..............................................................19

*In re Ramirez*,
183 B.R. 583 (9th Cir. BAP 1995) ................................................48, 49

*In re Roman*,
283 B.R. 1 (B.A.P. 9th Cir. 2002).......................................................45

*In re Schwartz-Tallard*,
473 B.R. 340 (B.A.P. 9th Cir. 2012).................................36, 46, 47, 48

*In re Sielaff*,
164 B.R. 560 (Bankr. W.D. Mich. 1994).............................................45

*In re Siharath*,
    285 B.R. 299 (Bankr. D. Minn. 2002)..................................................28

*In re Snowden*,
    2012 WL 600697 (W.D. Wash. Feb. 21, 2012) .......................37, 41, 56

*In re Stasz*,
    387 B.R. 271 (B.A.P. 9th Cir. 2008)....................................................42

*In re Stucka*,
    77 B.R. 777 (Bankr. C.D. Cal. 1987) ..................................................56

*In re Thompson*,
    426 B.R. 759 (Bankr. E.D. Ill. 2010) ..................................................22

*Isbrandtsen Co. v. Johnson*,
    343 U.S. 779 (1952)............................................................................22

*Johnston Envtl. Corp. v. Knight (In re Goodman)*,
    991 F.2d 613 (9th Cir. 1993)...............................................................42

*Lamie v. U.S. Tr.*,
    540 U.S. 526, 538 (2004) ..............................................................32, 35

*Marek v. Chesny*,
    473 U.S. 1 (1985) ................................................................................39

*Miller v. Cardinale (In re Deville)*,
    280 B.R. 483 (B.A.P. 9th Cir. 2002),
    *aff'd* 361 F.3d 539 (9th Cir. 2004) .....................................................47

*Nusom v. Comh Woodburn, Inc.*,
    122 F.3d 830 (9th Cir. 1997)...............................................................39

*Overstreet v. North Shore Corp.*,
    318 U.S. 125 (1943) ............................................................................25

*Pinkstaff v. United States (In re Pinkstaff)*,
    974 F.2d 113 (9th Cir.1992)................................................................49

*Robert C. Herd & Co. v. Krawill Mach. Corp.*,
    359 U.S. 297 (1959) ............................................................................22

*Sigma Micro Corp. v. Healthcentral.com (In re Healthcentral.com),*
  504 F.3d 775 (9th Cir. 2007)................................................................38

*Silver Sage Partners Ltd. v. City of Desert Hot Springs (In re City of Desert Hot Springs),*
  339 F.3d 782 (9th Cir. 2003)................................................................1

*Smith v. Wade,*
  461 U.S. 30 (1983)................................................................................50

*State of Cal. Emp't Dev. Dep't v. Taxel (In re Del Mission Ltd.),*
  98 F.3d 1147 (9th Cir. 1996)...............................................................19

*Sternberg v. Johnston,*
  595 F.3d 937 (9th Cir. 2009)
  *cert. denied* 131 S.Ct. 180 (2010)...............................................passim

*United States v. Carroll Towing Co.,*
  159 F.2d 169 (2d Cir. 1947).................................................................55

*United States v. Flynn (In re Flynn),*
  185 B.R. 89 (S.D. Ga. 1995)................................................................60

*United States v. Hinkson,*
  585 F.3d 1247 (9th Cir. 2009)................................................19, 20, 36

*United States v. Ron Pair Enterprises, Inc.,*
  489 U.S. 235 (1989)..............................................................................35

*Wagner v. Ivory (In re Wagner),*
  74 B.R. 898 (Bankr. E.D. Pa. 1987)......................................34, 50, 60

**STATUTES**

5 U.S.C. § 552a(g)(2)(B)..........................................................................23

11 U.S.C. § 105(a).........................................................................42, 45, 47

11 U.S.C. § 327........................................................................................32

x

11 U.S.C. § 328..............................................................................32

11 U.S.C. § 329..............................................................................32

11 U.S.C. § 362(a) ...........................................................................4

11 U.S.C. § 362(h) .........................................................................28

11 U.S.C. § 362(k) .................................................................. passim

15 U.S.C. § 1601 *et. seq.* ...............................................................22

15 U.S.C. § 1640(a) .......................................................................26

15 U.S.C. § 1681n ..........................................................................26

15 U.S.C. § 1681o ..........................................................................26

15 U.S.C. §§ 1692-1692p .................................................................7

16 U.S.C. § 470w-4 .......................................................................26

17 U.S.C. § 505..............................................................................26

28 U.S.C. § 1291..............................................................................1

28 U.S.C. § 158(d) ...........................................................................1

33 U.S.C. § 1365(d) .......................................................................26

42 U.S.C. § 1988(b) .......................................................................26

42 U.S.C. § 6972(e) .......................................................................26

42 U.S.C. § 7604(d) .......................................................................26

42 U.S.C. § 12205..........................................................................26

Bankruptcy Abuse Prevention and Consumer Protection Act,
    Pub. L. 109-8, 119 Stat. 23 (2005) ......................................28

**TREATISES**

2B N. Singer, <u>Sutherland on Statutory Construction</u> § 53.03
   (rev. 5th ed. 1992) ...............................................................25

82 C.J.S. <u>Statutes</u> § 442 (2012) ..............................................62

A. Polinsky & S. Shavell, <u>Punitive Damages: An Economic
   Analysis</u>, 111 Harv. L. Rev. 869 (1998)......................................55, 56

D. Owen, <u>A Punitive Damages Overview: Functions, Problems
   and Reform</u>, 39 Vill. L. Rev. 363 (1994) ...........................................55

## I.   CORPORATE DISCLOSURE STATEMENT

Check Into Cash of Washington, Inc.'s sole owner is Check Into Cash, Inc. *See* Fed. R. App. P. 26.1.

## II.   STATEMENT OF JURISDICTION

The courts of appeal have jurisdiction over appeals from all final decisions of the district courts. 28 U.S.C. §§ 158(d) and 1291. A district court order is sufficiently final if it "distinctly and conclusively" resolves the parties' rights. *Silver Sage Partners Ltd. v. City of Desert Hot Springs (In re City of Desert Hot Springs)*, 339 F.3d 782, 788 (9th Cir. 2003). The district court's order affirming the bankruptcy court's decision in this case is a final and appealable order because it distinctly and conclusively resolved the dispute between the parties.

## III.   STATEMENT OF THE ISSUES

1.   In the United States, each party generally bears its own litigation expenses. When Congress derogates from this basic rule, it does so with clear language. This Court held that the term "actual damages, including costs and attorneys' fees" in Section 362(k) is ambiguous and does not demonstrate congressional

1

intent to derogate from the basic rule. Congress has not changed the statute, nor have the basic rules of statutory construction changed in any way. Should the Court decline to overturn its own precedent on point given that neither the statute nor the basic rules of statutory construction have changed?

2.    A bankruptcy court has properly exercised its discretion to determine when an automatic stay violation has ended when its decision is logically based on evidence in the record. The bankruptcy court in this case determined that the stay violation ended when Check Into Cash tendered a refund based on evidence that the phone calls had stopped by then and the refund would have restored her economic losses.  Did the bankruptcy court properly exercise its discretion in deciding when the stay violation ended?

3.    A court's inherent authority to impose sanctions is limited to punishing improper litigation tactics.  There is no allegation that anyone here engaged in improper litigation tactics. Did the bankruptcy court properly decline sanctions under its inherent authority?

2

4.    Only parties that lack standing under Section 362(k) may seek relief under the bankruptcy court's civil contempt authority, and they must give the other party adequate notice of their claim. Snowden has standing under Section 362(k), and she did not give notice of a claim for civil contempt sanctions. Did the bankruptcy court properly decline sanctions under its civil contempt authority?

5.    Punitive damages are reserved for situations in which a creditor has acted maliciously or recklessly with respect to the automatic stay. Rather than apply this standard, the bankruptcy court imposed punitive damages based on the bare "willful violations" standard used to determine if a creditor has violated the automatic stay. Did the bankruptcy court apply the wrong standard for punitive damages?

6.    Parties seeking damages for emotional distress must prove their harm with clear evidence. They may meet this burden without corroborating evidence if they clearly establish both their subjective *and* objective harm. The bankruptcy court in this case used preponderance standard instead, and it applied the

3

subjective and objective requirements disjunctively instead of conjunctively. Did the bankruptcy court use the wrong burden of proof and misapply the standard for emotional distress claims?

## IV.   STATEMENT OF THE CASE

This is an action for damages arising out of a violation of the automatic stay in bankruptcy. *See* 11 U.S.C. § 362(a). Before she filed for bankruptcy, Rupanjali Snowden gave Check Into Cash a personal check for $575 as security for a short-term loan of $500. When Snowden did not repay the loan, Check Into Cash tried to reach her to work out a payment plan. After she rebuffed this effort, Check Into Cash's corporate office presented her check for payment. Unbeknownst to it, Snowden had commenced this bankruptcy case in the meantime. Rather than notify the corporate office, Snowden sent her bankruptcy notice to the local branch in Sequim, Washington. By the time that notice arrived, the local branch had closed her file and delivered it to corporate headquarters in Tennessee.

Check Into Cash's presentment caused Snowden's bank account to be overdrawn, and she incurred bank fees as a result.

She also retained counsel to bring the matter to the corporate office's attention. After learning its error, Check Into Cash tendered a full refund of Snowden's check, plus all overdraft fees, and legal expenses incurred to draw attention to the matter. Rather than accept, Snowden insisted on several thousand dollars more for alleged emotional distress and legal fees.

The litigation then proceeded through discovery and summary judgment motions. In discovery, Snowden produced an e-mail purportedly written by her friend and daycare provider, Christina Smith. The e-mail detailed Snowden's alleged mental anguish from the events at issue. At trial, Smith denied having written the e-mail. Instead, she testified that Snowden offered her $600 to fabricate corroborating evidence of Snowden's alleged emotional distress claim.

Notwithstanding direct testimony vitiating Snowden's credibility, the bankruptcy court awarded her $12,000 in damages for emotional distress and imposed another $12,000 in punitive damages. The bankruptcy court also found that the stay violation ended when Check Into Cash tendered a refund. Accordingly, it

also awarded her the value of the original check, overdraft fees, and the legal expenses incurred to bring the stay violation to Check Into Cash's attention. The court declined to award legal expenses incurred after the stay violation ended because those were incurred solely in connection with this damages action.

Check Into Cash appealed the awards of emotional distress and punitive damages, and Snowden cross-appealed the denial of her litigation expenses. The district court reversed the bankruptcy court's emotional distress award because it applied a bare preponderance standard instead of a clear evidence standard. The district court affirmed on all other issues—though it noted that it would not have imposed punitive damages under the facts of this case if it were the trial court.

On remand, the bankruptcy court gave Snowden an opportunity to submit new evidence to support her emotional distress claim. Snowden declined. The bankruptcy court affirmed its prior ruling notwithstanding the lack of any new evidence to meet the higher evidentiary standard. Snowden again appealed the denial of litigation expenses, and Check Into Cash cross-

6

appealed the bankruptcy court's misapplication of the clear evidence standard. On this second appeal, the district court affirmed on all issues. Snowden then appealed the denial of her litigation expenses to this Court, and Check Into Cash has cross-appealed the emotional distress and punitive damage awards. This appeal followed.

## V.   STATEMENT OF THE FACTS

Check Into Cash is a nationwide consumer financial services provider. ER 380[1]. Among other things, it advances "payday loans" that help individuals manage cash flow between pay checks. *Id*. Check Into Cash's products and services help millions of Americans avoid overdraft fees and adverse effects on their credit. The consumer financial services industry is heavily regulated. *See*, *e.g.*, Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p. The industry's association has developed a set of best practices designed to comply with federal and state laws. ER 380-381. Members must abide by the association's best practices guidelines.

---

[1] This brief cites to the Excepts of Record as "ER."

7

*Id*. Check Into Cash is a member, and its policies and practices are consistent with the industry-group's guidelines. *Id*.

**A.    Check Into Cash Has Detailed Policies and Practices Designed to Comply with the Automatic Stay and Other Debt Collection Laws.**

In fact, Check Into Cash has developed highly detailed policies and procedures designed to honor the Bankruptcy Code's automatic stay. The effort to guard against stay violations begins with its Operations Manual. ER 75. Consistent with bankruptcy laws, the policies specifically forbid contacting borrowers whose debts have been discharged in bankruptcy:

> CALLING BANKRUPTCY CUSTOMERS
>
> If a customer has filed bankruptcy, you can *only* call & collect on an account if the bankruptcy has been dismissed….If you call to collect on a *discharged* bankruptcy account you are violating company policy & federal statutes & will be held accountable.

*Id*. (emphasis in original). Check Into Cash has also expressly warned employees that they risk violating the law when they fail to adhere to company policy. *Id*. In addition to strict policies in the Operations Manual, Check Into Cash has separate "Collection Standards" that begin with the admonition: "Do not attempt any

8

collection contact with the customer after the customer has notified you that they have retained an attorney and will be filing a bankruptcy petition." ER 77. These standards require employees to complete a special Bankruptcy Form that provides specific information about the bankruptcy. ER 84. Bankruptcy filings are recorded on call logs, and flagged as "charged off" to ensure that collection efforts do not continue on the account. ER 505-506, 518. Check Into Cash has even taken the step of giving incentives to employees who confirm and properly record a borrower's bankruptcy status. ER 504. In the rare case where a bankrupt borrower slips through the system, Check Into Cash's policy is to offer a full refund immediately. ER 393.

These policies and practices have been extremely successful in keeping to the letter and spirit of the automatic stay. Check Into Cash engages in millions of transactions every year—about 5,780,000 in 30 states in 2009, including 178,000 in Washington. ER 421-422. Yet this is the first and only instance in which Check Into Cash's policy did not resolve the issue. ER 421. Snowden's case is, very literally, a one-in-a-million case.

9

**B.    The Stay Violation in This Case Involves a Fact Pattern That Has Never Arisen in Millions of Prior Transactions.**

This case arises from a unique and unfortunate sequence of events that allowed Snowden's account to pass from Check Into Cash's local branch to its corporate office without notice of her bankruptcy. Check Into Cash initially handles delinquent debt at the local level, where the branch attempts to work out a payment plan with the borrower. ER 390. If the branch cannot work out a plan within a certain period, it must "charge off" the account and transfer it to the corporate collections office. ER 388. As described above, when the local branch learns that a borrower has filed bankruptcy, it must: (1) "charge off" the account; (2) note the bankruptcy in its collection files; and (3) transfer the account to corporate collections for closure. ER 79-82, 387. When the corporate office receives a delinquent account, it must also follow the same Operations Manual and Collection Standards. ER 391-393. Thus, the corporate office "charges off" the accounts of bankrupt borrowers, notes their bankruptcy, and closes the file.

On November 15, 2008, Snowden obtained a short-term loan of $500 from Check Into Cash's branch in Sequim, Washington. ER 73-74. As security for her loan, Snowden wrote a check for $575, which she agreed Check Into Cash could deposit if she failed to repay the loan by the maturity date. ER 73-74, 88. Snowden's loan was due on December 1, 2008. ER 73. On November 26, 2008, Snowden cancelled her check and called the branch to threaten bankruptcy if it tried to collect the debt. ER 90, 98. Consistent with the company's policies, the local branch tried to work out a payment plan. ER 408-409. When those efforts failed, the branch marked her account as "charged off" and transferred it to the corporate collections office pursuant to the policy. *Id*. This occurred on January 3, 2009. *Id*. The branch did not note a bankruptcy filing at the time because there was no such filing.

Snowden filed for bankruptcy on January 16, 2009—almost two weeks later. ER 85. Her filing listed the address for Sequim branch, which had charged off her account by then, instead of Check Into Cash's main corporate office. ER 87. In the meantime, the corporate office—unaware of her bankruptcy—resumed trying

11

to reach Snowden to work out a payment plan. ER 100-102. Check Into Cash tried to reach her 12 times, but succeeded on only three occasions. *Id*. Each time, Snowden hung up without telling the caller that she had, in fact, filed for bankruptcy. *Id*.; ER 318. Consistent with its policies, Check Into Cash never called any of Snowden's references or her employer about her delinquent account. ER 504. After weeks of trying to work out a payment plan—and still unaware of her bankruptcy—Check Into Cash presented her check for payment on February 20, 2009. ER 102. The corporate office never actually received notice of Snowden's bankruptcy until Snowden's bankruptcy lawyers mailed a notice in April. *Id*. Because it had deposited the check and closed the account months before, Check Into Cash did not investigate the matter further. ER 420.

Check Into Cash heard nothing further until May 14, 2009, when it received the Motion for Sanctions at issue here. After receiving the Motion, Check Into Cash's corporate counsel immediately directed the Sequim branch to send over its file on Snowden. ER 398. After reviewing the files, she offered to refund

Snowden's check plus all overdraft fees and attorneys' fees. ER 108-109. Snowden flatly rejected the offer. ER 313-314.

## C.     Snowden Did Not Present Clear Evidence of Her Alleged Emotional Distress.

Snowden's original Motion for Sanctions sought damages for Check Into Cash's post-petition presentment of her check. ER 318-319. The Motion never even mentioned the telephone calls Check Into Cash made to work out a payment plan unaware of her bankruptcy filing. *Id*. She only raised them as a basis for her emotional distress claim after Check Into Cash produced phone records in discovery. At trial, Snowden's entire body of evidence was limited to her own testimony. She testified to feeling panicked about her overdrawn account. ER 282. She described herself as such a nervous wreck that she felt like crying. ER 290. She testified that the overdraft deprived her of the relief she enjoyed from having filed for bankruptcy. ER 294. She testified that she was unable to buy her daughter a pair of shoes and a haircut. ER 283. Snowden offered no corroborating evidence from a treatment professional because she sought none. ER 320-321.

In an effort to supply *some* corroborating evidence, Snowden submitted an e-mail allegedly written by her friend—Christina Smith. ER 347-352. But Smith denied writing the e-mail. ER 352. In fact, she testified that Snowden offered her $600 in exchange for an e-mail describing how upset Snowden was after the stay violation. ER 356-357. Smith declined the bribe. *Id.* Smith testified further that she had never seen Snowden as upset as described in the fabricated e-mail. ER 349-350. Smith did not provide this testimony willingly, appearing only under subpoena, and she had nothing to gain from providing it. ER 347, 357.

All of the other evidence also contradicted Snowden's claim of emotional distress. She took no time off work due to stress or panic. ER 321. She never disclosed her alleged distress to her employer despite the fact that her work required undivided attention. ER 319-320. The record shows that Snowden overdrew her bank account merely one month beforehand, but she felt no stress from that overdraft. ER 628. Snowden even purchased the shoes and haircut that were the source of her alleged distress. ER 328. She never raised the issue of the post-petition telephone

14

calls until Check Into Cash produced phone records in this litigation. ER 318. In fact, Snowden testified at trial that the telephone calls were not "such a big thing." ER 318-319.

## VI.   SUMMARY OF ARGUMENT

This case can be summarized in one sentence: A debtor is trying to take advantage of an honest and very rare mistake to obtain a windfall. Congress did not create a private action for stay violations to encourage the litigation that has transpired here. Check Into Cash's mistake is so rare it has never faced this type of protracted litigation before, despite millions of transactions every year. And Check Into Cash tendered a refund as soon as the issue reached company decision makers. Based on the evidence at trial, the bankruptcy court found that the stay violation ended when Check Into Cash tendered that refund—including legal expenses she incurred to stop the stay violation. Snowden could have ended this matter there. But she refused Check Into Cash's tender, demanding tens of thousands of dollars in extraordinary damages. And she fabricated evidence to support that claim. The automatic

15

stay is a shield, not a sword, and it is certainly not intended to reward those who would misuse it as a lottery ticket.

## A. The Bankruptcy Court Correctly Applied the American Rule and Standards Governing the Imposition of Fee-Shifting Sanctions.

Indeed, this case aptly demonstrates why the rule this Court announced in *Sternberg v. Johnston*, 595 F.3d 937 (9th Cir. 2009) *cert. denied* 131 S.Ct. 180 (2010), is correct on the law and sound in its policy implications. The case adheres to the long-standing American Rule governing attorneys' fees and to the canon that Congress means what it says in a statute. The case also reaffirms the principle that the Bankruptcy Code should not be construed to incentivize more litigation. The *Sternberg* decision is a correct reflection of the law, and nothing has changed to require overturning that precedent now. The Court should affirm the award granting the fees Snowden incurred as actual damages and denying the fees she incurred in prosecuting this litigation.

It should also affirm the bankruptcy court's denial of those same fees as a sanction under its inherent authority and its civil contempt authority. Courts use their inherent authority to

16

sanction misconduct during litigation. That did not happen here. And bankruptcy courts impose civil contempt sanctions for stay violations only when the private right of action is unavailable. That is not the case here.

## B.   The Bankruptcy Court Applied the Wrong Standard in Imposing Punitive Damages.

While the bankruptcy court was correct not to shift fees, it misapplied the law governing punitive damages. It applied the lower "willful violation" standard used to determine whether one has violated the automatic stay instead of the "reckless disregard" standard that determines whether the violation merits punitive measures. The evidence shows that Check Into Cash has carefully crafted policies that have avoided this type of litigation in every one of the millions of transactions it undertakes annually—except this one case. Imposing punitive damages here will send the wrong signal to creditors in this circuit; it will tell them to expect punitive damages on top of actual damages every time they violate the automatic stay, no matter how innocent the mistake. That is surely not what Congress intended when it limited the discretion to impose punitive damages to "appropriate circumstances." The

17

Court should reverse and vacate the bankruptcy court's imposition of punitive damages.

**C.    The Bankruptcy Court Held Snowden to the Wrong Burden of Proof and Misapplied the Standards Governing Her Emotional Distress Claim.**

This case also illustrates why emotional distress claims carry higher burdens of proof than straightforward stay violation claims. "The law has always been wary of claims of emotional distress, because they are so easy to manufacture." *Aiello v. Providian Fin. Corp.*, 239 F.3d 876, 880 (7th Cir. 2001). That is precisely what Snowden did. She bribed a friend to manufacture evident when the friend refused she fabricated it herself. At a minimum, this should have rendered her uncorroborated testimony insufficient to meet her burden of proof. Rather than hold Snowden to the correct burden of proof, the bankruptcy court used the basic preponderance standard. On remand, the bankruptcy court also misread the elements a debtor must satisfy in the absence of corroborating evidence, reading the elements disjunctively when this Court listed them conjunctively. These errors are an abuse of discretion. Snowden has had two

18

opportunities to present clear evidence of her emotional distress, and she has failed to do so. The Court should reverse and vacate the bankruptcy court's award of damages for emotional distress.

## VII.  GENERAL STANDARD OF REVIEW

The Courts of Appeal "review *de novo* a district court's decision on appeal from a bankruptcy court, and afford no deference to the prior decision of the district court." *In re Rains*, 428 F.3d 893, 900 (9th Cir. 2005). While the district court's analysis here is informative, this Court's review must focus on the bankruptcy court's analysis and decisions.

## VIII.  ARGUMENT

### A.  This Court Should Affirm the Bankruptcy Court's Award of Fees Constituting Actual Damages and Its Denial of Fees Incurred in This Litigation.

The Court should affirm the bankruptcy court's decision on attorneys' fees. That decision is reviewed for abuse of discretion. *See State of Cal. Emp't Dev. Dep't v. Taxel (In re Del Mission Ltd.)*, 98 F.3d 1147, 1152 (9th Cir. 1996). Appellate courts begin their review by asking whether the lower court applied the correct rule of law. *United States v. Hinkson*, 585 F.3d 1247, 1262

19

(9th Cir. 2009). If so, they examine whether the application of the rule was "illogical, implausible, or without support in inferences that may be drawn from facts in the record." *Id.* (quoting *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 577 (1985)). Snowden attacks the bankruptcy court's fee decision at both stages of review. Her efforts are misplaced.

### 1.    The *Sternberg* decision is grounded in bedrock principles of American law.

Snowden's primary argument is that this Court's holding in *Sternberg v. Johnston* is an incorrect statement of the law, and she asks the Court to overturn its precedent. She cites a Supreme Court opinion to suggest that all decisions citing Black's Law Dictionary are fatally flawed and that congressional inaction in 2005 is proof that Congress agreed with her interpretation of the automatic stay provision. She also repeats a flawed contextual criticism that ignores the line the *Sternberg* Court drew between legal expenses that are recoverable and those that are not.

These arguments first overlook the fundamental rules this Court applied in *Sternberg*. The statute at issue here authorizes individuals injured by a violation of the automatic stay to recover

20

their "actual damages, including costs and attorneys' fees,…" 11 U.S.C. § 362(k)(1). The Court recognized that there are two different categories of legal expenses in this context: (1) expenses incurred to stop the violation; and (2) expenses incurred to prosecute an action for damages arising from the violation. *Sternberg*, 595 F.3d at 946-47. No one disputes that debtors may recover expenses in the first category. *See id.* "What is less clear is whether Congress intended to deviate from the American Rule by allowing recovery as damages of the fees incurred in the bankruptcy court action for damages…" *Id*. After careful analysis, this Court held that "a damages action for a stay violation is akin to an ordinary damages action, for which attorney fees are not available under the American Rule." *Sternberg*, 595 F.3d at 948.

This holding is premised on basic principles of American law. Litigants in this country generally bear their own costs—the American Rule. *Alyeska Pipeline Service Co. v. Wilderness Soc.*, 421 U.S. 240, 247-48 (1975). When the legislative branch deviates from this rule, it does so with "explicit statutory language and legislative comment." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534

21

(1994). This is because statutes that derogate from the common law must be construed strictly. *Id.* (citing *Isbrandtsen Co. v. Johnson,* 343 U.S. 779, 783 (1952)); *see also Robert C. Herd & Co. v. Krawill Mach. Corp.*, 359 U.S. 297, 304–05 (1959). These are bedrock principles that have existed for centuries. *See Arcambel v. Wiseman*, 3 U.S. (Dall.) 306 (1796) (parties may not recover fees unless authorized by statute); *Brown v. Barry*, 3 U.S. (Dall.) 365, 367 (1797) (statutes in derogation of common law are strictly construed). The holding in *Sternberg* is a reflection of these rules, and nothing has changed in the last four years to justify overturning that precedent.[2]

---

[2] Also, the *Sternberg* decision is not the outlier Snowden describes. Courts in other circuits have, in fact, recognized and applied its reasoning in construing the phrase "actual damages." *See Bradford v. HSBC Mortg. Corp.*, 280 F.R.D. 257, 262 n.10 (E.D. Va. 2012) (construing "actual damages" under the Truth in Lending Act, 15 U.S.C. § 1601 et. seq.); *In re Carlton*, 2011 WL 3799885 (Bankr. N.D. Ala. Aug. 26, 2011) (unpublished opinion) (contempt sanctions for violation of confirmation order); *see also In re Thompson*, 426 B.R. 759 (Bankr. E.D. Ill. 2010) (recognizing circuit split but declining to follow either rule). Ultimately, it is telling that the Supreme Court declined to review the *Sternberg* decision when the parties petitioned for review. *Sternberg v. Johnston*, 131 S.Ct. 180 (2010).

> a.   *The Supreme Court's decision in* F.A.A. v. Cooper *is consistent with this Court's conclusions in Sternberg, and it does not call for* Sternberg's *reversal.*

Snowden's chief argument is that the *Sternberg* Court's reference to Black's Law Dictionary is somehow fatal. Her argument is based on a misreading of the Supreme Court's recent decision in *F.A.A. v. Cooper*, 566 U.S. __, 132 S.Ct. 1441 (2012). That case involved a claim under the Privacy Act, 5 U.S.C. § 552a, for "actual damages" arising from a violation of the statute. *Id.* at 1446.[3] The Supreme Court held that the term "actual damages," is inherently ambiguous, so courts "cannot rely on any all-purpose definition but must consider the particular context in which the term appears." *Id.* at 1450. As part of its analysis, the Supreme Court examined how Black's Law Dictionary defined the phrase, concluding that its definition was "of little value [in construing the Privacy Act] because … the precise meaning of the term 'changes

---

[3] Notably, the Privacy Act contains a separate and explicit provision authorizing courts to assess "reasonable attorney fees and other litigation costs reasonable incurred in any case…in which the complainant has substantially prevailed." 5 U.S.C. § 552a(g)(2)(B); *cf. infra.* at 25-26.

with the specific statute in which it is found.'" *Id*. at 1449. This comment is beside the point. The import of the *Cooper* decision is that the phrase "actual damages" is inherently ambiguous and must be examined in its particular statutory context. *Id*. at 1450.

This Court's analysis in *Sternberg* is consistent with that observation. This Court also concluded that "actual damages" is an ambiguous phrase. *Sternberg*, 595 F.3d at 947; *cf. Cooper*, 132 S.Ct. at 1450.  And though it looked initially to Black's Law Dictionary for a common definition, this Court's central analysis compared that definition  to the context and goals of the automatic stay and the importance of the American Rule. *Sternberg*, 595 F.3d at 947-48. That is precisely what the Supreme Court said courts should do. *Cooper*, 132 S.Ct. at 1450. In *Sternberg*, the analysis led this Court to two conclusions: (1) the context and goals of the automatic stay do not support fee-shifting; and (2) Congress would not have used ambiguous language if it intended to derogate from the American Rule. *Id*.  "Such a bold departure from traditional practice would have surely drawn more

24

explicit statutory language and legislative comment." *Sternberg*, 595 F.3d at 948 (quoting *Fogerty*, 510 U.S. at 534).

The holding in *Sternberg* is not based on some bare reference to Black's Law Dictionary, as Snowden implies. It flows instead from a careful analysis of the automatic stay's purpose and context, the ambiguous nature of the phrase "actual damages," and the long-standing rule that legislative derogation from the American Rule must be clear. The *Cooper* decision is not a basis for overturning *Sternberg*.

> b.  *Congress did not use clear language deviating from the American Rule in Section 362(k).*

There is another canon of statutory interpretation that supports the outcome in *Sternberg*—one this Court did not discuss in that opinion. Analogous terms in an unquestionably clear statute may be used to aid in the construction of an ambiguous statute. *See Overstreet v. North Shore Corp.*, 318 U.S. 125, 131–132 (1943); *Bureau of Alcohol, Tobacco and Firearms v. F.L.R.A.*, 464 U.S. 89, 92–93 (1983); *see also* 2B N. Singer, <u>Sutherland on Statutory Construction</u> § 53.03, p. 233 (rev. 5th ed. 1992).

The exercise is telling here. When Congress decides to shift fees, it does so in a separate clause with clear language referring to a prevailing party. The Civil Rights Act is a prime example:

> "In any action to enforce a provision [of the Civil Rights Act…,] the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorneys' fee as part of the costs,…."

42 U.S.C. § 1988(b). Other examples of this type of clarity abound in the United States Code. *See*, *e.g.*, Americans with Disabilities Act, 42 U.S.C. § 12205; Clean Water Act, 33 U.S.C. § 1365(d); Solid Waste Disposal Act, 42 U.S.C. § 6972(e); Clean Air Act, 42 U.S.C. § 7604(d); National Historic Preservation Act, 16 U.S.C. § 470w-4; Copyright Act, 17 U.S.C. § 505. Snowden's own statutory authorities follow suit. *See* Fair Credit Reporting Act, 15 U.S.C. §§ 1681n and 1681o; *see also* Truth in Lending Act, 15 U.S.C. § 1640(a). In practically every instance, Congress explicitly grants courts discretion to award the costs of litigation to a prevailing party. In this instance, Congress made no reference whatsoever to the costs of litigation or a prevailing party. *See* 11 U.S.C. § 362(k).

26

Indeed, the phrase "actual damages, including costs and attorneys' fees" appears nowhere else in the United States Code. When construing statutes, courts must assume that Congress "says in a statute what it means and means in a statute what it says there," *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (quoting *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 254 (1992)). If Congress intended to award the costs of litigating a stay violation action to the prevailing party, it would have used the same clear language it has used in practically every other instance. *Accord Fulfillment Servs. Inc. v. United Parcel Serv., Inc.*, 528 F.3d 614, 624 (9th Cir. 2008). A "bold departure" from the long-standing American Rule requires "explicit statutory language." *Fogerty*, 510 U.S. at 534. This canon of statutory construction lends additional support for the conclusion that Section 362(k) cannot be viewed as derogating from the American Rule. *Sternberg*, 595 F.3d at 948.

c.     *Congressional action in 2005 does not contradict this Court's holding in Sternberg.*

Snowden also argues that Section 362(k) is a fee-shifting statute because Congress did not revise the text in 2005 despite

27

the existence of case law at the time construing it as a fee-shifting statute.[4] (Appellant's Br. at 21-22.); *see also* Bankruptcy Abuse Prevention and Consumer Protection Act, Pub. L. 109-8, 119 Stat. 23 (2005). Her argument depends on the mistaken assumption that courts uniformly construed Section 362(k) as she does have. Courts were not uniform in their interpretation in 2005. Courts in other circuits recognized that Section 362(k) "does not provide for an award of attorneys' fees." *See, e.g.*, *In re Siharath*, 285 B.R. 299, 306 (Bankr. D. Minn. 2002). In *Siharath*, the bankruptcy court explained the Section 362(k) permits "recovery of damages *including* attorney's fees, not damages *and* attorney's fees." *Id.* (emphasis in original). Because courts were not uniform in their construction in 2005, congressional inaction in 2005 cannot be interpreted as acquiescence in either parties' construction of the statute.

---

[4] Before the 2005 amendments, the private right of action was codified at 11 U.S.C. § 362(h). Like Snowden's brief, this brief refers to the provision as Section 362(k) throughout for simplicity's sake.

d.    The Sternberg *decision is consistent with the context and purpose of the automatic stay.*

Finally, Snowden attacks this Court's analysis of the context and goals of the automatic stay. Her argument largely repeats criticism from an Ohio bankruptcy case—*In re Grine*, 439 B.R. 461 (Bankr. N.D. Ohio 2010). That court's critique, and Snowden's repetition of it here, belie a misunderstanding about the holding in *Sternberg*. In particular, the *Grine* court complained the *Sternberg* decision bars debtors from recouping legal expenses incurred to stop a stay violation:

> Under the Ninth Circuit analysis, a debtor who sustains injury from and seeks the help of counsel to stop automatic stay violations is effectively powerless to make a creditor pay the damage and fees incurred.

*Id.* at 470-71. This characterization is simply wrong. The *Sternberg* decision does not prohibit debtors from recovering fees incurred to stop a stay violation. Indeed, it is quite the opposite. This Court recognized in *Sternberg* that "[w]ithout a doubt, Congress intended Section 362(k)" to permit recovery of fees incurred in that effort. 595 F.3d at 946.

29

The *Grine* court's mistake was to conflate fees incurred to stop a stay violation with fees incurred in litigation over damages arising from that violation. As this Court recognized in *Sternberg*, these are two separate categories of fees. 595 F.3d at 946-47. A debtor may need to retain a lawyer to undo the effects of the stay violation or demand that the violator stop. She may also decide to hire a lawyer to sue for damages suffered from the violation. This second category of legal work is ancillary to the bankruptcy, and an unscrupulous debtor may see it as an opportunity for a windfall. *Id*. at 948. "The automatic stay is a shield, not a sword." *Id*. For that reason, this second category is not recoverable under Section 362(k). *Sternberg*, 595 F.3d at 948-49. The *Grine* court's criticism misses this important distinction.

Snowden's brief repeats the *Grine* court's analytical error: "[i]f *Sternberg* is strictly applied to the present case, the debtor would never have received relief, because the cost of obtaining relief would exceed the award." (Appellant's Br. at 29.) The record shows that Snowden's actual damages award includes the legal

30

expenses she incurred to receive relief. The bankruptcy court found that the stay violation ended when Check Into Cash tendered a refund, including legal expenses incurred to that point. Snowden could have ended this matter there. She would have recovered her financial losses, and the phone calls had stopped long beforehand. Instead, she rejected the tender and pursued litigation. All of the legal expenses she has incurred since then have been in pursuit of her extraordinary damage claim—one for which she fabricated evidence. This litigation had no bearing on her bankruptcy discharge, and its protracted nature "is hardly consistent with the concept of a 'breathing spell' for the debtor." *Sternberg*, 595 F.3d at 948. If anything, this case aptly illustrates why this Court was correct in *Sternberg*.

> e.  *The inclusion of attorneys' fees as actual damages has special meaning in the bankruptcy context.*

There is another aspect of contextual analysis that supports the holding in *Sternberg*. The specific phrase—"actual damages, including costs and attorneys' fees"—has special meaning in the bankruptcy context. Lawyers must obtain court approval before they perform work for the debtor if they expect to receive

31

compensation from the debtor. 11 U.S.C. § 327; *Lamie v. U.S. Tr.*, 540 U.S. 526, 538 (2004). A stay violation often presents exigent circumstances, and remediation cannot await motions practice. By including fees incurred to remedy the stay violation as "actual damages," Congress removed a significant procedural obstacle to ameliorating the harm promptly.

The inclusion of fees as actual damages also obviates a major financial obstacle to addressing a stay violation. The common practice among debtors' counsel in the consumer bankruptcy bar is to handle Chapter 7 cases for a standard fee, often paid in advance of the bankruptcy filing. *See Lamie*, 540 U.S. at 537. This means counsel must deal with unusual developments, such as dealing with a stay violation, at their own expense unless they obtain court approval to bill the estate beforehand. *See* 11 U.S.C. §§ 328 and 329. By including the expenses as "actual damages," Congress placed the expense in the hands of the violator. As a result, the economic disincentives to addressing the stay violation that Snowden describes in her brief simply do not exist.

32

The nuanced phrasing in Section 362(k) makes sense given how the Bankruptcy Code generally deals with attorney compensation. Section 362(k) allows individual debtors and their lawyers to recover legal expenses incurred to remedy the stay violation from the opposing party rather than having to move for appointment under Section 327 and approval under Sections 328, 329, and 330. This further confirms that the Court's holding in *Sternberg* is correct.

f.    *The Bankruptcy Code sufficiently deters stay violations without Snowden's proffered interpretation.*

Snowden also suggests that construing Section 362(k) as a fee-shifting statute is necessary to create "strong disincentives to violate the stay in the first place." (Appellant's Br. at 29.) But the Bankruptcy Code already contains strong disincentives. Indeed, this Court limited the scope of its holding in *Sternberg* so that it did "not limit the availability of contempt sanctions, including attorney fees, for violation of the automatic stay, where otherwise appropriate." 595 F.3d at 946 n.3. In addition, Section 362(k) itself contains a strong disincentive—it authorizes courts to impose punitive damages "in appropriate circumstances." In most cases, a

stay violation is the product of an honest mistake, as it was here. Paperwork got lost, and Check Into Cash tendered an immediate refund when it learned about the error. The Bankruptcy Code provides a fair mechanism for putting debtors back in their original position in these situations—they may recover their "actual damages, including costs and attorneys' fees" incurred to fix the problem. *See* 11 U.S.C. § 362(k)(1). There are rare cases in which someone acts maliciously or outrageously. *See, e.g., Wagner v. Ivory (In re Wagner)*, 74 B.R. 898, 900 (Bankr. E.D. Pa. 1987) (creditor broke into debtor's home and threatened to "blow [the debtor's] brains out."). Section 362(k) authorizes courts to award punitive damages in those types of cases. *See id.* (awarding punitive damages). Viewed in the broader context, the Court need not construe Section 362(k) as a deviation from the American Rule simply to create additional disincentives when the Code already provides sufficient deterrents.

> g.   *Policy and equity considerations have no place in statutory construction.*

Finally, there is a subtext to Snowden's brief that requires a specific response. Throughout her brief, Snowden suggests that

34

the outcome in *Sternberg* is bad policy and somehow unfair to insolvent debtors. Justice Benjamin Cardozo explained how courts should treat these considerations when construing a statute: "We do not pause to consider whether a statute differently conceived and framed would yield results more consonant with fairness and reason. We take the statute as we find it." *Anderson v. Wilson*, 289 U.S. 20, 27 (1933) (Cardozo, J.). The proper forum for Snowden's intimation that Section 362(k) is bad policy is Congress. The judiciary does "not sit as a super-legislature to weigh the wisdom of legislation nor to decide whether the policy which it expresses offends the public welfare." *Day-Brite Lighting Inc. v. State of Mo.*, 342 U.S. 421, 423 (1952); *see also Lamie*, 540 U.S. at 538. "[T]he sole function of the courts is to enforce it according to its terms." *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989). This Court properly exercised its role in *Sternberg* by construing Section 362(k) as written. Its holding is consistent with long-standing canons of statutory construction, and the Court should not second-guess itself now.

35

> **2.  The bankruptcy court properly exercised discretion in determining the fees constituting Snowden's actual damages.**

Snowden also challenges the bankruptcy court's application of the *Sternberg* rule to this case. (Appellant's Br. at 30-40.) This is an attack at the second step in a review for abuse of discretion, in which the reviewing court asks if the trial court's application of the rule was "illogical, implausible, or without support in inferences that may be drawn from facts in the record." *Hinkson,* 585 F.3d at 1262. As an initial matter, Snowden's argument depends on an astonishing legal proposition: a stay violation cannot end until the defendant has paid every penny of damages flowing from the violation—no matter what kind of damages they are. (*See* Appellant's Br. at 38.) She cites no authority for this pronouncement. Instead, appellate courts review a bankruptcy court's determination of when the stay violation ends for an abuse of discretion. *See In re Schwartz-Tallard*, 473 B.R. 340, 350 (B.A.P. 9th Cir. 2012). Relevant factual findings are reviewed for clear error. *In re Dawson*, 390 F.3d 1139, 1145 (9th Cir. 2004).

a.     *The record contains ample evidence supporting the bankruptcy court's application of* Sternberg *to this case.*

In this case, the bankruptcy court found that the stay violation ended on May 20, 2009, when Check Into Cash tendered a full refund, including legal expenses incurred to bring the matter to its attention. The record contains ample support for this finding. It includes the specific e-mail in which Check Into Cash tendered the refund. ER 108. The record also contains proof that the phone calls had stopped before that date. ER 100-102. The logical conclusion here is that Check Into Cash was no longer violating the automatic stay by May 20, 2009. The logical conclusion is that the fees Snowden incurred after that date, "including those expended to prove a violation, were not relevant to 'remedying the stay violation' but 'to collect damages for the stay violation.'" *In re Snowden*, 2012 WL 600697 at *4 (W.D. Wash. Feb. 21, 2012) (quoting *Sternberg*, 595 F.3d at 945-48). Ultimately, it is not this Court's task to draw separate conclusions from the record. "The test for clear error is not whether the appellate court would make the same findings, but whether the reviewing court, based on all of the evidence, has a

37

definite and firm conviction that a mistake has been made." *In re Brobeck*, 430 B.R. 898, 900 (N.D. Cal. 2010) (citing, *inter alia*, *Sigma Micro Corp. v. Healthcentral.com (In re Healthcentral.com)*, 504 F.3d 775, 783 (9th Cir. 2007)). Because the record supports the bankruptcy court's findings, and its conclusion is logically connected to those findings, there was no abuse of discretion here.

### b.   The Campion case is inapposite.

Snowden cites *In re Campion*, 294 B.R. 313 (B.A.P. 9th Cir. 2003)—a bankruptcy appellate panel case from 2003—to argue that Check Into Cash's tender did not end the stay violation. (Appellant's Br. at 34-35.) The *Campion* case is materially different from this case. The question in that case was whether a computer error can result in a willful violation of the automatic stay. *Id*. at 315. In analyzing that issue, the appellate panel began by noting that an earlier offer of judgment "included neither attorneys' fees, nor a concession of 'willful' violation of the automatic stay." *Id*. at 316. Because the issue remained undecided, the appellate panel proceeded to examine whether a computer error can constitute a stay violation. *Id*. at 318. That

analysis has no bearing on the question here—did the bankruptcy court act within its discretion in finding that the stay violation ended when Check Into Cash tender payment based on the evident in the record?

The *Campion* case is different in another material respect. The creditor's offer in that case was an offer of judgment under Rule 68 of the Federal Rules of Civil Procedure. When an offer under Rule 68 does not expressly include attorneys' fees, a court "must include in its judgment an additional amount which in its discretion it determines to be sufficient to cover the costs." *Marek v. Chesny*, 473 U.S. 1, 6 (1985). The inclusion of fees in a Rule 68 offer must be "clear and unambiguous." *Nusom v. Comh Woodburn, Inc.*, 122 F.3d 830, 833 (9th Cir. 1997). Because offer in *Campion* did not mention attorneys' fees, 294 B.R. at 315, the appellate panel affirmed the award fees pursuant to Rule 68. Unlike the creditor in *Campion*, Check Into Cash simply tendered payment—it was not a settlement offer under Rule 68. Moreover, Check Into Cash's tender expressly included fees. The *Campion* court's discussion of fees is irrelevant here.

39

The *Campion* decision is also outdated. Under Rule 68, the addition of attorneys' fees is appropriate only where courts have authority to shift fees. *Marek*, 473 U.S. at 9-11. In *Campion*, both the bankruptcy court and appellate panel assumed that debtors may recover litigation expenses under Section 362(k). 294 B.R. at 315. As discussed above, this Court held in *Sternberg* that Section 362(k) does not allow debtors to recover legal expenses incurred in litigation. 595 F.3d at 948. If the *Campion* courts had the benefit of this Court's analysis and holding in *Sternberg*, the outcome would have been the opposite of what it was. The *Campion* case offers no support for concluding that the bankruptcy court abused its discretion in finding that the stay violation was over when Check Into Cash tendered a refund that included attorneys' fees.

In sum, the bankruptcy court did not abuse its discretion when it awarded Snowden the attorneys' fees she incurred to bring about Check Into Cash's refund tender and denied the fees she has incurred in pursuit of extraordinary damages. In affirming the bankruptcy court's decision, Judge Robert Lasnik

noted that Snowden could have ended this matter by accepting Check Into Cash's tender. *Snowden*, 2012 WL 600697 at *4. The fees she has incurred since then, "including those expended to prove a violation, were not relevant to 'remedying the stay violation' but to 'collect damages for the stay violation.'" *Id*. The bankruptcy court's decision is based on sound controlling circuit precedent and on logical and reasonable conclusions drawn from the record. The Court should affirm that decision.

## B.    The Court Should Affirm the Bankruptcy Court's Denial of Civil Contempt and Inherent Authority Sanctions.

The Court should also affirm the denial of fees as a sanction. Two sources of law empower bankruptcy courts to impose this type of sanction. First, bankruptcy courts have the same inherent authority as any tribunal to police the conduct before them. *Caldwell v. Unified Capital Corp. (In re Rainbow Magazine, Inc.)*, 77 F.3d 278, 284 (9th Cir. 1996). "The imposition of sanctions in this instance transcends a court's equitable power concerning relations between parties and reaches a court's inherent power to police itself." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991).

Second, bankruptcy courts have statutory authority to impose sanctions to enforce the Bankruptcy Code. 11 U.S.C. § 105 (a). Statutory sanctions are in the nature of civil contempt sanctions. *Johnston Envtl. Corp. v. Knight (In re Goodman)*, 991 F.2d 613, 620 (9th Cir. 1993). Regardless of the basis on which a bankruptcy court considers imposing sanctions, the decision is reviewed for an abuse of discretion. *In re Lehtinen*, 564 F.3d 1052, 1058 (9th Cir. 2009) (inherent authority sanctions); *In re Stasz*, 387 B.R. 271, 274 (B.A.P. 9th Cir. 2008) (statutory sanctions). There was no abuse of discretion here.

### 1. The bankruptcy court correctly denied sanctions under its inherent authority because no one flouted its authority during the litigation.

There was no legal or factual basis for imposing sanctions under the bankruptcy court's inherent authority. "Because of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44. Inherent authority sanctions are designed to punish improper litigation tactics. *In re Dyer*, 322 F.3d 1178, 1196 (9th Cir. 2003). A "court's inherent authority extends only to remedy abuses of the litigation process."

42

*Chambers*, 501 U.S. at 74 (Kennedy, J., dissenting). If the rule were otherwise, every plaintiff would make an end run around the American Rule simply by moving for sanctions under the court's inherent authority. *Id.* at 59 (Scalia, J., dissenting).

This Court specifically adopted that principle in *Association of Flight Attendants v. Horizon Air Industries*, 976 F.2d 541, 550 (9th Cir. 1992). In that case, a union sued Horizon Airlines alleging that Horizon did not negotiate a new labor contract consistent with the Railway Labor Act. The union sought attorneys' fees claiming that Horizon "demonstrated bad faith by violating its duty to exert every reasonable effort to reach an agreement with the union." *Id.* at 548. The trial court awarded the fees as a sanction under its inherent authority, even though the union never argued that Horizon acted in bad faith during the course of litigation. *Id.* This Court reversed, holding that courts lack authority to impose sanctions "based solely upon a finding of bad faith as an element of the cause of action presented in the underlying suit." *Horizon Air*, 976 F.2d at 550.

43

Snowden did not allege misconduct in the course of litigation. Instead, she seeks fee-shifting sanctions based on the very same conduct that forms the basis of her damages action. Moreover, the bankruptcy court "did not find bad faith or willful misconduct." ER 42. That is a requirement for imposing inherent authority sanctions. *See Dyer*, 322 F.3d at 1196 (citing *Fink v. Gomez,* 239 F.3d 989, 992-93 (9th Cir. 2001)). As with its other findings of fact, the bankruptcy court's findings here may only be reversed if there was a clear error. *Dawson*, 390 F.3d at 1145. The record supports its conclusion that Check Into Cash litigated this case appropriately. There was no basis for imposing sanctions under the bankruptcy court's inherent authority, and it was correct in declining to do so.

### 2. The bankruptcy court exercised appropriate discretion in denying civil contempt sanctions.

There was also no basis for imposing sanctions under the bankruptcy court's statutory authority. The authority to impose civil contempt sanctions arises from the Bankruptcy Code's general powers provision, which authorizes bankruptcy courts to issue any "order, process, or judgment that is necessary or

44

appropriate to carry out the provisions of" the Code. 11 U.S.C. § 105(a). Because individual debtors have a specific remedy for stay violations—Section 362(k)—civil contempt sanctions under Section 105(a) are not available to them. *In re Roman*, 283 B.R. 1, 14-15 (B.A.P. 9th Cir. 2002).

Snowden cites two cases from this circuit in arguing that this Court should reject the bankruptcy appellate panel's established rule. (*See* Appellant's Br. at 41.) These authorities are neither controlling nor persuasive. In the first case she cites, the debtor was a corporate entity. *See In re Goodman*, 991 F.2d 613, 620 (9th Cir. 1993). Corporate debtors may resort to Section 105(a) because Section 362(k) is limited to individual debtors. *See Roman*, 283 B.R. at 14 (citing *Taxel*, 98 F.3d at 1152.). In the second case, the court proceeded under Section 105(a) because Section 362(k) was not in effect at the time. *See In re Computer Communications, Inc.*, 824 F.2d 725, 731 n.3 (9th Cir. 1987). Her only other authorities are a 20-year-old bankruptcy opinion from Michigan with no analysis or explanation, *see In re Sielaff*, 164 B.R. 560, 568 (Bankr. W.D. Mich. 1994), commentary in

45

treatises, and statements from a member of the Congress that adopted Section 362(k). These authorities do not overcome a published appellate panel decision from this circuit.

Indeed, this circuit's bankruptcy appellate panel recently re-affirmed the prevailing rule in *In re Schwartz-Tallard*, 473 B.R. 340. In that case, an individual debtor employed the same strategy Snowden uses here—she sought damages under Section 362(k) for a stay violation and, in the alternative, sanctions under Section 105(a) for the very same conduct. *See id*. at 346. The panel affirmed that debtors with standing under Section 362(k) may not pursue sanctions under Section 105(a). *Id*. at 351. "[A]n award pursuant to a bankruptcy court's Section 105(a) power is typically not appropriate if another statute or the Rules otherwise support a sanctions award … As a result, there is no reason for [courts] to consider whether sanctions are somehow justified pursuant to Section 105(a)." *Id*. (citing *Chambers*, 501 U.S. at 50).

The *Schwartz-Tallard* decision also highlights procedural shortcomings in Snowden's sanction request. Before a court may

46

impose civil contempt sanctions, it "must determine that the party to be sanctioned was provided sufficient notice of the potential sanctions to satisfy due process." *Id*. (citing *Miller v. Cardinale (In re Deville)*, 280 B.R. 483, 496–97 (B.A.P. 9th Cir. 2002), *aff'd* 361 F.3d 539 (9th Cir. 2004)). "Generally, the notice regarding sanctions must specify the authority for the sanction, as well as the sanctionable conduct." *Id*. (quoting *Deville*, 280 B.R. at 496). The motion in *Schwartz-Tallard* was "based on Section 362(k) only; it did not mention…Section 105(a)." *Id*. It also "did not assert that [the creditor] acted in bad faith, vexatiously, wantonly, for oppressive reasons, or for other improper purposes." *Id*. For those reasons, the appellate panel concluded that the debtor had not given the creditor "sufficient notice to allow it to present objections to the imposition of Section 105(a) sanctions." *Id*. Snowden's Motion for Sanctions has the same deficiencies—it is based only on Section 362(k). It never mentions Section 105(a).[5] The Motion

---

[5] After extensive summary judgment briefing on the merits, Snowden amended her Motion to add a request for sanctions under the bankruptcy court's inherent authority. This does not

also does not assert that Check Into Cash acted in bad faith, vexatiously, wantonly, for oppressive reasons, or for any other improper purpose. When it comes to sanctions under Section 105(a), this case is on all fours with the *Schwartz-Tallard* case. The bankruptcy appellate panel in that case found that the bankruptcy court acted within its discretion in denying sanctions. The result should be the same here.

## C. The Court Should Reverse and Vacate the Punitive Damage Award Because Honest Mistakes Do Not Merit Extraordinary Punishment.

Though the bankruptcy court properly exercised discretion with respect to attorneys' fees and sanctions, it was wrong to impose punitive damages here. Congress authorized bankruptcy courts to impose punitive damages for stay violations only "in appropriate circumstances." 11 U.S.C. § 362(k). Courts have defined two circumstances in which punitive damages may be appropriate. First, courts impose them to punish malicious, wanton, or oppressive conduct. *In re Ramirez*, 183 B.R. 583, 590

---

change the analysis because the amended motion does not cite Section 105(a).

(B.A.P. 9th Cir. 1995). Second, they are available when a party has shown a reckless or callous disregard for the law or rights of others. *In re Bloom*, 875 F.2d 224, 228 (9th Cir. 1989). Though the bankruptcy court mentions "reckless disregard" as the basis for its decision, its actual analysis conflates that basis with the basic "willful violation" standard used to find a stay violation in the first place. Application "of an incorrect legal standard is per se an abuse of discretion." *Dawson*, 390 F.3d at 1151.

### 1.    The "reckless disregard" standard requires greater culpability than the "willful violation" standard.

The reckless disregard standard is materially different than the willful violation standard. A creditor has committed a willful violation of the automatic stay if it "knew of the automatic stay, and its actions in violation of the stay were intentional." *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1215 (9th Cir. 2002) (citing *Pinkstaff v. United States (In re Pinkstaff)*, 974 F.2d 113, 115 (9th Cir.1992)). The defendant's motives and beliefs are irrelevant to this analysis. *In re Pace*, 67 F.3d 187, 191 (9th Cir. 1995). In contrast, the defendant's motives are central to

49

the punitive damages inquiry. Punitive damages "are 'reserved for cases in which the defendant's conduct amounts to something more than a bare violation justifying compensatory damages or injunctive relief.'" *Wagner*, 74 B.R. at 904 (quoting *Cochetti v. Desmond*, 572 F.2d 102 (3d Cir. 1978)); *accord Bloom*, 875 F.2d at 228. They are "justified by the moral culpability of evil intent, or by the 'equivalent' culpability of 'reckless indifference to the rights of others.'" *Smith v. Wade*, 461 U.S. 30, 43 n.10 (1983). Thus, courts limit punitive damages to cases of "enormity, where a defendant's conduct is 'outrageous,' owing to 'gross negligence,' 'willful, wanton, and reckless indifference for the rights of others,' or behavior even more deplorable." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 493 (2008) (internal citations omitted).

District courts in other circuits have reversed punitive damage awards that were based on nothing more than the original "willful violation." *See In re Ketelsen*, 104 B.R. 242, 254 (D. S.D. 1988) *aff'd* 880 F.2d 990 (8th Cir. 1989). Other cases illustrate the heightened *mens rea* requirement for punitive damages. For example, in *In re Hildreth*, 357 B.R. 650 (M.D. Ala.

50

2006), the creditor appeared and actively participated in the bankruptcy case while simultaneously continuing its collection activity outside the case. But simple negligence or a disagreement over the effect of a court order are not sufficient to justify the imposition of punitive damages. *See In re Lord*, 270 B.R. 787 (Bankr. M.D. Ga. 1998) (declining punitive damages where creditor acted negligently); *Davis v. United States*, 136 B.R. 414 (E.D. Va. 1992) (reversing punitive damages based on disagreement over court order); *see also In re Cox*, 214 B.R. 635 (Bankr. N.D. Ala. 1997).

A recent Idaho decision highlights the heightened *mens rea* requirement in circumstances similar to what happened in this case. *See In re Dayley*, 349 B.R. 825 (Bankr. D. Idaho 2006). In that case, the creditor unwittingly sent three billing statements to a debtor even though its office had received notice of the bankruptcy. *Id*. at 827-28. The court held that the creditor's conduct constituted a "willful violation," but the conduct was not wrongful enough to merit punitive damages. *Id*. at 830. The court observed that the creditor had a system that appeared to respond

51

to bankruptcies adequately when it functioned properly. *Id*. The willful violation in that case was an isolated human error. *Id*. Thus, there was no basis to "conclude Creditor is guilty of 'reckless or callous disregard'" for the rights of the debtor. *Id*.; *see also In re Gorringe*, 348 B.R. 789 (Bankr. D. Idaho 2006). The same reasoning applies here. Check Into Cash has detailed policies that have worked in millions of transactions annually. This was one isolated error, which Check Into Cash acted quickly to correct. This error may have amounted to negligence, but it did not constitute gross negligence or malice justifying punitive damages.

### 2. The bankruptcy court applied the lower "willful violation" standard instead of the elevated standard governing punitive damage awards.

The bankruptcy court imposed punitive damages by conflating the lower "willful violation" standard with what is required for punitive damages. Its analysis reveals its error:

> As the authorities in this circuit require, particularly beginning with *Eashai*, a creditor has an affirmative duty, first, not to violate the stay and, second, to rectify the violation promptly. That duty is not, repeat, not dependent on the debtor providing a case number or anything like that. Those cases, the cases that so hold, include *Peralta* and *Ozenne*.

ER 41. None of the cases cited by the bankruptcy court address the elevated *mens rea* standard that applies to punitive damage awards. The *Eashai* case deals with non-dischargeability for fraud. *In re Eashai*, 167 B.R. 181, 186 (B.A.P 9th Cir. 1994) *aff'd* 87 F.3d 1082 (9th Cir. 1996). The *Peralta* and *Ozenne* cases simply repeat the basic standard for finding a "willful violation" of the automatic stay. *In re Peralta*, 317 B.R. 381, 389 (B.A.P. 9th Cir. 2004); *In re Ozenne*, 337 B.R. 214, 221 (B.A.P. 9th Cir. 2006). Indeed, the *Ozenne* decision never even mentions punitive damages. The *Peralta* case is no more helpful. In *dictum*, the bankruptcy appellate panel expressed surprise that the bankruptcy court had not imposed punitive damages based on the facts of that case. *Peralta*, 317 B.R. at 389-90.[6] There is no analysis—no discussion at all—of the culpability required for punitive damages. *See id*. The bankruptcy court's citation to

----

[6] In *Peralta*, the creditor refused to return a vehicle it had repossessed post-petition even though the debtor's attorney faxed copies of the bankruptcy petition, schedules, and other court filings to the creditor. 317 B.R. at 383-85. In contrast, Check Into Cash offered a full refund immediately upon receiving actual notice of Snowden's bankruptcy.

authority applying the "willful violation" is proof that it applied the wrong standard.

The bankruptcy court would not have imposed punitive damages if it had used a gross negligence standard instead. Its own factual findings confirm that Check Into Cash did not act with culpability beyond mere negligence. It specifically found that Check Into Cash did not act in bad faith or engage in intentional misconduct. ER 42. And court recognized that Check Into Cash has training and policies intended "to preclude violations of the stay." ER 40. The bankruptcy court should have ended its analysis there. Instead, it lowered the bar for punitive damages by conflating the lower "willful violation" standard with heightened "reckless disregard" standard. This is reversible error.

### 3. Under the bankruptcy court's standard, every creditor with an imperfect bankruptcy policy is subject to punitive damages.

Reversal of the punitive damages award is appropriate here for another reason—its effect on other creditors. Courts do not impose punitive damages in a vacuum; their imposition against one actor educates others on what constitutes acceptable behavior.

54

D. Owen, <u>A Punitive Damages Overview: Functions, Problems and Reform</u>, 39 Vill. L. Rev. 363, 374 (1994); *accord BMW of N. America, Inc. v. Gore*, 517 U.S. 559. 574-75 (1996). Indeed, rational behavior is defined by balancing the benefits of an action against the risk of harm. *See Bhan v. NME Hosps, Inc.*, 929 F.2d 1404, 1413 (9th Cir. 1991) ("court must weigh the harms and benefits to determine if the behavior is reasonable."); *see also United States v. Carroll Towing Co.*, 159 F.2d 169 (2d Cir. 1947) (Hand, J.). Punitive damages alter this balance to encourage some behavior and discourage other behavior. *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005); *see also BMW*, 517 U.S. at, 568 (1996). Unnecessary or excessive punitive damage awards send the wrong signal, resulting "in wasteful precautions and the withdrawal of socially valuable products and services from the marketplace." A. Polinsky & S. Shavell, <u>Punitive Damages: An Economic Analysis</u>, 111 Harv. L. Rev. 869, 900 (1998). The result is an increase in prices and a reduction in the availability of service associated with the punished activity. *Id*. at 877-82. This

ultimately hurts the very people the punitive damage award was intended to protect. *Id.*

By awarding punitive damages here, the bankruptcy court dramatically altered the way in which creditors will view lending risks in Washington. A careful lender has policies that minimize the risk of violating consumer debt laws, including the automatic stay, while still maximizing the odds of recovering unpaid debt. In 2009, Check Into Cash extended nearly 5.8 million loans nationwide, including 178,000 in Washington. Its policies and practices have worked in all but one transaction—this one. In other words, Check Into Cash's policies have an error rate that is better than one in a million.[7] This is the hallmark of rational and

---

[7] In affirming the bankruptcy court's punitive damage award, the district court cited *In re Stucka*, 77 B.R. 777 (Bankr. C.D. Cal. 1987) for the proposition that a failure "to adopt appropriate and reasonable procedures…can provide a basis for punitive damages." The creditor in *Stucka* engaged in continuous and systematic stay violations over several years without implementing *any* internal bankruptcy policies whatsoever. *Id.* at 784. In contrast, Check Into Cash has detailed policies that have worked in every instance but this one. Also, notwithstanding that observation, the district court "would not have held that [Check Into Cash's] actions met the standard for punitive damages." *Snowden*, 2012 WL 600697 at *3.

lawful behavior. *See* Polinsky & Shavell, *supra*. at 882-83. If near-perfection merits punishment, lenders face a Morton's Fork: expect to pay a penalty in addition to actual damages every time they violate the stay—no matter how innocent the mistake—or stop doing business in this circuit. For those who choose the former, the result will be greater restrictions on lending. This ultimately hurts consumers like Snowden, who rely on access to credit to make ends meet. The bankruptcy court should not have tipped the scale in this way. In addition to being legally incorrect, the punitive damage award in this case has significant negative implications for the consumer lending market. The Court should reverse and vacate the award of punitive damages because the circumstances here do not call for them.

**D.    The Court Should Reverse and Vacate the Emotional Distress Award.**

This Court should also reverse and vacate the award of emotional distress damages because the award is based on a misapplication of the law. *See Dawson*, 390 F.3d at 1151. This Court defined the debtor's burden of proof and the elements required to prove emotional distress damages in stay violation

57

cases in *In re Dawson*, 390 F.3d at 1148-49. The bankruptcy court misapplied both in the course of these proceedings.

> **1.    The bankruptcy court applied a preponderance standard instead of a clear evidence standard.**

First, the bankruptcy court held Snowden to the wrong burden of proof. Debtors seeking damages for emotional distress must produce "clear evidence to establish that significant harm occurred as a result of the stay violation." *Id.* This is an intermediate burden—higher than the bare preponderance standard but lower than the reasonable doubt standard. *Addington v. Texas*, 441 U.S. 418, 424-25 (1979). This Court selected an intermediate level of proof as a middle ground between the Seventh Circuit's harsh rule that emotional distress damages are unavailable absent financial loss and its concern that emotional distress is easily fabricated:

> Although pecuniary loss is not required in order to claim emotional distress damages, not every willful violation merits compensation for emotional distress. Like the *Aiello* court, 293 F.3d at 880, we are concerned with limiting frivolous claims.

*Dawson*, 390 F.3d at 1149. In its original decision, the bankruptcy court applied the basic preponderance standard rather than the

58

intermediate clear evidence standard: "The standard of proof is a preponderance of evidence." ER 34. This error was material. On the one hand, Snowden testified that she felt panicked after learning that Check Into Cash's deposit resulted in an overdrawn bank account. She described herself as a "nervous wreck" who felt like "crying." On the other hand, Christina Smith testified that she never saw Snowden as upset as Snowden claims, even though Smith saw Snowden frequently during that period. Smith also testified that Snowden offered her $600 to fabricate evidence to support the emotional distress claims. The bankruptcy court resolved this conflict using a preponderance standard: "I can't say that it's more likely than not that [Snowden] is the one who's either misremembering or misrepresenting what happened on that occasion." ER 39. The district court correctly reversed this error and remanded with instructions to hold Snowden to the proper burden of proof.

On remand, Snowden declined to submit any additional evidence whatsoever. Even so, the bankruptcy court reached the same conclusion. This was error. While it is true that debtors need

not produce corroborating evidence in every instance, *see Dawson*, 390 F.3d at 1150-51, this can only be true in situations where the debtor's testimony is beyond question. Otherwise, the intermediate burden of proof is meaningless. The cases this Court cited in recognizing that corroborating evidence is not always required are consistent with this point. In both cases, the debtor's credibility was not an issue, and the debtor's testimony was uncontroverted. *See Wagner*, 74 B.R. at 901; *United States v. Flynn (In re Flynn),* 185 B.R. 89, 93 (S.D. Ga. 1995). Likewise, Snowden's testimony alone may have been sufficient in this case but for the proof that she manufactured evidence and the contradictory testimony about her emotional state.

In other words, the clear evidence standard requires more than what Snowden offered here. The bankruptcy court recognized this point when it observed that "[w]ithout some other corroboration, [it] couldn't say that she clearly established emotional distress." ER 63. On remand, the bankruptcy court even gave Snowden an opportunity to submit additional evidence to

60

corroborate her story. She declined. Yet the bankruptcy court reached the same conclusion as before. *See* ER 64. This was error.

### 2. The bankruptcy court applied the elements disjunctively rather than conjunctively, as *Dawson* requires.

The bankruptcy court committed a second error on remand—misconstruing the elements for proving emotional distress in the absence of corroborating evidence. In *Dawson*, this Court held that debtors claiming emotional distress must prove three elements: (1) they suffered harm; (2) the harm was significant; and (3) the harm was caused by the stay violation. 390 F.3d at 1148-49. Debtors may prove the second element in one of three ways. First, they may offer corroborating medical evidence. *Id*. at 1149. Second, they may offer corroborating lay witness testimony. *Id*. at 1149-50. Third, in the absence of any corroborating evidence, debtors may prove that the creditor acted egregiously or that the circumstances "make it obvious that a reasonable person would suffer significant emotional harm." *Id*. at 1150. The *Dawson* court fruther refined the standard for claims lacking corroborating evidence and egregious circumstances:

61

> As we have explained, an individual can prove entitlement to emotional distress damages even in the absence of corroborating evidence and even in the absence of an egregious violation, if the individual in fact suffered significant emotional harm *and* the circumstances surrounding the violation make it obvious that a reasonable person would suffer significant emotional harm.

*Id.* at 1150-51 (emphasis added). Its use of the word "and" means the two requirements are conjunctive rather than disjunctive. *See Crooks v. Harrelson*, 282 U.S. 55, 58 (1930); *see also America's Servicing Co. v. Schwartz-Tallard*, 438 B.R. 313, 322 (D. Nev. 2010); 82 C.J.S. Statutes § 442 (2012). A debtor must produce clear evidence of significant harm from both the subjective and objective point of view. It is not sufficient to prove only one.

But that is exactly what the bankruptcy court allowed Snowden to do on remand. It found that Snowden could not clearly establish her own significant emotional distress without corroborating evidence, and there was none. ER 63. Again, her testimony alone may have been sufficient but for the fact that she manufactured evidence and the contradictory testimony from Christina Smith. Because Snowden did not clearly establish her own significant distress, the inquiry should have ended there. The

bankruptcy court ignored this shortcoming, instead relying solely
on the requirement to establish objective harm:

> One of the ways *Dawson* recognizes as a way to meet
> its clear evidence standard is that a reasonable
> person confronted with the same stay violations,
> same conduct, would suffer emotional distress. And
> that's what I find here, …. I think that that would
> cause a reasonable person substantial emotional
> distress.

ER 64. This was error. A debtor relying on this standard must also
produce clear evidence that she herself "in fact suffered significant
emotional harm." *Dawson*, 390 F.3d at 1151. Snowden did not do
this. Indeed, she testified that the phone calls were not "such a big
thing," ER 319, and that they did not interfere with her work. In
short, the bankruptcy court affirmed its previous award based on
only one of the two conjunctive elements that apply here.

The bankruptcy court's errors are particularly significant in
this case, which bears the indicia of a frivolous claim predicated
on manufactured evidence. *See Dawson*, 390 F.3d at 1149 (citing
*Aiello*, 239 F.3d at 880). Snowden had two opportunities to satisfy
her burden of proof, and she failed on both occasions. And she has
never explained her effort to submit false evidence. The Court

63

should reverse and vacate the bankruptcy court's erroneous award of emotional distress damages.

## IX.  CONCLUSION

Check Into Cash has detailed policies and procedures designed to respect our bankruptcy laws. They have worked through millions of transactions every year. What transpired here was an honest mistake—one that Check Into Cash offered to correct as soon as the matter reached the company's decision makers. Based on evidence submitted at trial, the bankruptcy court found that the stay violation ended when Check Into Cash tendered a refund—including legal expenses Snowden incurred to bring the matter to its attention. Rather than accept that tender, Snowden chose protracted litigation in search of a windfall. She bribed witnesses and fabricated evidence in the process. The rules that establish the limits of recovery for stay violations are designed to guard against precisely this fact pattern.

The parties have presented four issues on appeal. On the first issue, the Court should affirm the award of attorneys' fees incurred to remedy the stay violation and the denial of fees

64

incurred in this litigation. On the second issue, the Court should affirm the denial of attorneys' fees as a sanction. On the third issue, the Court should reverse and vacate the award of punitive damages. On the fourth and final issue, the Court should reverse and vacate the award of emotional distress damages.

## X.   STATEMENT OF RELATED CASES

Check Into Cash is not aware of any pending related cases other than the case identified in Snowden's brief.

RESPECTFULLY SUBMITTED this 19th day of September, 2013.

HILLIS CLARK MARTIN & PETERSON P.S.

By:    s/ Amit D. Ranade
        Amit D. Ranade, WSBA #34878
        Alexander M. Wu, WSBA #40649
        Attorneys for Appellee
        Check Into Cash of Washington, Inc.

## XI.   CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure, I hereby certify that the foregoing document is proportionately spaced, has a typeface of 14 points or more and contains 12,309 words.

RESPECTFULLY SUBMITTED this 19th day of September, 2013.

HILLIS CLARK MARTIN & PETERSON P.S.


By: ___s/ Amit D. Ranade_____
    Amit D. Ranade, WSBA #34878
    Alexander M. Wu, WSBA #40649
Attorneys for Appellee
Check Into Cash of Washington, Inc.

## CERTIFICATE OF SERVICE

I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on Wednesday, September 19, 2013.

I certify under the laws of the United States that the above statement is true and correct.

DATED this 19th day of September, 2013.

HILLIS CLARK MARTIN & PETERSON P.S.

By:  s/ Amit D. Ranade
    Amit D. Ranade, WSBA #34878
    1221 Second Avenue, Suite 500
    Seattle WA 98101-2925
    Telephone:  (206) 623-1745
    Facsimile:  (206) 623-7789
    Email:  adr@hcmp.com

ND: 19792.006 4829-3535-4133v7