Case No. 13-35291
Cross-Appeal Case No. 13-35322

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

In re RUPANJALI SNOWDEN, Debtor;

RUPANJALI SNOWDEN,
Appellant,

v.

CHECK INTO CASH OF WASHINGTON, INC.
Appellee.

On appeal from the United States District Court
for the Western District of Washington
District Court Case No. 12-1095-RSL
Honorable Robert S. Lasnik

APPELLEE'S REPLY BRIEF

HILLIS CLARK MARTIN & PETERSON P.S.
AMIT D. RANADE, WSBA #34878
ALEXANDER M. WU, WSBA #40649
1221 SECOND AVENUE, SUITE 500
SEATTLE, WASHINGTON 98101-2925
TELEPHONE: (206) 623-1745

Attorneys for Appellee
Check Into Cash of Washington, Inc.

# TABLE OF CONTENTS

I.   SUMMARY OF ARGUMENT ........................................................1

    A.   The bankruptcy court wrongly used the willful-violation standard to punish a careful creditor that made an honest and isolated mistake ....................................2

    B.   The bankruptcy court should have required clear evidence of actual harm before considering whether Snowden's emotional distress claim was reasonable. ............3

II.  ARGUMENT ..................................................................4

    A.   The Bankruptcy Court Applied the Wrong Standard in Imposing Punitive Damages. ...................................4

        1.   The standard for punitive damages is higher than the standard for compensatory damages......................5

        2.   The record does not show that Check Into Cash has a reckless disregard for the automatic stay............9

    B.   The Bankruptcy Court Held Snowden to the Wrong Burden of Proof and Misapplied the Standards Governing Her Emotional Distress Claim............................10

        1.   The bankruptcy court did not hold Snowden to her clear evidence burden of proof...............................11

        2.   The bankruptcy court misapplied the standard used in the absence of corroborating evidence. ...........13

III. CONCLUSION...............................................................15

IV.  CERTIFICATE OF COMPLIANCE ..........................................18

# TABLE OF AUTHORITIES

## CASES

*Aiello v. Providian Fin. Corp.*,
239 F.3d 876 (7th Cir. 2001) ............................................................... 11

*Eskanos & Adler, P.C. v. Leetien*,
309 F.3d 1210 (9th Cir. 2002) ............................................................. 6

*In re Bloom*,
875 F.2d 224 (9th Cir. 1989) ............................................................ 5, 6

*In re Dawson*,
390 F.3d 1139 (9th Cir. 2004) .......................................... 5, 10, 11, 13

*In re Gorringe*,
348 B.R. 789 (Bankr. D. Idaho 2006) ................................................. 7

*In re Pace*,
67 F.3d 187 (9th Cir. 1995) ................................................................. 6

*In re Ramirez*,
183 B.R. 583 (B.A.P. 9th Cir. 1995) .................................................. 4

*Smith v. Wade*,
461 U.S. 30 (1983) ............................................................................... 5

*Wagner v. Ivory (In re Wagner)*,
74 B.R. 898 (Bankr. E.D. Pa. 1987) ................................................... 6

# I.  SUMMARY OF ARGUMENT

Check Into Cash does not dispute that its inadvertent violation of the automatic stay was a mistake. When it learned about the mistake, it immediately tendered a full refund. This was literally a once-in-a-million error, and Check Into Cash handled it precisely how Congress envisioned creditors should address inadvertent stay violations. Rather than accept the tender, Rupanjali Snowden saw this rare mistake as an opportunity for a windfall. She demanded tens of thousands more for attorneys' fees and punitive and emotional distress damages, and she fabricated e-mail evidence in the process.[1] The events that transpired here do not call for punitive measures, nor does the record contain clear evidence that Snowden actually suffered significant emotional distress. The bankruptcy court was wrong to impose punitive

---

[1] The bankruptcy court declined to award the attorneys' fees Snowden has incurred in pursuit of exemplary damages. The briefing on Snowden's appeal of that decision is complete. This Reply Brief focuses on the bankruptcy court's errors in awarding emotional distress and punitive damages.

damages and award damages for emotional distress. This Court should reverse these errors and vacate both awards.

**A.    The bankruptcy court wrongly used the willful-violation standard to punish a careful creditor that made an honest and isolated mistake.**

Bankruptcy courts reserve punitive damages for extreme situations—cases where a creditor acts with specific knowledge or with a level of recklessness belying a lack of respect for the automatic stay. This is a different standard than the basic "willful violation" standard that is used to find a stay violation in the first place, and Snowden's effort to erase this distinction relies on a misreading of the law. While the bankruptcy court mentions the correct standard, its analysis demonstrates that it applied the basic willful-violation standard instead. If this situation—which has never before occurred despite almost six million transactions annually—merits additional punishment on top of compensatory damages, the heightened standard governing punitive damages means nothing. Snowden's attempt to de-emphasize this point does not change the facts. Check Into Cash's conduct here does not square with any of the punitive damage cases the parties have

2

cited. Indeed, the district court noted that it would not have imposed punitive damages were it the trial court. ER 53-54. This is telling. The bankruptcy court used the wrong standard in imposing punitive damages. This error should be reversed and the punitive damage award vacated.

**B.    The bankruptcy court should have required clear evidence of actual harm before considering whether Snowden's emotional distress claim was reasonable.**

The bankruptcy court's emotional distress award is also flawed. Snowden's Response Brief disregards her heightened burden of proof—she must present clear evidence that she actually suffered emotional distress. While debtors may generally meet this heightened burden with their own uncorroborated testimony, Snowden cannot do so. Her testimony is insufficient by itself because the record shows that Snowden manufactured false evidence of her alleged harm. As the bankruptcy court noted on remand, this put a blemish on her creditability. Snowden needed to offer more than her tarnished testimony to meet the clear-evidence burden, and she did not do so despite two opportunities.

Rather than end the analysis there, the bankruptcy court simply ignored the requirement and awarded damages solely because it seemed reasonable under the broader circumstances. If this were the governing rule, a bankruptcy court may award emotional distress damages anytime it seems reasonable, whether or not the debtor proves that she actually suffered harm. This would be so even if the debtor's actions raised legitimate questions about her credibility. That is surely not what this Court intended when it announced a heightened clear-evidence standard. The Court should reverse and vacate the emotional distress award because Snowden did not meet her burden of proof on a required element to recover emotional distress damages.

## II.   ARGUMENT

### A.   The Bankruptcy Court Applied the Wrong Standard in Imposing Punitive Damages.

This is not a case that calls for punitive measures. Punitive damages are reserved for cases involving serious misconduct. Courts impose them to punish malicious, wanton, or oppressive behavior, *see In re Ramirez*, 183 B.R. 583, 590 (B.A.P. 9th Cir. 1995), and when a creditor acts with a level of recklessness that

4

belies disrespect for the automatic stay. *See In re Bloom*, 875 F.2d 224, 228 (9th Cir. 1989). Though the bankruptcy court quoted the reckless-disregard standard, it actually applied the lower willful-violation standard used to award compensatory damages in the first place. Use of an incorrect legal standard is an abuse of discretion. *In re Dawson*, 390 F.3d 1139, 1151 (9th Cir. 2004).

### 1.   The standard for punitive damages is higher than the standard for compensatory damages.

In defense of the bankruptcy court's error, Snowden first contends that the level of culpability required for punitive damages need not be greater than that required for compensatory damages in the first place. (Appellant's Resp. Br. at 27.) Check Into Cash does not dispute that the level of culpability is the same in some cases. Snowden's chief authority on point is one example. *See Smith v. Wade*, 461 U.S. 30 (1983). In that case, the basic standard for liability was "a callous indifference or thoughtless disregard for the consequences" of one's action or inaction. *Id.* at 51. The Supreme Court observed that "in situations where the standard for compensatory liability is as high as or higher than the usual threshold for punitive damages, most courts will permit

5

awards of punitive damages without requiring any extra showing." *Id.* at 53.

But Snowden's reliance on that proposition is misplaced because the standard for compensatory liability here is not as high as the standard for punitive damages. Debtors need only show that the creditor "knew of the automatic stay, and its actions in violation of the stay were intentional," to recover compensatory damages. *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1215 (9th Cir. 2002). A creditor need not have any specific intent to violate the stay. *In re Pace*, 67 F.3d 187, 191 (9th Cir. 1995). In contrast, punitive damages are "reserved ... for cases in which the defendant's conduct amounts to something more than a bare violation justifying compensatory damages or injunctive relief." *Wagner v. Ivory (In re Wagner)*, 74 B.R. 898, 904 (Bankr. E.D. Pa. 1987); *accord Bloom*, 875 F.2d at 228.

Check Into Cash's Principal and Response Brief cites several key cases highlighting the kind of institutional malfeasance that justifies punitive measures. (See Appellee's Principal and Resp. Br. at 50-51.) This includes recent cases from Idaho's bankruptcy

6

court that aptly illustrate the difference between a systemic problem that requires punitive measures and the kind of isolated error that occurred here. In *In re Gorringe*, 348 B.R. 789 (Bankr. D. Idaho 2006), a creditor garnished the debtor's bank account and mailed dunning letters while the automatic stay was in effect. This happened because the creditor's employees failed to follow internal procedures used to match bankruptcy notices with account debtors. *Id*. at 792. Though the bankruptcy court awarded compensatory damages, it denied punitive damages because the creditor's conduct did not reveal a reckless disregard for the stay:

> Rather, this appears to be a case where Creditor's normal procedures were either inadequate, or those procedures were not properly followed, to identify which of its account debtors had filed for bankruptcy. When Creditor was finally notified that the account it was collecting was related to Debtor's bankruptcy, the collection actions stopped.

*Id*. at 795. This case presents strikingly similar facts. Check Into Cash's local branch transferred her file to the national office on January 3, 2009. ER 408-09. Snowden filed her bankruptcy almost two weeks later, on January 16, 2009. ER 85. She sent her notice to the local branch, which no longer had her file. ER 87. Unaware

of her bankruptcy filing, the national office continued to reach out to work out a payment plan. ER 100-02. When those efforts failed, Check Into Cash deposited her check. ER 102. Check Into Cash's national office finally learned about the filing months later, and it offered a full refund within days. ER 108-09. As the district court noted in this case, and as other cited authorities have held, Check Into Cash's actions here did not reveal a level of culpability that merits punishment beyond compensatory damages.

Even the *Bloom* case, on which Snowden so heavily relies, involved greater culpability that what the record here presents. The creditor "made numerous filings and representations after being warned by [debtor's] counsel that he was violating the automatic stay. [The creditor] blatantly attempted to circumvent the jurisdiction of the bankruptcy court by filing a motion to withdraw the reference." *Bloom*, 875 F.2d at 228. Snowden has not cited any other punitive damage case involving an isolated mistake, nor has she challenged the salience of Check Into Cash's authority on this issue. In short, the relevant authorities cited in

8

this appeal consistently reserve punitive measures for systemic problems rather than isolated errors.

### 2. The record does not show that Check Into Cash has a reckless disregard for the automatic stay.

The record in this case does not reveal a deeper systemic problem that must be punished. Check Into Cash does not dispute that its policies were imperfect. But imperfection does not equate to reckless disregard for the automatic stay. Snowden's Response and Reply Brief goes to great lengths to mischaracterize Check Into Cash as an institution "ill-equipped" to respond to basic bankruptcy notices and as having a "wholesale contempt" for the federal bankruptcy system. (Appellant's Resp. and Reply Br. at 28 and 35.) Her denigration obfuscates the record, which shows that this is the only case in almost six million annual transactions that was not resolved by Check Into Cash's policies and practices. It ignores evidence that Check Into Cash is a respected industry leader that has worked with other consumer lenders to develop policies specifically intended to comply with the automatic stay. (*See* Appellee's Principal and Resp. Br. at 8-9.) Perhaps most telling, Snowden completely ignores the fact that Check Into Cash

9

offered a full refund within days of learning about the error—a refund Snowden rejected in favor of this litigation.

Unlike ill-equipped institutions with contempt for the stay, Check Into Cash made an honest and good faith effort to comply with the automatic stay. This case is an isolated incident. The bankruptcy court ignored these points, instead penalizing Check Into Cash for being imperfect. It cited and discussed authorities holding only that a creditor has an affirmative duty not to violate the automatic stay. ER 41. That is the bare standard used to find a stay violation in the first place; it is not the standard for punitive damages. Neither the bankruptcy court nor, during this appeal, Snowden have cited any punitive damage case involving an isolated error such as what transpired here. The bankruptcy court abused its discretion by using the wrong standard. This is reversible error. *Dawson*, 390 F.3d at 1151.

**B.    The Bankruptcy Court Held Snowden to the Wrong Burden of Proof and Misapplied the Standards Governing Her Emotional Distress Claim.**

The bankruptcy court also committed reversible error when it reaffirmed its prior emotional distress award on remand. More

specifically, the bankruptcy court committed two distinct errors here, either of which is sufficient for reversal.

### 1. The bankruptcy court did not hold Snowden to her clear evidence burden of proof.

First, the bankruptcy court did not apply the appropriate evidentiary standard—an error Snowden did not address in her response. "The law has always been wary of claims of emotional distress, because they are so easy to manufacture." *Aiello v. Providian Fin. Corp.*, 239 F.3d 876, 880 (7th Cir. 2001); *accord Dawson*, 390 F.3d at 1149. That is why this circuit requires more than a bare preponderance of evidence to recover emotional distress damages: "a claim for emotional distress damages is available if the individual provides **clear evidence** to establish that significant harm occurred as a result of the violation, a standard on which we will elaborate below." *Dawson*, 390 F.3d at 1149-50 (emphasis added).

The district court initially remanded this case because the bankruptcy court used the basic preponderance standard. ER 53. On remand, the bankruptcy court acknowledged that Snowden's scheme to fabricate evidence "does raise questions about the

credibility of [her] testimony." ER 63. Snowden offered no other evidence on remand to support her emotional distress claim. This led the bankruptcy court to find that "[w]ithout some other corroboration, [it] couldn't say that she clearly established emotional distress." *Id*.

The analysis should have ended there. Though a typical debtor may meet the clear evidence burden with uncorroborated testimony, Snowden is not a typical debtor. Snowden offered a friend a bribe for favorable but false testimony, and she prepared a fake e-mail, purportedly from that friend, describing her alleged harm. ER 347-57. These actions rightly caused the bankruptcy court to question her credibility. Absent proof of her scheme to fabricate evidence, Snowden's testimony alone might have been sufficient, as it is in most other cases involving uncorroborated testimony. But when there is reason to doubt the debtor's honesty, something more must be required to meet the clear evidence burden if that higher burden is to mean anything. Snowden even had a second chance to produce some genuine corroborating

evidence. She failed to do so. The bankruptcy court was wrong to reaffirm its prior ruling based on the same insufficient evidence.

### 2. The bankruptcy court misapplied the standard used in the absence of corroborating evidence.

The bankruptcy court reached its mistaken conclusion only by misapplying the applicable standard. In *Dawson*, this Court elaborated on the appropriate standard for recovering emotional distress damages when there is no corroborating evidence or egregious conduct:

> An individual can prove entitlement to emotional distress damages even in the absence of corroborating evidence and even in the absence of an egregious violation, if the individual in fact suffered significant emotional harm **and** the circumstances surrounding the violation make it obvious that a reasonable person would suffer significant emotional harm.

*Id.* at 1150-51 (emphasis added). This standard has two distinct elements. As discussed above, the debtor must first establish that she actually suffered significant emotional harm. *Id.* She must do so with clear evidence. *Dawson*, 390 F.3d at 1149-50. Then, because the debtor is not offering corroborating evidence, she

must show that her emotional distress claim is reasonable under the circumstances. *Id.*

This is not mere tautology. This two-part test applies when a debtor has presented no evidence other than her own testimony. The actual harm requirement serves a distinct purpose. Without that element, bankruptcy courts would be free to award emotional distress damages every time it seemed reasonable, even when there is insufficient proof of actual harm. The reasonableness test also serves a specific purpose. If a debtor was not required to show that her emotional distress claim is reasonable, every debtor in every stay violation case would win damages simply by saying she suffered emotional harm. This Court has recognized that "not every willful violation merits compensation for emotional distress." *Id.* at 1149. The Court expressed a valid concern for frivolous claims, *see id.*, and that is why it adopted a standard that limits uncorroborated emotional distress claims to situations where the harm seems reasonable.

In this case, however, the bankruptcy court should never have reached the question of reasonableness because Snowden did

14

not properly establish actual harm in the first place. As noted above, the bankruptcy court questioned Snowden's credibility in light of her evidence-manufacturing ploy. ER 63. This means she should have produced more than her own questionable testimony to prove her actual harm. *See supra*. Moreover, she testified that she did not think the phone calls were "such a big thing." ER 319. That is the opposite of actual emotional harm. Because Snowden did not prove that she actually suffered emotional harm, the bankruptcy court should never have asked whether her claim was reasonable under the circumstances.

The bankruptcy court held Snowden to the wrong burden of proof, and then it misapplied the standard to circumvent that error. This Court should reverse and vacate the erroneous emotional distress award.

## III.   CONCLUSION

Check Into Cash is a consumer-lending industry leader with detailed policies and practices whose sole purpose is to comply with the automatic stay. Those policies and practices have successfully complied with the automatic stay through millions of

transactions. What transpired here was an isolated and honest mistake. And because it respects the automatic stay, Check Into cash tendered a full refund within days, including legal expenses incurred to bring the matter to its attention.

Rupanjali Snowden is not entitled to any more than that. It was her choice to pursue a windfall rather than end this matter. That is why the bankruptcy court properly distinguished between legal expenses incurred to end the stay violation and those incurred solely in pursuit of a large money judgment.

Though the bankruptcy court correctly followed circuit precedent in limiting attorneys' fees, it missed the mark when it came to punitive damages and emotional distress. Punitive damages are reserved for cases in which a creditor's conduct demonstrates that it has no respect for the law. The record here does not reveal such contempt; the bankruptcy court reached a different conclusion only because it used the wrong standard. This Court should reverse and vacate the punitive damage award.

The bankruptcy court's emotional distress award is also mistaken. Debtors seeking emotional distress damages must

establish their own actual harm with clear evidence. Snowden failed to do that despite two opportunities. Her case is based solely on her uncorroborated testimony. While that may be sufficient in a normal bankruptcy, this case is not unusual because Snowden's credibility is understandably questionable. She tried to pay witnesses, and she falsified e-mail evidence. If this Court's clear evidence standard is to have meaning, uncorroborated testimony from a questionable witness cannot be sufficient to meet it.

The bankruptcy court used the wrong burden of proof, and it circumvented that shortcoming by misusing the standard that applies in the absence of corroborating evidence. The reasonable person test does not excuse a debtor from having to establish her actual emotion harm first. This Court should reverse and vacate the award of emotional distress damages.

/////

/////

/////

17

RESPECTFULLY SUBMITTED this 23rd day of December, 2013.

HILLIS CLARK MARTIN & PETERSON P.S.

By:    *s/ Amit D. Ranade*
    Amit D. Ranade, WSBA #34878
    Alexander M. Wu, WSBA #40649
Attorneys for Appellee
Check Into Cash of Washington, Inc.

## IV.    CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure, I hereby certify that the foregoing document is proportionately spaced, has a typeface of 14 points or more and contains 3,619 words.

RESPECTFULLY SUBMITTED this 23rd day of December, 2013.

HILLIS CLARK MARTIN & PETERSON P.S.

By:    *s/ Amit D. Ranade*
    Amit D. Ranade, WSBA #34878
    Alexander M. Wu, WSBA #40649
Attorneys for Appellee
Check Into Cash of Washington, Inc.

18

## CERTIFICATE OF SERVICE

I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on Monday, December 23, 2013.

I certify under the laws of the United States that the above statement is true and correct.

DATED this 23rd day of December, 2013.

HILLIS CLARK MARTIN & PETERSON P.S.


By:  *s/ Amit D. Ranade*
    Amit D. Ranade, WSBA #34878
    1221 Second Avenue, Suite 500
    Seattle WA 98101-2925
    Telephone:  (206) 623-1745
    Facsimile:  (206) 623-7789
    Email:  adr@hcmp.com

ND:  19792.006  4853-1252-3287v2