Henry, DeGraaff, & McCormick, P.S.

May 31, 2014

Clerk of the Court
US Court of Appeals for the Ninth Circuit
95 Seventh Street
San Francisco, CA 94103

Re: Citation of Supplemental Authorities
*Rupanjali Snowden v. Check Into Cash of Washington, Inc.,* No. 13-35291 & 13-35322

Dear Clerk:

Pursuant to FRAP 28(j) and Circuit Rule 28-6, Snowden has learned of two pertinent and relevant authorities regarding the award of attorneys' fees under 11 USC § 105(a) for violations of the automatic stay. *See* Br. of Appellant at 40-41, 43-47.

In *Law v. Siegel*, 134 S.Ct. 1188 (2014), the Supreme Court ruled that bankruptcy courts cannot use § 105(a) to impose sanctions that are "specifically prohibited" by other sections of the Code. However, this decision does not preclude the use of § 105(a) to award attorneys' fees that cannot be awarded under § 362(k) as interpreted by *Sternberg v. Johnston*, 595 F.3d 397 (9th Cir. 2010).

*Law*'s holding relies on the fact that the remedy ordered by the bankruptcy court—revocation of the homestead exemption of a fraudulent debtor—is specifically prohibited by § 522 of the Code. Under § 522, "exempt property 'is not liable' for the payment of 'any [prepetition] debt' or 'any administrative expense.'" *Law*, slip op. at 2 (citing 11 U.S.C. § 522(c), (k)) (alteration in original). The Court repeatedly emphasizes the specificity of this

prohibition in concluding that it precludes sanction under § 105(a). *Id.*, slip op. at 2, 5–8 *passim*, 11, 12.

Section 362(k) contains no specific prohibitions: it is a permissive statute. Even under the narrow reading preferred by *Sternberg*, there is no language in § 362(k) that can reasonably be construed as specifically prohibiting additional relief under § 105(a) or any other provision of the Code.

*In re Kutumian*, No. 13-14675-13-7 (Bankr. E.D. Cal. May 15, 2014), comes to the opposite conclusion, interpreting *Sternberg* and *Law* as limiting the availability of attorneys' fees under § 105(a). Yet *Kutumian* also draws attention to § 362(k)'s legislative history, which suggests that it was "not intended to foreclose recovery under already existing remedies." *Kutumian* at 16 (citing 130 Cong. Rec. H1942 (daily ed. Mar. 26, 1984) (statement of Rep. Rodino)). Given this, the lack of any specific prohibition in § 362(k) is especially important as an indication that it does not preclude any additional award of attorneys' fees under *Law*.

Very Truly Yours,

*s/ Christina L. Henry*

Christina L. Henry

**CERTIFICATE OF SERVICE**

I hereby certify that on May 31, 2014, I electronically filed the Appellant *Rupanjali Snowden's Letter of Supplemental Citation dated May 31, 2014 with Exhibit A* using the CM/ECF System which will send notification of such filing to the below counsel of record.

Amit D. Ranade, WSBA# 34878          Alexander M. Wu, WSBA# 40649
adr@hcmp.com                         amw@hcmp.com
Hillis Clark Martin & Peterson, P.S. Hillis Clark Martin & Peterson, P.S.
1221 Second Avenue, Suite 500        1221 Second Avenue, Suite 500
Seattle, WA 98101                    Seattle, WA 98101
Tel# 206-623-1745                    Tel# 206-623-1745
Fax# 206-623-7789                    Fax# 206-623-778

I certify under the laws of the United States that the above statement is true and correct.

DATED this 31st day of May, 2014.

*/s/ Christina L. Henry*
Christina L. Henry, WSBA #31273
Attorney for Rupanjali Snowden

**EXHIBIT A**

POSTED ON WEBSITE

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

In re                                    )        Case No. 13-14675-B-7
                                         )
Jerry Harry Kutumian,                    )        DC No. KDG-2
                                         )
                    Debtor.              )
_____)

**MEMORANDUM DECISION REGARDING DEBTOR'S
MOTION FOR DAMAGES BASED ON VIOLATION OF THE
AUTOMATIC STAY AND SANCTIONS FOR CONTEMPT**

Connie M. Parker, Esq., of Klein, DeNatale, Goldner, et al., LLP, appeared on behalf of the debtor Jerry Harry Kutumian.

George A. Gonzalez, Esq., appeared on behalf of respondents Mitchell S. Golub, Esq. and the Law Offices of Golub & Associates, PLC.

Before the court is a motion filed by the debtor Jerry Harry Kutumian (the "Debtor") seeking damages under 11 U.S.C. § 362(k)(1)[1] and civil contempt sanctions under § 105(a) against attorney Mitchell S. Golub, Esq., and the Law Offices of Golub & Associates, PLC (collectively "Golub") for their willful violation of the automatic stay (the "Motion"). The court has already determined that a willful violation occurred and it has since been corrected. Rather, this dispute revolves around the appropriate amount of damages, specifically attorney's fees and costs, that the Debtor can recover as a result of the violation. The Debtor requests $4,366 in attorney's fees and $75.05 in costs. Golub contends that the award should not exceed $1,000. For the reasons set forth below, the court will award the Debtor his actual damages under § 362(k)(1) in the amount of $3,408.55, representing attorney's fees

---

[1] Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036, as enacted and promulgated *after* October 17, 2005, the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA) of 2005, Pub. L. No. 109-8, 119 Stat. 23.

1  and costs incurred prior to termination of the stay violation. The Debtor's request for

2  an award of additional fees as a contempt sanction under § 105(a) will be denied.

3        This memorandum decision contains the court's findings of fact and

4  conclusions of law required by Federal Rule of Civil Procedure 52(a), made

5  applicable to this contested matter by Federal Rules of Bankruptcy Procedure 7052

6  and 9014(c). The court has jurisdiction over this matter under 28 U.S.C. § 1334, 11

7  U.S.C. §§ 105 and 362, and General Order Nos. 182 and 330 of the U.S. District

8  Court for the Eastern District of California. This is a core proceeding pursuant to 28

9  U.S.C. § 157(b)(2)(A).

10  **Background and Findings of Fact.**

11        The Debtor, an individual, is a building contractor who was involved in the

12  construction and sale of residences located in a planned development known as

13  Summit Ranch. Prior to his bankruptcy, the Debtor, along with other entities, had

14  been sued in state court by various Summit Ranch homeowners for alleged

15  construction defects (the "First Civil Action").[2] The plaintiffs in the First Civil

16  Action were represented by Golub. When this chapter 7 bankruptcy commenced on

17  July 3, 2013, the First Civil Action was stayed. In his schedules, the Debtor listed the

18  homeowners from the First Civil Action as creditors, using Golub's address for

19  notice. Thus, Golub received notice of the bankruptcy case, the meeting of creditors,

20  and the deadlines for taking certain actions against the Debtor.

21        Not only did Golub know of the Debtor's bankruptcy, but Golub even

22  participated in some of the bankruptcy proceedings. On August 9, 2013, Golub filed

23  a notice of appearance and request for special notice on behalf of the homeowners.

24  Three days later, Golub appeared at the meeting of creditors and questioned the

25  Debtor regarding potential insurance coverage for the Summit Ranch development.

26  _____

27  [2] The First Civil Action included causes of action for strict liability, negligence, nuisance, breach of warranty, negligent failure to disclose misrepresentation, and negligent

28  infliction of emotional distress.

1   Golub also filed an adversary proceeding against the Debtor on October 11 seeking to

2   deny his discharge under § 727 or to alternatively except the homeowners' claims

3   from discharge under § 523 (the "Adversary Proceeding").  Lastly, on October 24,

4   Golub filed an objection to the chapter 7 trustee's report of no distribution and, on

5   December 4, appeared at the hearing on that matter.

6       On December 31, 2013, while this bankruptcy case was still pending, before

7   entry of the Debtor's discharge,[3] and while the automatic stay was still in effect,

8   Golub filed a second construction defect action against the Debtor and other entities

9   in state court on behalf of seventeen different Summit Ranch homeowners (the

10  "Second Civil Action").  The complaint in the Second Civil Action involved new

11  plaintiffs but was based on many of the same causes of action alleged in the First

12  Civil Action.  Golub was aware of the automatic stay when it filed the Second Civil

13  Action but believed (erroneously) that the claims pleaded in the Second Civil Action

14  did not arise until after commencement of the Debtor's bankruptcy.[4]  While the

15  Debtor was named as a defendant in the Second Civil Action, there is no evidence to

16  suggest that the Debtor was ever served with the summons or complaint.

17      On January 3, 2014, the Debtor's counsel, Connie Parker ("Parker"), learned

18  of the Second Civil Action and immediately sent a demand letter to attorney Mitchell

19  Golub reminding him that the Second Civil Action violated the automatic stay and

20  requesting a dismissal of the Debtor not later than January 10.  Golub apparently

21

22      [3] Golub's adversary proceeding delayed the entry of a discharge in this case.  The
    objection to discharge claim for relief was dismissed with prejudice on April 11, 2014, and
23  the Debtor's general discharge was entered on April 14, 2014.  The automatic stay
24  terminated as to the Debtor at that time and was replaced by the discharge injunction.

        [4] The plaintiffs in the Second Civil Action all purchased their homes before
25  commencement of the bankruptcy.  However, Golub's first argument in opposition to the
    Motion was based on Golub's contention that the various construction defects underlying the
26  Second Civil Action were not *discovered* until after commencement of the bankruptcy, that
    they were therefore "postpetition claims," and that the automatic stay did not apply.  The
27  court rejected Golub's "postpetition claim" argument for reasons stated on the record at the
    hearing, so it will not be discussed here.
28

3

1  received the letter around January 9 but made no effort to respond to Parker.[5]  While

2  Parker awaited Golub's response, she periodically checked the state court's docket to

3  see if the status of the Second Civil Action had changed.  On January 21, almost three

4  weeks after sending the letter to Golub, and still having received no response or seen

5  any change in the status of the Second Civil Action, Parker began preparing the

6  Motion.  It was completed the next day, but was not actually filed and served until

7  January 28.

8       Meanwhile, in the Adversary Proceeding, Parker filed a status conference

9  statement on January 24, which advised the court that Golub had filed the Second

10  Civil Action against the Debtor in violation of the automatic stay.  The statement also

11  declared Parker's intent to file the Motion shortly thereafter.  Golub's responsive

12  status conference statement, filed three days later, announced for the first time that

13  Golub was in the process of dismissing the Debtor from the Second Civil Action.

14       On or about that same day, January 27, Golub submitted a request to the state

15  court for dismissal of the Debtor from the Second Civil Action.  The next day, Golub

16  called Parker and informed her that the request for dismissal had been transmitted to

17  the state court and that Golub was simply waiting for the state court to return a

18  conformed copy.  However, the record does not show that Golub provided Parker

19  with a copy of the dismissal request, and the state court did not enter the dismissal on

20  its docket until January 31, 2014.  At that point, Golub's violation of the automatic

21  stay terminated, and there was nothing else Golub needed to do to correct the error.

22       After finally receiving a call from Golub regarding its intent to dismiss the

23  Second Civil Action, but having not yet received a copy of the dismissal request and

24  _____

25       [5] At that time, both attorneys Mitchell Golub and George Gonzalez were undergoing personal and family issues that "prevented them from immediately addressing [Parker's]

26  demand," and Golub's response simply states that these issues occurred in "early January." Opp'n to Debtor's  Mot. for Order for Contempt 6:4–8, Feb. 26, 2014, ECF No. 50.  It does

27  not address the exact timing of these issues in relationship to Parker's demand letter, and it does not adequately explain why Parker received no response once the attorneys were able

28  to return to their cases.

1  not seeing that the Second Civil Action was actually dismissed, Parker proceeded to

2  file the Motion with this court on January 28.  The Motion prays for $4,366 in

3  attorney's fees and $75.05 in costs as part of either the damages recoverable under

4  § 362(k)(1) and/or an award of contempt sanctions under § 105(a).[6]

5      In support of the Motion, Parker attached copies of her billing records which

6  revealed seventeen time entries for 14.8 hours of work billed at $295 an hour.  First,

7  seven billing entries, totaling only 1.8 hours and $531 in fees, cover a range of

8  Parker's tasks, including drafting the demand letter, communicating with the Debtor

9  about the Second Civil Action, reviewing the Second Civil Action's complaint and

10  docket, and drafting a notice of the automatic stay to be filed in the Second Civil

11  Action.  Then, there are eight entries that represent the bulk of the requested

12  attorney's fees—9.5 hours of work resulting in fees of $2,802.50—relating to

13  preparation of the Motion on January 21 and 22.  Lastly, Parker includes two "future"

14  time entries that total 3.5 hours and $1,032.50 in fees.  They represent the anticipated

15  fees for reviewing Golub's opposition to the Motion, drafting the responsive reply

16  brief, and appearing at the hearing on the Motion.

17  **Discussion and Conclusions of Law.**

18      <u>Willful Violation of the Automatic Stay.</u>  There is no question that Golub's

19  filing of the Second Civil Action violated the automatic stay.  *See* § 362(a)(1) (staying

20  "the commencement or continuation . . . of a judicial, administrative, or other action

21  or proceeding against the debtor that was or could have been commenced before the

22  commencement of the case under this title"); *see also supra* note 4 (regarding Golub's

23  "postpetition claim" argument).

24      Further, there is no question that the stay violation was a willful act.  "A

25  _____

26      [6] Since, at the time of the Motion's filing, the stay violation had not yet been
formally remedied, the Debtor also requested in the Motion that Golub be sanctioned $100 a

27  day until the Debtor was dismissed from the Second Civil Action.  However, by the March
12 hearing on the Motion, the Debtor had already been dismissed.  As a result, this issue is

28  moot, and the court has no need to address this request.

1 willful violation is satisfied if a party knew of the automatic stay, and its actions in

2 violation of the stay were intentional." *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d

3 1210, 1215 (9th Cir. 2002). As to the first element, Golub knew of the automatic

4 stay, which is evidenced by its notice of and participation in the bankruptcy case. *See*

5 *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1191 (9th Cir. 2003) (noting that

6 "a party with knowledge of bankruptcy proceedings is charged with knowledge of the

7 automatic stay" for § 362(k)(1) purposes); *Ozenne v. Bendon (In re Ozenne)*, 337

8 B.R. 214, 220 (9th Cir. BAP 2006) ("Knowledge of the bankruptcy filing is the legal

9 equivalent of knowledge of the automatic stay."). As to the second element, the

10 preparation and filing of the Second Civil Action was totally within Golub's control

11 and can only be characterized as an intentional, voluntary act.

12　　Actual Damages under § 362(k)(1). Because Golub has willfully violated the

13 automatic stay, the court now turns to the issue of the Debtor's damages. Under

14 § 362(k)(1), "an individual injured by any willful violation of [the automatic stay]

15 shall recover actual damages, including costs and attorneys' fees, and in appropriate

16 circumstances, may recover punitive damages." The language of the statute gives the

17 court little discretion with regard to awarding some amount of damages. "The words

18 'shall recover' indicate that Congress intended that the award of actual damages, costs

19 and attorney's fees be mandatory upon a finding of a willful violation of the stay."

20 *Ramirez v. Fuselier (In re Ramirez)*, 183 B.R. 583, 589 (9th Cir. BAP 1995).

21　　Here, the Debtor has not offered any evidence of, nor prayed for, any damages

22 arising out of the stay violation other than his attorney's fees and costs. However, the

23 parties disagree on the amount of attorney's fees that can be properly awarded. The

24 Debtor prays for $4,366 in fees and $75.05 in costs, while Golub urges that the award

25 not exceed $1,000. However, neither number represents the appropriate result.

26　　The *Sternberg* Limitation. The issue of what attorney's fees are generally

27 appropriate in a § 362(k)(1) award was addressed by the Ninth Circuit in *Sternberg v.*

28

1   *Johnston*, 595 F.3d 397 (2010).  Prior to *Sternberg*, the BAP had permitted individual

2   debtors to recover all "[a]ttorneys' fees incurred as a result of a violation of the

3   automatic stay," including "the attorney's fees and costs incurred in prosecuting an

4   adversary proceeding seeking damages arising from a violation of the automatic

5   stay," as a part of their "actual damages" under § 362(k)(1).  *Havelock v. Taxel (In re*

6   *Pace)*, 159 B.R. 890, 900–01 (9th Cir. BAP 1993), *vacated in part on other grounds*,

7   67 F.3d 187 (9th Cir. 1995).  However, the Ninth Circuit in *Sternberg* rejected that

8   result based on the "American Rule" regarding the recovery of attorney's fees.  It

9   significantly limited the remedy available under § 362(k)(1), holding that the award

10  of "actual damages" can include "only those attorney fees related to enforcing the

11  automatic stay and remedying the stay violation," but not the fees incurred in

12  prosecuting the damage action itself.  595 F.3d at 940.  "Without a doubt, Congress

13  intended § 362(k)(1) to permit [only] recovery as damages of fees incurred to prevent

14  violation of the automatic stay."  *Id.* at 946.

15      The distinction between those attorney's fees incurred to enforce the stay and

16  remedy the stay violation and those incurred to prosecute a § 362(k)(1) damages

17  claim is not always a clear line.  *See, e.g.*, *Am.'s Servicing Co. v. Schwartz-Tallard (In*

18  *re Schwartz-Tallard)*, --- F.3d ---, No. 12-60052, 2014 WL 1465698, at *4–10 (9th

19  Cir. Apr. 16, 2014) (Wallace, J., dissenting) (disagreeing with majority over whether

20  the  debtor could recover attorney's fees incurred in defending the appeal of a finding

21  of a stay violation).  Yet, in an attempt to simplify the analysis, the Ninth Circuit in

22  *Sternberg* has given us a "bright line" which is applicable here: "Once the [stay]

23  violation has ended, any fees the debtor incurs after that point in pursuit of a damage

24  award would not be to compensate for 'actual damages' under § 362(k)(1)."  595 F.3d

25  at 947.  *But see Schwartz-Tallard*, 2014 WL 1465698, at *7 (Wallace, J., dissenting)

26  (noting that majority did not follow *Sternberg*'s instruction).

27      As a result, the court must determine when Golub's stay violation actually

28

7

1    terminated because, under *Sternberg*, that is the operative date after which the

2    Debtor's right to recover attorney's fees under § 362(k)(1) also terminated.  Here,

3    Golub submitted its request for dismissal to the state court on or about January 27,

4    2014, but the state court did not actually enter the dismissal until January 31.  Thus,

5    the stay violation did not cease until January 31, 2014, and the Debtor should be

6    entitled to recover his reasonable attorney's fees incurred up until that date.

7         Golub argues for a further reduction of the attorney's fees, contending that

8    some of Parker's work between January 3 and 22 related solely to prosecution of the

9    § 362(k)(1) damages action, which cannot be counted as "damages" under *Sternberg*.

10   Indeed, eight billing entries from January 21 to 22, which total $2,802.50, relate to

11   preparation of the Motion and could, as Golub argues, be considered "pursuit of a

12   damage award."  *Sternberg*, 595 F.3d at 947.  The court disagrees.  As the facts of this

13   case illustrate, the legal services necessary to remedy a stay violation can often

14   overlap those necessary to recover damages, and until the stay violation terminates,

15   those legal services can fall into both categories.

16        Golub disregards the Ninth Circuit's instruction, recited above, that "[o]nce the

17   [stay] violation has ended, any fees the debtor incurs after that point in pursuit of a

18   damage award would not be to compensate for 'actual damages' under § 362(k)(1)."

19   *Id.*  By inverse, before the stay violation has ended, the attorney's fees incurred by the

20   debtor, even if somewhat related to the "pursuit of a damage award," may also be

21   categorized as part of the actual damages under § 362(k)(1) if they are reasonably

22   related to correcting the violation.

23        As the Ninth Circuit noted, the actual damages awarded under § 362(k)(1) are

24   intended to compensate for the "injury resulting from the stay violation itself."  *Id.*

25   As long as the stay violation continues, the injury to the debtor continues, and the

26   reasonable costs for bringing an end to the stay violation continue to be part of that

27   injury.  How a debtor seeks to remedy the stay violation will change depending on the

28

8

1    circumstances.  Sometimes, a simple demand letter or phone call to the party violating

2    the stay is sufficient to convince that party to end its stay violation.  That remedy was

3    tried but did not work here.  At other times, the formal request for damages in a

4    motion or complaint filed with the court becomes a necessary tool of persuasion

5    against the violating party.  Certainly, a motion for compensatory damages would

6    have more "teeth" than the seemingly empty threat to seek damages in a demand

7    letter, especially when the offending party has not otherwise responded to the letter.

8        Such is the case here.  After waiting nineteen days with no response from

9    Golub, Parker reasonably concluded that the only tool the Debtor had to force

10    Golub's response and gain a dismissal from the Second Civil Action was to pursue

11    the Motion.  Even though the Motion requests damages under § 362(k)(1), the very

12    existence of the Motion was also instrumental in bringing an end to the stay violation.

13    The court notes that the Motion not only prays for damages but also requests the

14    imposition of daily sanctions until Golub actually complied with the automatic stay.

15    Golub did not begin the process of curing the stay violation until after Parker

16    mentioned the forthcoming Motion in the Adversary Proceeding's status conference

17    statement on January 24.  On these facts, the court is not persuaded that the fees

18    incurred to prepare and file the Motion were not properly "attorney fees related to

19    enforcing the automatic stay and remedying the stay violation."  *Id.* at 940.

20        Failure to Mitigate.  Additionally, Golub argues that Parker failed to mitigate

21    the damages by generating excessive fees.  The attorney's fees requested under

22    § 362(k)(1) must be reasonable.  *See Eskanos & Adler, P.C. v. Roman (In re Roman)*,

23    283 B.R. 1, 11 (9th Cir. BAP 2002) (endorsing use of § 330 principles as guide for

24    determining attorney's fees in § 362(k)(1) context).  "Generally, in determining the

25    appropriate amount of attorneys' fees to award as a sanction, the court looks to two

26    factors: (1) what expenses or costs resulted from the violation and (2) what portion of

27    those costs was reasonable, as opposed to costs that could have been mitigated."  *Id.*

28

9

1   at 12.

2         Here, Golub contends that Parker unnecessarily moved forward with

3   preparation of the Motion after sending the demand letter on January 3, rather than

4   following up with Golub.  Indeed, Golub complains that Parker only sent one letter

5   and then failed to "request an update on the dismissal."  Opp'n to Debtor's  Mot. for

6   Order for Contempt 8:19–28, Feb. 26, 2014, ECF No. 50.  However, this argument

7   necessarily implies that Parker had some continuing duty to "follow up" and remind

8   Golub of its stay violation.  Golub's argument fails to acknowledge that it had an

9   affirmative duty to remedy the stay violation.  *See Eskanos*, 309 F.3d at 1214–15; *see*

10  *also Dyer*, 322 F.3d at 1192; *cf. Abrams v. Sw. Leasing & Rental Inc. (In re Abrams)*,

11  127 B.R. 239, 244 (9th Cir. BAP 1991) (concluding that creditors' continued

12  repossession of debtors' car became willful stay violation when they "failed to take

13  any reasonable steps to remedy their violation upon learning of the debtors'

14  bankruptcy").  Golub could have easily responded to Parker with a simple phone call,

15  or perhaps even a letter, immediately after receiving her demand.  If Golub's two

16  responsible attorneys were unable to respond immediately, one of them certainly

17  could have responded to Parker within the three weeks that followed.  It was not

18  entirely up to Parker to initiate the contact and pursue the remedy.

19        Parker's actions were not unreasonable given Golub's failure to respond to the

20  demand letter or otherwise communicate with Parker.  Even if Golub did not receive

21  the demand letter until January 9, six days after it was mailed out, Golub made no

22  immediate attempt to contact Parker, even informally, about dismissing the Debtor

23  from the Second Civil Action.  Parker waited nineteen days after mailing the demand

24  letter before she even started to work on the Motion.  Golub waited until January 27

25  to first inform Parker, through a pleading it filed in another action, that a request for

26  dismissal would be forthcoming.  Even then, Parker had nothing to verify that the

27  request for dismissal had actually been prepared and sent to the state court.  By that

28

10

1  time, it was simply too late; Parker had completed the Motion and was ready to file it.

2  It is disingenuous for Golub to suggest that Parker acted improperly by filing the

3  Motion shortly after learning, informally and for the first time, that Golub now

4  intended to do what it should have already done.

5          For these reasons, the court will award the Debtor his actual damages under

6  § 362(k)(1) in the amount of $3,408.55, which represents $3,333.50 in attorney's fees

7  and $75.05 in costs incurred prior to termination of the stay violation.  The Debtor's

8  request for additional attorney's fees to review Golub's opposition, draft the reply,

9  and appear at the hearing—tasks that did not occur until after the stay violation

10  ended—cannot be awarded under § 362(k)(1) in accordance with *Sternberg*.

11          <u>Civil Contempt Sanctions under § 105(a).</u>  The court now turns to the more

12  difficult part of the Motion, the Debtor's request for attorney's fees incurred after

13  January 31, i.e., when the stay violation terminated.  As discussed above, attorney's

14  fees incurred after the Debtor was dismissed from the Second Civil Action cannot be

15  awarded under § 362(k)(1) and *Sternberg*.  However, the Debtor argues that these

16  fees are recoverable as a civil contempt sanction under § 105(a).

17          The civil contempt remedy is not based on a specific statutory predicate like

18  the damages remedy provided in § 362(k)(1).  In the absence of a statutory basis for

19  awarding additional attorney's fees to the Debtor, he is essentially asking the court to

20  exercise its general equitable powers under § 105(a), which states, in pertinent part,

21  "The court may issue any order, process, or judgment that is necessary or appropriate

22  to carry out the provisions of this title . . . ."  In the Ninth Circuit, the civil contempt

23  remedy has been generally accepted as an exercise of the bankruptcy court's equitable

24  power under § 105(a).  *See Dyer*, 322 F.3d at 1189–90 & n.13 (discussing history of

25  the civil contempt remedy within the Ninth Circuit).

26          Further, it has long been accepted in the Ninth Circuit that civil contempt

27  sanctions are available as a remedy for a violation of the automatic stay.  *See Cal.*

28

11

1   *Emp't Dev. Dep't v. Taxel (In re Del Mission Ltd.)*, 98 F.3d 1147, 1152 (9th Cir.

2   1996);  *Havelock v. Taxel (In re Pace)*, 67 F.3d 187, 193 (9th Cir. 1995); *United*

3   *States v. Arkison (In re Cascade Roads, Inc.)*, 34 F.3d 756, 767 (9th Cir. 1994);

4   *Johnston Envtl. Corp. v. Knight (In re Goodman)*, 991 F.2d 613, 620 (9th Cir. 1993).

5   Section 105(a) allows the entity who proves a willful stay violation to recover

6   "sanctions associated with civil contempt—that is, compensatory damages, attorney

7   fees, and the offending creditor's compliance." *Dyer*, 322 F.3d at 1193 (discharge

8   violation case).  "[W]hile an award of damages under section [362(k)(1)] is

9   mandatory, an award of damages under section 105(a) is discretionary." *Pace*, 67

10  F.3d at 193.  Additionally, as distinguished from a § 362(k)(1) award, which is

11  limited by *Sternberg*, "a damages award under § 105(a) for a willful stay violation

12  may appropriately include attorneys' fees and costs incurred in pursuing damages for

13  the violation," i.e., fees incurred after the termination of the stay violation.  *Rediger*

14  *Inv. Corp. v. H Granados Commc'ns, Inc. (In re H Granados Commc'ns, Inc.)*, 503

15  B.R. 726, 735 (9th Cir. BAP 2013).

16          The Debtor contends that the cited case authority unquestionably supports his

17  request for recovery of the attorney's fees incurred after the stay violation ended.

18  However, the injured parties in the cited cases were not "individuals" (i.e., natural

19  persons) entitled to relief under § 362(k)(1).[7]  The courts had to rely on § 105(a)'s

20  civil contempt authority to create a remedy for those non-individuals that had no other

21  available remedy.  *See Del Mission*, 98 F.3d at 1152 (trustee); *Pace*, 67 F.3d at 193

22  (trustee); *Cascade Roads*, 34 F.3d at 766–67 (corporate debtor); *Goodman*, 991 F.2d

23  at 619–20 (corporate debtor); *H Granados Commc'ns*, 503 B.R. at 734 (corporate

24  debtor); *cf. Ramirez*, 183 B.R. at 589 (treating individuals' motion for contempt as a

25  request for damages under

26  _____

27          [7] The Debtor has not cited a case where an injured individual was awarded contempt
    sanctions under § 105(a).

28

§ 362(k)(1).

This case though involves an individual, which makes § 362(k)(1) the immediately applicable authority, and which also makes the above cited cases distinguishable. Because those cases involved non-individuals, the courts never had to address the individual debtor's right to recover damages under both §§ 362(k)(1) and 105(a). Thus, those cases are not as applicable here as the Debtor suggests they might be.

Nevertheless, the Ninth Circuit in *Sternberg*, after limiting the recovery of "damages" under § 362(k)(1), suggested, in a footnote, that additional attorney's fees may still be awarded as civil contempt sanctions:

> The attorneys fee award against Sternberg was based on the authority of this statute [§ 362(k)(1)]. The bankruptcy court did not find Sternberg or anyone else to be in civil contempt for violating the automatic stay, nor did it impose any sanctions under its inherent civil contempt authority. As this opinion does not consider the civil contempt authority of the court, it does not limit the availability of contempt sanctions, including attorney fees, for violation of the automatic stay, where otherwise appropriate.

595 F.3d at 946 n.3 (citation omitted). *Sternberg*, however, was decided before the U.S. Supreme Court's recent decision in *Law v. Siegel*, 134 S. Ct. 1188 (2014), which directly addresses the scope and application of § 105(a). In *Law*, the Supreme Court significantly curtailed the bankruptcy courts' ability to utilize § 105(a) as a basis for creating new remedies that are not otherwise available under the Bankruptcy Code and, as applicable here, for circumventing the limitations of those remedies that are in the Code.

In *Law*, the Supreme Court addressed the bankruptcy court's use of § 105(a) to remedy an egregious case of bad faith conduct by the debtor in litigation of an adversary proceeding. *See id.* at 1194–95. The Court acknowledged that, in addition to the statutory power under § 105(a) to carry out the provisions of the Code, the bankruptcy court "may also possess 'inherent power . . . to sanction abusive litigation

13

1 practices. *Id.* at 1194 (quoting *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365,

2 375–76 (2007)).  The Court then admonished, "But in exercising those statutory and

3 inherent powers, a bankruptcy court may not contravene specific statutory provisions

4 . . . .  Section 105(a) confers authority to 'carry' out the provisions of the Code, but it

5 is quite impossible to do that by taking action that the Code prohibits." *Id.*

6        In the proceeding below, the Ninth Circuit had followed the precedent

7 established in *Latman v. Burdette (In re Latman)*, 366 F.3d 774 (9th Cir. 2004), a

8 decision now abrogated by *Law*.  *See Law v. Siegel*, 435 F. App'x 697, 698 (9th Cir.

9 2011).  The Ninth Circuit applied § 105(a) to bestow upon the bankruptcy court the

10 general equitable power to surcharge the debtor's $75,000 homestead exemption to

11 compensate the bankruptcy estate for over $500,000 in administrative expenses

12 resulting from the debtor's bad faith conduct.  *See id.*  In effect, this amounted to

13 disallowance of the debtor's homestead exemption and use of that exemption to pay

14 administrative expenses.

15        The Supreme Court, however, rejected all of the arguments for such a remedy,

16 finding that surcharging an exemption contravened provisions in the Bankruptcy

17 Code and that there was also no statutory basis in the Code for allowing this equitable

18 surcharge.  *See id.* at 1195–96.  The Court noted that the surcharge conflicted

19 specifically with two subsections of § 522: § 522(b), which allows a debtor to exempt

20 property in the first place, and § 522(k), which expressly limits the use of exempt

21 property to pay for administrative expenses.  *See id.* at 1195.  And § 522, with its

22 "carefully calibrated exceptions and limitations," did "not give courts discretion to

23 grant or withhold exemptions based on whatever considerations they deem

24 appropriate," such as the debtor's bad faith conduct.  *Id.* at 1196.  Further, outside of

25 § 522, the Court concluded that the Code did not admit "a general, equitable power in

26 bankruptcy courts to deny exemptions based on a debtor's bad-faith conduct."  *Id.* at

27 1197.  Thus, *Law* demands that the bankruptcy courts re-examine the traditional

28

1    theories and assumptions upon which they have previously utilized § 105(a).

2          Returning now to the case before this court, when an individual is injured by a

3    violation of the automatic stay, that individual's ability to recover attorney's fees as a

4    contempt sanction under § 105(a) becomes a troubling issue due to the application of

5    § 362(k)(1) as limited by *Sternberg*.  As *Law* cautions, "[§] 105(a) confers authority

6    to 'carry out' the provisions of the Code, but it is quite impossible to do that by taking

7    action that the Code prohibits."  *Id.* at 1194.  This presents the court with the

8    following question: Does the court's civil contempt authority under § 105(a)

9    "contravene[ ] a specific provision of the Code"—namely, § 362(k)(1)—when it is

10   used to allow an individual to recover the attorney's fees which *Sternberg* says are

11   otherwise unavailable under the Bankruptcy Code? *Id.* at 1195.  If the answer is yes,

12   then pursuant to *Law*, an individual's right to recover attorney's fees as damages is

13   strictly limited to the fees allowed by § 362(k)(1) and *Sternberg*.  If the answer is no,

14   then an individual can circumvent *Sternberg*'s limitation and recover attorney's fees

15   incurred in pursuing damages under § 105(a).

16         To answer this question, the court first looks to the history of how Congress, as

17   well as the courts, sought to help those injured by violations of the automatic stay.

18   Prior to the 2005 BAPCPA amendments, § 362(k)(1) had been designated § 362(h).

19   *See* BAPCPA, Pub. L. No. 109-8, §§ 305(1)(B), 441(1)(A), 119 Stat. at 79, 114.  And

20   § 362(h), in turn, had been added to the Bankruptcy Code in 1984, creating a private

21   remedy for individuals injured by a stay violation.  *See* Bankruptcy Amendments and

22   Federal Judgeship Act of 1984, Pub. L. No. 98-353, § 304, 98 Stat. 333, 352.  "Before

23   the enactment of § 362(h) in 1984, sanctions for violations of the automatic stay were

24   pursued in a civil contempt proceeding pursuant to the court's discretionary power

25   under § 105(a)."  *Roman*, 283 B.R. at 14; *see, e.g.*, *Superior Propane v. Zartun (In re*

26   *Zartun)*, 30 B.R. 543, 546 (9th Cir. BAP 1983) (citing additional cases); *Fid. Mortg.*

27   *Investors v. Camelia Builders, Inc. (In re Fid. Mortg. Investors)*, 550 F.2d 47, 50 (2d

28

15

1    Cir. 1976) (Bankruptcy Act case).  Yet, "[t]he precise reason for the enactment of

2    [§ 362(h)] is not clear," *Wagner v. Ivory (In re Wagner)*, 74 B.R. 898, 902 (Bankr.

3    E.D. Penn. 1987), so it is unknown whether § 362(h)'s enactment was intended to

4    limit, in any way, the contempt remedy relied upon by courts prior to 1984, at least

5    with regards to individuals injured by a stay violation.

6         Some courts have commented that "creation of an express right of action [in

7    § 362(h)] responded to widespread criticism of the need to rely on the contempt

8    power to remedy violations of § 362."  *Walls*, 276 F.3d at 509 (citing *Pertuso v. Ford*

9    *Motor Credit Co.*, 233 F.3d 417, 422 (6th Cir. 2000); Jeffrey A. Stoops, *Monetary*

10   *Awards to the Debtor for Violations of the Automatic Stay*, 11 Fla. St. U.L. Rev. 423,

11   439 (1983)).  Apparently, prior to 1984, "[c]reditors argued that it was not possible to

12   be in 'contempt' of a rule of procedure or a statute as opposed to an order of a court."

13   *United States v. Harchar*, 331 B.R. 720, 730 (N.D. Ohio 2005); *accord Peterson v.*

14   *Wells Fargo Bank, N.A.*, No. CV-99-6389 REC/SMS, 2000 WL 1225788, at *5 n.1

15   (E.D. Cal. Aug. 17, 2000) (providing that "use of the court's contempt power to

16   remedy a violation of § 362 was criticized [because] [a] contempt proceeding under

17   § 362 is for a violation of the statute itself").  *But see Dyer*, 322 F.3d at 1191

18   (providing that "the automatic stay qualifies as a specific and definite order" such that

19   contempt sanctions can be imposed for stay violation).  Thus, one could conclude that

20   § 362(h)'s introduction of a new statutory remedy called into question the continuing

21   viability of § 105(a) as an independent way to address essentially the same issue.

22        The scant relevant legislative history, however, suggests that § 362(h) was

23   introduced to provide "an additional right of individual debtors and [was] not

24   intended to foreclose recovery under already existing remedies."  130 Cong. Rec.

25   H1942 (daily ed. Mar. 26, 1984) (statement of Rep. Rodino).  Relying on this

26   comment in the congressional record, some courts have interpreted § 362(h) to mean

27   that "Congress did not intend to abrogate the right to seek civil contempt, the remedy

28

16

1   traditionally available to aggrieved debtors for violations of the automatic stay."

2   *Wagner v. Ivory (In re Wagner)*, 74 B.R. 898, 903 (Bankr. E.D. Penn. 1987); *accord*

3   *Ga. Scale Co. v. Toledo Scale Corp. (In re Ga. Scale Co.)*, 134 B.R. 69, 72–73

4   (Bankr. S.D. Ga. 1991).  Rather, § 362(h)'s introduction "was meant to supplement,

5   not replace, the civil contempt remedy."  *Wagner*, 74 B.R. at 902; *In re Sharon*, 200

6   B.R. 181, 200 (Bankr. S.D. Ohio 1996). "The enactment of [§ 362(h)] granted

7   bankruptcy courts an independent statutory basis, apart from their contempt power, to

8   order sanctions against violators of automatic stays."  *Crysen/Montenay Energy Co. v.*

9   *Esselen Assocs., Inc. (In re Crysen/Montenay Energy Co.)*, 902 F.2d 1098, 1104 (2d

10  Cir. 1990).

11          Notwithstanding that the courts have traditionally recognized two available

12  remedies for a stay violation (i.e., § 362(k)(1) damages and § 105(a) contempt

13  sanctions), the court must now reevaluate those remedies in light of *Law*.  In other

14  words, this court must consider whether the contempt remedy that may have

15  previously been available to the individual can ever go beyond what is recoverable

16  under § 362(k)(1), something that has not been addressed by courts.[8]

17          Contempt sanctions are issued pursuant to § 105(a).  *See Dyer*, 322 F.3d at

18  1189–90.  While § 105(a) may have far-reaching application, "[i]t is hornbook law

19  that § 105(a) does not allow the bankruptcy court to override explicit mandates of

20  other sections of the Bankruptcy Code."  *Law*, 134 S. Ct. at 1194 (internal quotation

21  marks omitted) (citation omitted).  "That is simply an application of the axiom that a

22  statute's general permission to take actions of a certain type must yield to a specific

23  prohibition found elsewhere."  *Id.*  Thus, "it is generally agreed that § 105 is not a

24  roving commission to do equity or to do anything inconsistent with the Bankruptcy

25

26          [8] This discussion is not intended to address whether *Law* affects the established Ninth
27  Circuit case law, cited above, that permits a non-individual injured by a stay violation to
    recover civil contempt sanctions under § 105(a), since § 362(k)(1) is not applicable in those
28  cases.

1  Code." *Yadidi v. Herzlich (In re Yadidi)*, 274 B.R. 843, 848 (9th Cir. BAP 2002).

2  In this case, the "specific prohibition" lies in § 362(k)(1), as narrowly

3  interpreted by *Sternberg*. Section 362(k)(1) sets forth a comprehensive set of

4  remedies for individuals injured by a willful stay violation, expressly including both

5  mandatory remedies (i.e., "actual damages, including costs and attorneys' fees") and

6  discretionary remedies (i.e., "punitive damages"). And, under *Sternberg*, the

7  (mandatory) attorney's fees included in the damages are limited to those fees incurred

8  before termination of the stay violation. *See* 595 F.3d at 947. Anything that falls

9  outside of what must or may be awarded under § 362(k)(1) would clearly be

10  precluded from recovery, such as attorney's fees incurred in pursuing the damages

11  award.

12  Although § 362(k)(1) and § 105(a) may appear to offer two distinct remedies,

13  the limitations of § 362(k)(1) must nevertheless guide what can be awarded under

14  § 105(a). This is because "the language of § 105(a) authorizes only those remedies

15  'necessary' to enforce the bankruptcy code." *Dyer*, 322 F.3d at 1193. Yet, allowing

16  an individual to circumvent § 362(k)(1) and recover more than he or she can

17  otherwise recover under that statute can hardly be considered a "necessary" exercise

18  of § 105(a). As the Ninth Circuit has stated, "[I]t is not up to [the courts] to read other

19  remedies into the carefully articulated set of rights and remedies set out in the

20  Bankruptcy Code." *Walls*, 276 F.3d at 507. Here, the set of remedies has been

21  articulated by § 362(k)(1), which has prohibited the recovery of certain attorney's

22  fees.

23  It follows that § 105(a), if used in the way suggested by the Debtor, would be

24  "exercised in contravention of the Code." *Law*, 134 S. Ct. at 1195. As a result, this

25  court is not persuaded that § 105(a)'s civil contempt authority is available to an

26  individual who seeks to recover the attorney's fees and costs that are expressly

27  unavailable under § 362(k)(1) and *Sternberg*.

28

18

1  **<u>Conclusion.</u>**

2       Based on the foregoing, the court finds and concludes that Golub willfully

3  violated the automatic stay and that the Debtor is entitled to recover his actual

4  damages under § 362(k)(1).  The Motion will be granted in part.  The Debtor will be

5  awarded his actual damages in the amount of $3,408.55, which represents $3,333.50

6  in attorney's fees and $75.05 in costs incurred prior to termination of the stay

7  violation.  The damages award shall be joint and several against respondents Mitchell

8  S. Golub, Esq., and the Law Offices of Golub & Associates, PLC.  The part of the

9  Debtor's Motion requesting an award of additional fees as a contempt sanction under

10  § 105(a) will be denied.

11       Dated: May 15, 2014

12

13                           /s/ W. Richard Lee

14                           W. Richard Lee
                         United States Bankruptcy Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28