**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| IN THE MATTER OF: RUPANJALI SNOWDEN, *Debtor*, | No. 13-35291 |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | D.C. No. 2:12-cv-01095-RSL |
| RUPANJALI SNOWDEN, Debtor, *Appellant*, | |
| v. | |
| CHECK INTO CASH OF WASHINGTON INC., *Appellee*. | |

| | |
|---|---|
| IN THE MATTER OF: RUPANJALI SNOWDEN, *Debtor*, | No. 13-35322 |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | D.C. No. 2:12-cv-01095-RSL |
| CHECK INTO CASH OF WASHINGTON INC., *Appellant*, | OPINION |
| v. | |
| RUPANJALI SNOWDEN, Debtor, *Appellee*. | |

Appeal from the United States District Court
for the Western District of Washington
Robert S. Lasnik, District Judge, Presiding

Argued and Submitted
June 5, 2014—Seattle, Washington

Filed September 12, 2014

Before: Alfred T. Goodwin, M. Margaret McKeown,
and Paul J. Watford, Circuit Judges.

Opinion by Judge McKeown;
Concurrence by Judge Watford

## SUMMARY[*]

### Bankruptcy

The panel affirmed in part and reversed in part the district court's affirmance of the bankruptcy court's judgment awarding a chapter 7 debtor damages and attorneys' fees for a creditor's willful violation of the automatic stay under 11 U.S.C. § 362(k)(1).

The panel affirmed the district court's affirmance of the decisions of the bankruptcy court on emotional distress and punitive damages. The panel held that the emotional distress damages award was proper because the debtor suffered

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

significant emotional harm, clearly established the significant harm, and demonstrated a causal connection between that significant harm and the violation of the automatic stay. The panel concluded that the bankruptcy court applied the correct legal standard for awarding punitive damages by considering whether the creditor recklessly or callously disregarded the law or rights of others. In addition, the award of punitive damages was not an abuse of discretion.

The panel reversed the district court's order affirming the bankruptcy court's award of attorneys' fees. The panel stated that under *Sternberg v. Johnston*, 595 F.3d 937 (9th Cir. 2010), attorneys' fees under § 362(k) are limited to fees relating to enforcing the automatic stay and remedying the stay violation, not the fees incurred by the debtor in prosecuting the bankruptcy adversary proceeding seeking damages for the stay violation. The panel concluded that here, the stay violation did not end when the creditor sent an e-mail conditionally offering partial reimbursement; accordingly, the debtor was entitled to fees incurred in remedying the stay violation after receiving the e-mail, and the stay violation ended when the bankruptcy court found a violation of the automatic stay. The panel remanded for a recalculation of attorneys' fees.

The panel affirmed the district court's affirmance of the bankruptcy court's denial of sanctions.

Concurring, Judge Watford agreed that the attorneys' fees award must be vacated. He wrote that *Sternberg* construed § 362(k)(1)'s authorization of fee awards more narrowly than Congress likely intended. Judge Watford agreed with the Fifth Circuit that § 362(k)(1) allows a plaintiff to recover attorneys' fees incurring both in remedying a violation of the

automatic stay and in bringing an action to recover the "actual damages" caused by that violation.

## COUNSEL

Christina L. Henry (argued) and Jacob DeGraaff, Henry, DeGraaff, & McCormick, P.S., Seattle, Washington, for Appellant.

Amit D. Ranade (argued) and Alexander M. Wu, Hillis Clark Martin & Peterson P.S., Seattle, Washington, for Appellee.

## OPINION

McKEOWN, Circuit Judge:

This is the story of how a bankruptcy filing listing a $575 payday loan snowballed into a violation of the automatic stay, and protracted litigation, which left a stressed borrower with attorneys' fees and emotional distress. When the automatic stay that accompanies a bankruptcy filing is violated, the bankruptcy petitioner is entitled to recover damages and attorneys' fees. 11 U.S.C. § 362(k)(1). The issue we consider is whether a bankruptcy petitioner can collect attorneys' fees incurred litigating the violation of the automatic stay after the violator sends an e-mail conditionally offering partial reimbursement. We conclude that such fees are recoverable under § 362(k)(1). The bankruptcy laws do not permit a stay violator to undermine the remedies available under § 362(k) by forcing a bankruptcy petitioner to accept a conditional offer in lieu of pursuing fair compensation and attorneys' fees.

## BACKGROUND AND PROCEDURAL HISTORY

Rupanjali Snowden took out a $575 payday loan[1] from Check Into Cash of Washington ("CIC") to make ends meet for herself and her daughter. Before payment was due, Snowden put a stop payment on the check. On the same day, Snowden advised CIC's Sequim, Washington office that she was "thinking about filing for bankruptcy," and provided her bankruptcy attorney's phone number. She was advised that she should let CIC know if she decided to file. When Snowden told CIC that she could not repay the loan, CIC said that she must call CIC every day, otherwise the company would call her "references." Snowden complied, calling CIC every day until the day she filed for bankruptcy because she "didn't want to be embarrassed."

Snowden was employed as a hospital nurse. CIC employees called her at work numerous times asking why she had not yet repaid the loan. Snowden referred them to her attorney and asked that they stop calling her at work, but the calls persisted. These calls affected her work performance and were "very frustrating" because every time Snowden heard her name over the loudspeaker she would, "run to the phone thinking . . . [her daughter had] an emergency." CIC advised Snowden that it would not cash the check securing the loan.

---

[1] "'Payday' loans are short-term consumer loans (usually [fewer] than 31 days) secured by a consumer's post-dated check. The payday industry targets low to medium income consumers as well as individuals who have no savings, and live paycheck to paycheck." *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 999 n.1 (9th Cir. 2010).

In an effort to get her financial house in order, Snowden filed her Chapter 7 bankruptcy petition without directly advising CIC. She listed CIC as an unsecured creditor with a $575 claim. When Snowden checked her bank account a little over a month after the bankruptcy filing, she saw that it was overdrawn. The bank advised her that CIC had cashed the check securing the payday loan. Instead of honoring the automatic stay, and after a number of harassing phone calls to Snowden at the hospital, CIC used an electronic funds transfer to debit Snowden's bank account for the amount due, overdrawing her account by $816.88, including bank charges.

When Snowden found out about the overdraft, she went into a tailspin because her finances had careened out of control at the moment when she thought she was finally getting them together. "[T]he number just panicked [her]," and she was "out of [her] mind." She worried that every other creditor would "do the same thing [CIC] did," which "was very overwhelming." Snowden "had to borrow to pay those [overdraft] fees, and had to tell her daughter she could not afford to buy tennis shoes for her as promised or pay for a haircut." Snowden testified that she "was going nuts," "could not concentrate," was "agitated," and felt "miserable."

Snowden went to CIC's Sequim office to sort out the situation and was told someone would contact her, but no one did. She left there "feeling really sick to [her] stomach . . . [because she] just didn't want to deal with this anymore." Snowden testified that, on the way to CIC, she ran into her daughter's babysitter, Christy Smith, and "broke down . . . crying." Smith, however, testified that the run-in never occurred and that Snowden falsified an e-mail in Smith's name mirroring Snowden's account of their run-in. Smith testified that Snowden offered her $600 in exchange for

favorable testimony. Snowden, on the other hand, testified that Smith wrote the e-mail and denied that she offered her any money.

In April 2009, Snowden filed a motion for sanctions in the United States Bankruptcy Court for the Western District of Washington, alleging that CIC willfully violated the automatic stay provision of the bankruptcy code, 11 U.S.C. § 362, and seeking a return of the funds and overdraft fees, emotional distress and punitive damages, and attorneys' fees. Throughout the proceedings, CIC disputed that it violated the automatic stay.

CIC rejected Snowden's request to settle the case for $25,000. Instead, in an e-mail affirmatively claiming it was without fault, CIC proposed repaying Snowden the loan amount, bank fees, and three hours of attorneys' fees, a total of $1,445. Understandably, Snowden did not jump at this suggestion because the $1,445 did not compensate her for the emotional distress CIC had caused.

The case proceeded to trial. Ultimately, the bankruptcy court rejected CIC's defenses, found a willful violation of the automatic stay, and awarded emotional distress damages of $12,000 as well as the $575 loan amount, $370 in bank fees, $12,000 in punitive damages, and $2,538.55 in attorneys' fees, totaling $27,483.55.[2] It denied Snowden's request for a fee award in the court's inherent authority or under 11 U.S.C. § 105(a). The court found Snowden's testimony on emotional distress credible though it could not "resolve the contradiction between Ms. Smith and Ms. Snowden" and

---

[2] The bankruptcy court noted the stipulation that CIC previously paid the loan amount, bank fees, and punitive damages awards.

concluded that "[c]ashing of the check upended both [Snowden's] finances and her efforts to manage her affairs . . . as did [CIC's] ongoing refusal to rectify the situation that it created." The court also awarded punitive damages, determining that "CIC point[ed] to no policy directing its local offices to forward bankruptcy notices to headquarters or corporate collection or instructing how to check for bankruptcy," which "qualifies under the authorities . . . as reckless disregard for the rights of customers who file for bankruptcy relief." The court determined that Snowden was entitled only to attorneys' fees incurred up to May 20, 2009, the date on which CIC sent its e-mail.

CIC appealed the bankruptcy court's emotional distress and punitive damages, and fees awards. The district court determined that although the bankruptcy court cited the controlling case, *In re Dawson*, 390 F.3d 1139 (9th Cir. 2004), it did not apply the proper standard for emotional distress damages. The district court found, however, that the bankruptcy court applied the appropriate punitive damages standard and indicated that it would be inclined to affirm the judgment were it not for the error regarding emotional distress damages. The district court remanded for a determination of emotional distress damages under the appropriate standard and for a reevaluation of punitive damages in light of any change in the emotional distress damages award.

The district court also affirmed on Snowden's cross-appeal of the attorneys' fees award and the failure to impose sanctions under the bankruptcy court's inherent authority or under § 105(a). The district court classified the May 20, 2009 e-mail as a "tender" that would have remedied the stay violation. It therefore concluded that *Sternberg v. Johnston*,

595 F.3d 937 (9th Cir. 2010), "le[ft] little to discuss" because it limited attorneys' fees solely to those fees "associated with remedying the stay violation." *Id.* at 945. Like the bankruptcy court, the district court reasoned that any damages accrued after May 20, 2009 were not associated with remedying the stay violation because if Snowden had accepted the amount mentioned in CIC's e-mail, the violation would have ended.

On remand, the bankruptcy court did not alter its judgment, even though it reconsidered the trial record in light of the district court's decision. The bankruptcy court noted that it found Snowden's testimony more credible than Smith's, and that Snowden had clearly established significant emotional distress because "a reasonable person in precarious financial circumstances who[] had to endure what Ms. Snowden did, after filing bankruptcy, going through the stress that normally attends that process and beginning to build a structure on which she could go forward with her life, had the repeated calls at work, then had the beginnings of the financial structure she was rebuilding kicked out from underneath . . . would [suffer] substantial emotional distress."

Following round two in the bankruptcy court, CIC again appealed the emotional distress and punitive damages awards to the district court. Snowden cross-appealed the sanctions decision and the attorneys' fees determination under *Sternberg*, and she sought to recover fees incurred on appeal. In this second appeal to the district court, the court determined that its prior rulings on attorneys' fees and sanctions remained the law of the case. It also denied Snowden attorneys' fees incurred as a result of the appeal because those fees were not incurred in an effort to enforce the stay, but in pursuit of a damages award for a stay

violation. In effect, the second appeal left in place the bankruptcy court's original order.

CIC now appeals the emotional distress and punitive damages awards, and Snowden cross-appeals the attorneys' fees and sanctions rulings.

## ANALYSIS

### I. Emotional Distress Damages

Section 362(k) permits an award of emotional distress damages if the bankruptcy petitioner "(1) suffer[s] significant harm, (2) clearly establish[es] the significant harm, and (3) demonstrate[s] a causal connection between that significant harm and the violation of the automatic stay (as distinct, for instance, from the anxiety and pressures inherent in the bankruptcy process)." *Dawson*, 390 F.3d at 1149. CIC takes issue only with the bankruptcy court's findings on the second prong, arguing that Snowden did not clearly establish significant emotional harm but only "[f]leeting or trivial anxiety or distress." *See id.* at 1149. Reviewing the decision of the district court de novo, we review for clear error the bankruptcy court's findings of fact and for an abuse of discretion the bankruptcy court's decision whether to award damages and how much to award. *Id.* at 1145, 1150. We affirm.

On remand, the bankruptcy court evaluated the evidence supporting Snowden's claim for emotional distress damages under the correct standard of proof, namely whether she "clearly establish[ed]" that she suffered significant emotional harm. *See id.* at 1149. Although "the circumstances surrounding the violation make it obvious that a reasonable

person would suffer significant emotional harm," *id.* at 1151, CIC contests whether Snowden "in fact suffered significant emotional harm." Discrediting Smith's testimony, the bankruptcy court found Snowden credible and determined that "Snowden did suffer significant and substantial emotional distress as a result of CIC's actions in cashing the check and in continuing to call her post-petition. Cashing of the check upended both her finances and her efforts to manage her affairs . . . as did [CIC's] ongoing refusal to rectify the situation that it created."

When asked why her declaration in support of the motion for sanctions did not include any information about the harassing telephone calls, Snowden replied "I did not know I was supposed to tell them. I didn't know it was such a big thing . . . . It is a big thing, because when you come out of the room, it's a burden to leave everything behind . . . and to walk to the phone to answer the phone every time. I don't know if you've ever seen a nurse work. . . . Not only are you leaving that room to come answer the phone, you're putting a patient on hold. . . . That's a big thing." CIC seizes on the statement, "I didn't know it was such a big thing," to claim that Snowden did not subjectively suffer emotional distress. In view of the context explaining why the phone calls indeed were "a big thing" and the testimony about her emotional distress, the district court did not err in confirming the emotional distress damages award.

## II. Punitive Damages

Section 362(k) provides for punitive damages "in appropriate circumstances." 11 U.S.C. § 362(k)(1). An award of punitive damages requires "some showing of reckless or callous disregard for the law or rights of others."

*In re Bloom*, 875 F.2d 224, 228 (9th Cir. 1989). CIC is incorrect that the bankruptcy court erroneously applied the "willful violation" standard rather than the "reckless disregard" standard. The bankruptcy court explained that punitive damages were "appropriate in the context of a stay violation when there's a reckless and callous disregard for the law or the rights of others or where the conduct is malicious, wanton, or oppressive." The bankruptcy court therefore applied the correct legal standard.

The court's award of punitive damages was not an abuse of discretion. *See Pavon v. Swift Transp. Co., Inc.*, 192 F.3d 902, 909 (9th Cir. 1999). The bankruptcy court supported the award with findings that CIC failed to provide a policy or employee training about how to address debt collection following a bankruptcy filing. The bankruptcy court reasonably concluded that CIC demonstrated reckless and callous disregard for the law.

## III.    Attorneys' Fees

"The filing of a bankruptcy petition immediately gives rise to an automatic stay." *Sternberg*, 595 F.3d at 940 (citing 11 U.S.C. § 362). Section 362(k)(1) provides that "an individual injured by any willful violation of a stay . . . shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1).

In *Sternberg*, we held that attorneys' fees under § 362(k) are limited to "those attorney fees related to enforcing the automatic stay and remedying the stay violation, not the fees incurred in prosecuting the bankruptcy adversary proceeding in which he pursued his claim for those damages." 595 F.3d

at 940.  In that case, an Arizona state court presiding over a divorce proceeding entered judgment against an individual who was also involved in bankruptcy proceedings.  *Id.* at 941–42.  The Arizona court required immediate payment of the judgment without determining whether there was any non-estate property or requesting that the bankruptcy court determine whether the automatic stay applied to its order.  *Id.* Simultaneously with filing an appeal, the petitioner commenced an adversary proceeding in the bankruptcy court arguing that collection on the judgment was a willful violation of the automatic stay.  *Id.*  The petitioner was successful in the adversary proceeding and received a damages award, which included attorneys' fees.  *Id.* at 942.

We affirmed the finding that the automatic stay was violated, but concluded that the petitioner was not entitled to attorneys' fees from "the subsequent adversary proceeding in which [the petitioner] sought to collect damages for the stay violation."  *Id.* at 945.  We interpreted § 362(k)(1) "against the backdrop of the 'American Rule,'" under which parties are presumed to bear their own litigation costs. *Id.* at 945–47. We also relied on the plain meaning of "actual damages" as "[a]n amount awarded . . . to compensate for a proven injury or loss; damages that repay actual losses."  *Id.* at 947 (citing Black's Law Dictionary 416 (8th ed. 2004) (internal quotation marks omitted)).  We reasoned that "[o]nce the violation has ended, any fees the debtor incurs after that point in pursuit of a damage award would not be to compensate for 'actual damages' under § 362(k)(1)."[3]  *Id.*  "We remand[ed]

---

[3] *Sternberg* acknowledged that the decision created a circuit split with the Fifth Circuit, *see In re Repine*, 536 F.3d 512, 522 (5th Cir. 2008), which rejected the argument that § 362(k) "does not provide for a

14                    IN RE: SNOWDEN

to the district court with instructions to remand to the bankruptcy court to determine which fees are properly allocable to efforts to enforce the automatic stay and prevent enforcement of the state court order that violated the stay." *Id.* at 948.

*Sternberg* established a brightline rule that attorneys' fees incurred in an attempt to collect damages *once the stay violation has ended* are not recoverable. *Id.* However, the issue remains whether the e-mail CIC sent to Snowden ended the violation. To answer this question, we look to whether the petitioner is using "[t]he stay [a]s a shield, not a sword." *Id.* at 948. As we explained in *Sternberg*, the limitation on recovery of attorneys' fees was aimed at reducing incentives for further litigation while providing a bankruptcy petitioner a remedy for the stay violation. *Id.*

Our more recent decision in *In re Schwartz-Tallard*, No. 12-60052, 2014 WL 4251571 (9th Cir. Aug. 29, 2014), is instructive. There, we permitted recovery of attorneys' fees incurred in defending an appeal from the decision of the bankruptcy court finding a violation of the automatic stay. 2014 WL 4251571, at *3–4. We held that the debtor was entitled to fees because she "was forced to defend [the] appeal to validate the bankruptcy court's ruling that [the creditor] had violated the stay, and to preserve her right to collect the pre-remedy damages awarded by the bankruptcy court. In other words, unlike in *Sternberg*, Schwartz–Tallard was not using the stay as a sword, but as a shield from stay violation." *Id.* at *3 (first alteration in original) (internal quotation marks omitted).

---

successful claimant to collect the fees incurred in prosecuting their action," *id. See Sternberg*, 595 F.3d at 948.

Here, the district court affirmed the bankruptcy court's rationale that although CIC never admitted a stay violation, Snowden's "losses would have been righted and the violation would have come to an end" had she accepted the $1,445 tender. We review that conclusion for an abuse of discretion. The bankruptcy court's determination that the May 20, 2009 e-mail marked the end of the stay violation was an abuse of discretion because the court failed to identify "the correct legal standard for decision of the issue before it." *See United States v. Hinkson*, 585 F.3d 1247, 1251 (9th Cir. 2009) (en banc). Having violated the automatic stay attendant to Snowden's bankruptcy filing, CIC had an affirmative obligation to return any property it had wrongfully seized from the bankruptcy estate. *In re Abrams*, 127 B.R. 239, 242–43 (B.A.P. 9th Cir. 1994). Instead of returning that property with no strings attached, CIC responded to Snowden's offer to settle the case with an e-mail containing implied conditions. Snowden's attorney delivered her demand for $25,000 only by voice mail, so we do not know the exact terms of the offer. But the most logical inference, given the size and timing of the demand (it came just a week after Snowden filed a motion for sanctions seeking comprehensive relief from CIC) is that it represented an offer to settle all of Snowden's claims.

By declining the sum presented in CIC's e-mail, Snowden was using the stay not as a sword but as a shield. CIC contested that it violated the automatic stay and made it clear that giving Snowden the $1,445 was not an admission of a violation of the automatic stay. CIC unsuccessfully maintained that position throughout the litigation in the bankruptcy court. Snowden had to proceed with the litigation to establish a violation of the automatic stay; put differently, she had to go to court to end the stay violation. *See*

*Schwartz-Tallard*, 2014 WL 4251571, at *4 ("[T]he additional litigation resulted from [the violator's] continued attempts to justify its stay-violating behavior—not from the debtor's conduct."); *Sternberg*, 595 F.3d at 948. The fees Snowden incurred in remedying the stay violation after receiving CIC's e-mail fall squarely under the admonition that "[w]ithout a doubt, Congress intended § 362(k)(1) to permit recovery as damages fees incurred to [end] violation of the automatic stay." *Sternberg*, 595 F.3d at 946.

Permitting the violator to short-circuit the remedies available under § 362(k)(1) by making a conditional offer to return the property wrongfully seized in violation of the automatic stay would undermine the remedial scheme of § 362(k). *See Sternberg*, 595 F.3d at 947–48. The automatic stay prevents further litigation in order to provide a "breathing spell" from creditors and preserves the petitioner's resources for creditors. *Id.* at 948. Attorneys' fees under § 362(k)(1) "deter stay violators from continuing to disturb the breathing spell the stay aims to create." *Schwartz-Tallard*, 2014 WL 4251571, at *4.

Had Snowden accepted the $1,445 and sought damages for emotional distress in a separate action, her recovery may have been precluded because CIC never admitted a violation of the stay—not to mention the reality that any settlement would have included a standard release of liability. A bankruptcy appellate panel of this court has declined to find that an automatic stay violation is remedied by a Rule 68 offer of judgment, noting that "[i]n retrospect, [the creditor] may regret not having explicitly included attorney's fees in its offer of judgment and having offered a sum that would have been sufficient to make the debtor think very hard about whether continued litigation is worthwhile." *In re Campion*,

294 B.R. 313, 315, 318 (B.A.P. 9th Cir. 2003) (internal quotation marks omitted). Although the district court characterized the e-mail as a "tender," CIC never followed up with a formal offer or terms of settlement. Since a Rule 68 offer of settlement does not remedy the stay violation, the single e-mail from CIC hardly serves to stop the train and cut off fees.

Because CIC did not return the property it had wrongfully seized from Snowden on May 20, 2009, the bankruptcy court chose the wrong date to mark the end of the stay violation. The proper date is December 10, 2009, when the bankruptcy court found a violation of the automatic stay. The litigation leading up to that ruling "relate[d] to [Snowden] 'enforcing the automatic stay and remedying the stay violation.'" *See Schwartz-Tallard*, 2014 WL 4251571, at *3 (quoting *Sternberg*, 595 F.3d at 940). Therefore, we reverse the district court's determination limiting fees to those incurred before May 20, 2009, and we remand for a recalculation of attorneys' fees.

Snowden cannot automatically recover *all* the fees she incurred before the end of the stay violation. Under *Sternberg*, she can recover only those fees related to remedying the stay violation itself. 595 F.3d at 940. Presumably some fees incurred before December 10, 2009, are therefore not recoverable, as they would have related to Snowden's damages claims rather than her efforts to end the stay. "All fees related to proving [Snowden's] damages are disallowed under the American Rule." *Id.* at 948.

## IV.    Sanctions

Snowden cross-appeals the bankruptcy court's failure to issue a sanctions award under its inherent authority, which "allows a bankruptcy court to deter and provide compensation for a broad range of improper litigation tactics." *In re Dyer*, 322 F.3d 1178, 1196 (9th Cir. 2003). "Because of their very potency, inherent powers must be exercised with restraint and discretion," *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991); therefore, "[s]anctions are justified when a party acts for an improper purpose." *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001) (emphasis omitted).

The bankruptcy court declined to find any bad faith in CIC's approach to Snowden's bankruptcy litigation. Based on the record documenting the litigation tactics, the bankruptcy court did not abuse its discretion in denying sanctions under its inherent authority. *See Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1213 (9th Cir. 2002).

Snowden also appeals the bankruptcy court's failure to issue sanctions under 11 U.S.C. § 105(a), which vests bankruptcy courts with powers "necessary or appropriate to carry out the provisions" of the bankruptcy code. Because a remedy was available to Snowden under § 362(k), no additional remedy was available under § 105(a). *See In re Roman*, 283 B.R. 1, 14–15 (B.A.P. 9th Cir. 2002).

## CONCLUSION

We affirm the district court's order affirming the decisions of the bankruptcy court on emotional distress and punitive damages, and sanctions. We reverse the district court's order affirming the award of attorneys' fees and

remand for a calculation of attorneys' fees related to remedying the stay violation, including those fees incurred after May 20, 2009.

The parties shall bear their own costs on appeal.

**AFFIRMED in part; REVERSED in part; REMANDED.**

---

WATFORD, Circuit Judge, concurring:

I join the court's opinion and write separately to add a few words on the attorney's fees issue.

I agree with my colleagues that the fees award must be vacated, but it's hard to fault either the bankruptcy court or the district court for that. Our court has made calculating attorney's fees under 11 U.S.C. § 362(k)(1) unnecessarily complicated. The problem stems from our decision in *Sternberg v. Johnston*, 595 F.3d 937 (9th Cir. 2010), where we construed § 362(k)(1)'s authorization of fee awards more narrowly than Congress likely intended.[1] Read most naturally, the statute allows a plaintiff to recover attorney's fees incurred both in remedying a violation of the automatic stay and in bringing an action to recover the "actual damages" caused by that violation. That's the sensible reading of the statute the Fifth Circuit adopted. *In re Repine*, 536 F.3d 512,

---

[1] Section 362(k)(1) provides: "Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."

522 (5th Cir. 2008). In *Sternberg*, however, we rejected that reading and held instead that § 362(k)(1) imposes a temporal limit on the plaintiff's right to recover attorney's fees, such that no fees may be recovered for any work performed after the stay violation has ended. 595 F.3d at 947. Thus, under our reading of § 362(k)(1), if the stay violation ends before the plaintiff ever files an action to recover her "actual damages," none of the fees incurred in prosecuting the suit may be awarded. I don't think that's the regime Congress contemplated.

Nonetheless, as a three-judge panel, we're bound by the rule in *Sternberg*, which requires us to vacate the award at issue here. Check Into Cash violated the automatic stay by wrongfully withdrawing $575 from Ms. Snowden's bank account. Our task under *Sternberg* is to determine when the stay violation ended. As the court notes, when a creditor violates the stay by wrongfully seizing the debtor's property, the stay violation usually doesn't end until the creditor returns the property to the debtor. *See In re Abrams*, 127 B.R. 239, 242–43 (B.A.P. 9th Cir. 1991). That didn't occur on May 20, 2009, as the bankruptcy court held, because Check Into Cash didn't send Snowden a check on that date for $575 plus the overdraft fees she was charged. It *offered* to return those funds, but with strings attached: Check Into Cash styled its offer as a "counteroffer" to Snowden's $25,000 settlement demand, so accepting the offer would have required Snowden to release her claims for emotional distress and punitive damages. Check Into Cash's conditional, strings-attached offer to return the property it had wrongfully seized—an offer Snowden understandably rejected—did not end the stay violation.

I agree with the court that the stay violation ended by December 10, 2009, when the bankruptcy court ordered the return of Snowden's wrongfully seized property. Although Check Into Cash did not actually pay Snowden the $575 plus overdraft fees until some months later, by December 10, 2009, it no longer contested its obligation to pay those sums. Nor did Check Into Cash contest that it had actually violated the stay. *Cf. In re Schwartz-Tallard*, __ F.3d __, 2014 WL 4251571 at *4 (9th Cir. Aug. 29, 2014) (stay violation hasn't ended if defendant continues to contest whether a stay violation actually occurred). After the bankruptcy court's December 10, 2009, ruling, Check Into Cash contested only whether Snowden was entitled to recover emotional distress and punitive damages as a result of the stay violation.

So, under *Sternberg*, we are left to remand this case to the bankruptcy court with instructions to (1) calculate the portion of Snowden's pre-December 10, 2009, attorney's fees attributable to her efforts to recover the $575 plus overdraft fees, and (2) disallow all remaining fees. This impractical (and inevitably somewhat arbitrary) exercise is sure to invite further litigation. That *Sternberg* requires such an odd, resource-consuming exercise, not dictated by the plain text of § 362(k)(1), is another reason to question the soundness of *Sternberg*'s holding.